**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   WILLIAM VINCENT KANTOLA,
7.   JIMMIE LEE LITTLE,
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS, and
10.  RICKIE PATTERSON BLAKE,

    Defendants.

---

### DEFENDANT SCOTT BRADY'S MOTION FOR BILL OF PARTICULARS

Defendant Scott Brady, by and through undersigned counsel, and pursuant to Fed. R. Crim. P. 7(f), respectfully requests that the Court order the government to file a bill of particulars following the Superseding Indictment, returned on October 6, 2020.

**I.    BACKGROUND & LEGAL STANDARD**

Mr. Brady incorporates by reference, pursuant to D.C.COLO. LCrR 12.1(b), the procedural background and summaries of the original and superseding indictment (styled "Factual Background"),[1] as well as the legal authorities set forth in the Motion for Bill of Particulars

---

[1] Mr. Brady excepts from this incorporation Mr. Penn's description of and reference to the Motion for Bill of Particulars that Mr. Penn filed in July 2020, which as discussed below, Mr. Brady did not join.

1

simultaneously filed this day by Jayson Penn.

## II.     BRIEF SUMMARY OF THE ISSUES

Mr. Brady, and now nine co-defendants, awaits trial for an alleged criminal antitrust conspiracy spanning more than seven years with only a superficial and ill-defined understanding of what the government contends he has done wrong.  The government previously touted that its lengthy "speaking indictment" (now 151 paragraphs and six episodes longer than its original indictment) and searchable, voluminous discovery alone were more than enough for Mr. Brady to be on notice of the nature of the conspiracy he purportedly agreed to join, promote, and protect, and afforded Mr. Brady the ability to meaningfully prepare a defense.  (Govt's Consolidated Resp. to Defs. Penn's and Austin's Mots. for a Bill of Particulars, Dkt. 68, at 1-3, 6.)  Indeed, the government has gone so far as to assert more than once that it had and would continue to provide a "clear and continuously updated roadmap of [its] case."  (*Id.* at 6-7.)  In reliance on the government's representations, Mr. Brady waited for the government to provide discovery for him to review, rather than proceed with a motion for bill of particulars in July 2020 alongside his co-defendants, Mr. Penn and Roger Austin.  What Mr. Brady discovered, however, after receipt of more than 12.5 million documents was that the government's promise of a roadmap and clarity was an empty one; its description of its discovery as relevant, "granular," "concrete," and "detailed" was mere lip service.  (*Id.* at 7, 9.)

First, the government appears to have enhanced its scattershot approach in the superseding indictment by lining up allegations reflecting independent business events and legitimate, everyday business communications over more than seven years involving different suppliers, different types of customers (e.g., retail versus quick service restaurants), different brands, different chicken parts and products, and different types of negotiations and transactions.  The conduct at issue ranges from the negotiation of single and multi-year contracts for 8-piece chicken

2

on the bone and other products, to a limited-time promotional offer, to research about grower and plant conversion costs, to a surcharge for freezer use, to a request to investigate the feasibility of supplying a smaller bird.  There also is no consistency among the alleged co-conspirators with any of the superseding indictment's events.  Mr. Brady makes an appearance in only eight of fourteen of the government's "episodes" (*see, e.g.*, Super. Ind., Dkt. 101, ¶¶ 66-70, 77-83, 108-112, 113-116, 117-119, 127-128), and there is only a single episode that allegedly involves every defendant (*see id.* ¶¶ 87-107). While the government's allegations comprising the fourteen episodes are detailed and specific when viewed individually (e.g., charts of telephone calls and excerpts of e-mails), the superseding indictment remains imprecise and unclear as to the nature of Defendants' "continuing combination" and "continuing agreement, understanding, and concert of action." (*Id*. ¶¶ 1, 2.)  In other words, Mr. Brady cannot feign to guess (much less prepare a meaningful defense against) the essential string binding these disparate events and these disparate Defendants together.

Second, the superseding indictment's vagueness and ambiguity regarding the nature of Defendants' agreement are compounded by the government's production of more than 12.5 million documents, exclusive of the thousands of pages of telephone records, structured data, and other information that have been provided to Defendants.  Now more than before, Mr. Brady is "simply adrift in a sea of documents." (Dkt. 68 at 1.)  Far from providing a "roadmap of the government's case" (*id.* at 6-7), the government's productions have been a steady dump of documents.  It is evident that the government has turned over, without review or analysis, every single document it received in response to its myriad subpoenas and also included all documents produced by many of these same third-parties in *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-0637 (N.D. Ill), which has resulted in the production of millions of pages of duplicative, unduly burdensome, and irrelevant discovery.

The government previously deflected – and likely will do so again – by suggesting that Defendants should instead focus on the approximately 5,400 documents (out of more than 12.5 million) it has designated "highly relevant." The undersigned counsel cannot fulfill their professional and ethical responsibilities to Mr. Brady merely by taking the government's word for what is "highly relevant", and for good reason; upon review, counsel has determined that most of these "highly relevant" documents have little to nothing to do with Mr. Brady or the events in the indictment and/or are ordinary corporate communications – reflecting dozens of additional customers and hundreds upon hundreds of events and transactions – that have no connection to the superseding indictment's fourteen episodes. Thus, Mr. Brady is left to guess which (if any) of these hundreds of mundane events and transactions may be used by the government as evidence of his alleged participation in some other yet-to-be-added episode or some undefined broader conspiracy, such as the nebulous "continuing network" noted in Paragraph 48 of the superseding indictment.

The government must give an individual notice of the nature of a charge, *Hamling v. United States*, 418 U.S. 87, 117 (1974), "the first and most universally recognized requirement of due process," *Bousley v. United States*, 523 U.S. 614, 619 (1998). Penning a 41-page indictment and extending standard professional courtesies to Defendants (like searchable documents, a custodian index, Bates numbers, and document count per dump) does not satisfy the government's constitutional obligations or constitute "annotated" discovery. (*See* Dkt. 68 at 1, 3, 6, 12.) For the reasons stated here and below, the Court should grant Mr. Brady's motion and order the government to provide Mr. Brady a bill of particulars.

4

### III.     ARGUMENT & REQUEST

The superseding indictment fails to "inform [Mr. Brady] of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988).  As previewed above, the superseding indictment contains exceedingly broad language regarding Defendants' overarching conspiratorial enterprise.  Specifically, Paragraph 48(c) broadly alleges that the conspirators used a "continuing network" "to monitor" bids, prices, price-related terms, and discount levels offered by "Suppliers and co-conspirators" at unspecified times for unspecified customers for unspecified broiler chicken products.  Paragraph 48(b) is similarly expansive and vague, alleging the occurrence of "conversations and communications relating to non-public information" – such as bids, prices, price-related terms, and discount levels – at unspecified times for unspecified customers for unspecified broiler chicken products.  While Mr. Brady conceivably can prepare a defense to the episodes in the superseding indictment that reference him, he cannot mount a defense to all other unspecified conduct that might be encompassed by Paragraph 48, buried in nineteen terabytes and tens of millions of pages of data.  The following facts regarding the superseding indictment, the government's productions, and their intersection exemplify why this is an impossible task, and these facts validate Mr. Brady's reasonable request for three particulars, detailed below.

| Fact | Impact on Mr. Brady |
|---|---|
| While the superseding indictment's episodes begin "[i]n approximately the autumn of 2012" (Super. Ind. ¶ 51), the government has produced documents from as early as 2006 as part of its set of "highly relevant" documents. | Mr. Brady must guess whether the conspiracy began in 2006, if he is alleged to have joined the conspiracy before 2012, and whether the government will raise at trial and seek to hold him responsible for any conduct arising before 2012 under the auspices of Paragraph 48's undefined "continuing network" or otherwise. |

| Fact | Impact on Mr. Brady |
|---|---|
| The superseding indictment alleges that the conspiracy began "as early as 2012 and [continued] through at least as early as 2019." (Super. Ind. ¶ 50.) There are no factual allegations, however, that post-date September 2017, other than a general statement that Defendants "sold and accepted payment for broiler chicken products that are the subject of the allegations in the indictment … until at least approximately early 2019." (*Id.*) Yet, the government has produced documents through 2019. | Mr. Brady must guess whether the conspiracy ended in September 2017 or whether the government will raise at trial and seek to hold him responsible for any conduct arising after that date under the auspices of Paragraph 48's undefined "continuing network" or otherwise. |
| As noted above, the superseding indictment sets forth fourteen independent episodes that allegedly are part of an overarching conspiracy. Six of the events do not involve Mr. Brady or any customer with whom Mr. Brady has a business relationship. Of the remaining eight events, they involve three different customers over a period of six years. | It is difficult, if not impossible, to divine what "shared understanding" Mr. Brady may have had with various combinations of Defendants considering the superseding indictment's disjointed episodes as a whole or even just those episodes in which Mr. Brady is alleged to have participated. |
| It defies logic that the 12.5 million-plus records are relevant evidence of a single man's "ent[rance] into and engage[ment] in a . . . conspiracy to suppress and eliminate competition . . . . for broiler chicken products." (Super. Ind. ¶ 1.)<br><br>Setting aside logic, the government has produced over 3.5 million documents from eleven suppliers who are **not** identified as potential co-conspirators in the superseding indictment, in any of the government's witness interview reports that purport to reveal the government's investigative strategy (Dkt. 68 at 7), [2] or on the "no contact list." Additionally, those eleven suppliers are **not** competitors of Claxton, for whom Mr. Brady has worked for the duration of the alleged conspiracy, assuming it began in "autumn 2012."[3] | Mr. Brady must guess whether the government will seek to hold him responsible for any conduct revealed in these allegedly relevant or "highly relevant" documents under the auspices of Paragraph 48's undefined "continuing network" or otherwise. |

---

[2]   To date, the government has produced witness interview reports from 26 people, with one person interviewed at least ten times. Of the 26 people interviewed, only seventeen provided any information relevant to the superseding indictment, and most of that testimony was general in nature and untethered to the critical fourteen episodes.

[3]   In the same vein as above, the government produced over 150,000 documents from companies who also are **not** listed or referenced in any of the preceding sources and, significantly,

6

In sum, the disjointed nature of the superseding indictment – shadowed by the catchall allegations in Paragraph 48 – and combined with the millions of documents produced by the government that, in fact, appear to have nothing to do with Mr. Brady, the episodes alleged in the superseding indictment, or potential witnesses and co-conspirators identified to date, warrants a bill of particulars here.  Each of the three factors identified by *United States v. Rogers*, 617 F. Supp. 1024, 1026 (D. Colo. 1985), weighs in favor of granting Mr. Brady's motion:

(1) The superseding indictment *viewed as a whole* lacks clarity on the critical element of the government's case—the overarching agreement;

(2) The government cannot avoid that conclusion by indiscriminately producing tens of millions of documents, against which no level of search terms will reveal the circumstantial agreement allegedly entered into or perpetuated by Mr. Brady and when that occurred (*cf.* Dkt. 68 at 6 (arguing its searchable discovery allows Defendants "to hone in on virtually any evidence they desire"); and

(3) This case is complex by any metric, period.

Thus, to avoid surprise at trial, Mr. Brady is entitled to know (1) when the alleged conspiracy began and ended; (2) when and by what action Mr. Brady agreed to join the alleged conspiracy; and (3) all bids and/or business transactions and/or events implicated by the conspiracy, and more specifically, whether the fourteen episodes comprising the indictment represent the totality of the conspiratorial agreement and conduct or not.  Neither the law nor justice require Mr. Brady to blindly sift through millions of pages of the government's evidence to find these answers (with any luck), or to determine what is relevant to the pending charges.

The Court should order the government to provide Mr. Brady a bill of particulars.

---

with whom Mr. Brady does not have or had a business relationship.  The government also produced over 3.1 million documents purportedly relating to this matter from a single third-party supplier.

Date:  October 27, 2020 SCOTT BRADY


*s/ Megan C. Rahman*
Megan C. Rahman
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
megan.rahman@troutman.com

Bryan B. Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3170
bryan.lavine@troutman.com

Attorneys for Defendant Scott James Brady

8

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of October, 2020, I electronically filed the foregoing **DEFENDANT SCOTT BRADY'S MOTION FOR BILL OF PARTICULARS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all listed parties.

*s/ Megan C. Rahman*

Attorney for Defendant Scott James Brady

9