IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    TIMOTHY R. MULRENIN,
6.    WILLIAM VINCENT KANTOLA,
7.    JIMMIE LEE LITTLE,
8.    **WILLIAM WADE LOVETTE**,
9.    GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

    Defendants.

---

## DEFENDANT WILLIAM LOVETTE'S MOTION FOR BILL OF PARTICULARS

---

Defendant William Lovette, by and through counsel, and pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, respectfully requests that the Court order the United States of America to file a bill of particulars as to the October 6, 2020, Superseding Indictment. In support of this motion, Mr. Lovette states the following:

### I.    BACKGROUND

On October 6, 2016, Mr. Lovette was included in a Superseding Indictment charging him with one count in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (Dkt. 101 ¶ 1). The

Superseding Indictment followed the original Indictment dated June 2, 2020, charging co-defendants Penn, Fries, Brady and Austin with one count in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (Dkt. 101 ¶ 1). The Superseding Indictment, which added Mr. Lovette and five additional co-defendants, alleges that for more than seven years, "beginning at least as early as 2012 and continuing through at least early 2019," the ten Defendants engaged in "a continuing combination and conspiracy to suppress and eliminate competition" through a "continuing agreement, understanding, and concert of action" via a "continuing network of Suppliers and co-conspirators" to fix, maintain, stabilize and raise the price of broiler chickens. (Dkt. 101 ¶¶ 1-2, 47). Additionally, the Superseding Indictment vaguely alleges that the ten Defendants "discussed protecting, and thereafter acted to protect" the conspiracy. (Dkt. 101 ¶ 49). The Defendants are alleged to have been involved in a long-term, broad, and yet vaguely described conspiracy consisting of fourteen short, punctuated events over more than seven years within the context of in a nationwide industry involving literally thousands of customers, producers, distributors, and suppliers. To give the Court some idea of the size and complexity of this market, in 2014 the U.S. Department of Agriculture reports 8.54 *billion* broiler chickens were produced in the United States alone.[1]

The Superseding Indictment fails to describe how the fourteen events are related to any single conspiracy involving all ten Defendants, how the conspiracy originated, by whom it was originated, how many unindicted co-conspirators there were, who those unindicted co-conspirators were, or when the conspiracy allegedly ended. Even more, the Superseding Indictment suggests the conspiracy is even broader. The Government alleges that the fourteen specific incidents were

---

[1] USDA Poultry Production Fact Sheet, May 2015 (https://www.usda.gov/sites/default/files/documents/nass-poultry-stats-factsheet.pdf).

"part of" the conspiracy that involved a "continuing network of Suppliers and co-conspirators", conveying in plain English the fact that there are events that have not been alleged.

The allegations specific to Mr. Lovette are vague at best, describing communications routine to running a national business and consisting mainly of internal business communications between himself and others at his company. Compounding the barriers to reaching any useful understanding of the case against Mr. Lovette, the Government has provided 12.5 million documents in discovery, of which there are several thousand "relevant documents" so described by the Government, leaving counsel with no less of a monumental task to wade through years of business and other records of multiple multi-national companies' lawful business interactions.

Due Process requires that Mr. Lovette be given individualized notice of the charges against him. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *Bousley v. United States*, 523 U.S. 614, 618 (1998). Pursuant to Fed. R. Crim. P. 7(f), Mr. Lovette needs this bill of particulars to prepare an adequate defense. Currently, Mr. Lovette has information concerning fourteen incidents of the alleged conspiracy, and, virtually no other information about the basis for allegations of a single, overarching conspiracy or his alleged role in it. These fourteen incidents are almost certainly not the only events the Government considers relevant, and the ten Defendants are not the only alleged co-conspirators. Mr. Lovette will have to scrutinize tens of thousands, if not millions, of documents with the burden of divining from these documents the parameters of the conspiracy in time to begin to prepare a defense by obtaining documents and testimony by subpoena. The single critical fact is that, regardless of the effort spent analyzing the discovery, there is no way for Mr. Lovette to eliminate unfair surprise at trial and vindicate his right against double jeopardy in the event the Government attempts a later prosecution for the same supposed offense. There is no way for Mr. Lovette to divine who the Government will argue to the jury are his alleged co-conspirators and

what additional events (before, during, and after 2012) he should evaluate. The bill of particulars, which is not a burden for the Government, will enable Mr. Lovette to expend the precious resources of time and money preparing a defense instead of trying to guess just what it is that he must defend against. For the reasons discussed below, Mr. Lovette requests the Court grant Mr. Lovette's motion and order the Government to provide a bill of particulars.

## II.    LEGAL STANDARD

In the best interest of this Court, Mr. Lovette incorporates by reference, pursuant to Local Cr. Rule 12.1(b), the legal authorities described in the Motion for Bill of Particulars by Jayson Penn filed on October 27, 2020.  (ECF. No. 183)

## III.    ARGUMENT AND REQUESTED PARTICULARS

The superseding indictment fails to "inform [Mr. Lovette] of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Dunn*, 841 F.2d. 1026, 1029 (10th Cir. 1988) (further purposes are to minimize surprise at trial and enable a later defense of double jeopardy). This Court has broad discretion to grant or deny a motion for a bill of particulars. *Id*. In the exercise of that discretion, factors present in the case against Mr. Lovette warrant the grant of the motion: a multi-year duration of the conspiracy, many alleged participants (including unidentified co-conspirators), a group of alleged co-conspirators described amorphously as a "continuing network," the Government's dump of a massive, largely undifferentiated dump of data on the defendant (even with some effort to organize it), and many separate events with the possibility of others not identified in the indictment. *Compare*, *United States v. Johnson*, 225 F. Supp. 2d 982, 996-1000 (N.D. Iowa 2002); *United States v Reddy*, 190 F. Supp. 2d 558, 570 (S.D.N.Y. 2002). Mr. Lovette is facing allegations of a seven plus-year conspiracy in an industry that spans the nation, had innumerable transactions occurring each year,

involves multiple products and many different companies and players. The Superseding Indictment fails to allege particulars about the scope, participants and roles played in the alleged conspiracy.

Each of the three factors identified in *United States v. Rogers*, 617 F. Supp. 1024, 2016 (D. Colo. 1985), which addresses the factors a court should consider when determining whether to grant a bill of particulars, weighs in favor of granting the motion here: the clarity of the indictment, the degree of discovery provided (over 12.5 million documents), and the complexity of the offense charged. Mr. Lovette, at a minimum, needs to know the following to prepare a defense to the indictment: (1) the bids and prices allegedly fixed; (2) when the alleged conspiracy began; (3) when and by what action(s) Mr. Lovette agreed to join the conspiracy; (4) the Government's theory of how the conspiracy continued throughout the alleged seven plus-year period (including before 2012) and across the fourteen identified instances; (5) the names of any additional alleged co-conspirators; (6) the Government's theory of how Mr. Lovette allegedly participated in this conspiracy; and (7) when the conspiracy allegedly ended.

To illustrate Mr. Lovette's difficulty in understanding and preparing a defense to the allegations against him, his name is substantively referenced in only *nine* paragraphs of the 151-paragraph Superseding Indictment. In those nine paragraphs, but for one email exchange, the Government alleges that Mr. Lovette received or discussed information with individuals within the company where he worked, Pilgrim's Pride. (Dkt. 101 ¶ 60 ("Penn emailed Lovette"), ¶ 99(b) (describing a fifteen minute phone call between Mr. Lovette and Austin) ¶ 111 (alleging that Penn told Lovette about raising the price for a customer) ¶¶ 115-116 (alleging that a Pilgrim's Pride employee emailed Mr. Lovette information); ¶¶ 117, 119 (alleging that Penn emailed Mr. Lovette questions about whether Pilgrim's Pride should cover shorts for another supplier).  None of these

allegations suggest when the alleged conspiracy to fix prices with competitors was made and by what actions Mr. Lovette agreed to join, and participate in, the conspiracy. Paragraph 128, without context or substance, alleges that Mr. Lovette had an email exchange with an employee of another supplier, who is not indicted as a co-conspirator, in which Mr. Lovette informed this individual of Pilgrim's Pride's independent business decision in response to a customer's request to change a credit term—without any discussion of prices, bids, chickens, or competition. The Government fails to demonstrate a theory as to how these routine internal communications, along with a single routine email string with an alleged unindicted co-conspirator that does not discuss pricing, constitute substantive evidence of Mr. Lovette's involvement in the alleged seven plus-year conspiracy.

### A.  The Government Should Identify the Bids and Prices Allegedly Fixed.

The Superseding Indictment sets forth seven dates on which Mr. Lovette engaged in conduct the Government contends is a part of the alleged conspiracy. However, without further particularity as to what bids and prices were allegedly fixed, the Government does not identify how Mr. Lovette's conduct furthered the alleged conspiracy. All but one of those discussions were internal communications with Mr. Lovette's co-workers, and there is not a single allegation that Mr. Lovette participated in discussions involving an agreement to rig bids or fix prices. Often, the only allegation is that Mr. Lovette received information from individuals at his own company demonstrating that competitors' bid prices differed materially from each other. (*See, e.g.*, Dkt. 101 ¶ 60 (alleging "Penn emailed Lovette a spreadsheeting containing the following chart," which depicts a range of prices from different suppliers varying from $0.9561 to $0.9770)) There is, for example, no allegation Mr. Lovette was informed of the source of the information—in a market in which there apparently is substantial information exchanged on a frequent basis.

Further, there are bids included in the Superseding Indictment that do not involve Mr. Lovette but are alleged to be part of the conspiracy. Mr. Lovette needs to understand what bids were allegedly rigged, what prices or price terms were allegedly fixed, and what bids were allegedly aligned. Given the volume of discovery, Mr. Lovette seeks particularization as to all the incidents upon which the Government intends to rely to prove its case at trial. To prepare for trial, Mr. Lovette asks that the Government provide a list of implicated contracts or bids, including the time frame, the customers, the relevant products, the allegedly impacted contractual terms or prices, the suppliers involved, and the names of those with whom he allegedly conspired. *See United States v. Metro. Leather & Findings Ass'n*, 82 F. Supp. 449, 455 (S.D.N.Y. 1949) (entitling defendants in a price-fixing case to information "identifying each separate occasion"); *United States v. Tedesco*, 441 F. Supp. 1336, 1343 (M.D. Pa. 1977) (requiring specificity where "Defendants might…be hampered in the preparation of their defense by the fact the indictment…fails to adequately allege the manner and means by which prices are alleged to have been fixed.").

Throughout the Superseding Indictment, the Government describes price bids that are materially different from each other, by unrelated parties, and unrelated conduct. Mr. Lovette seeks a description of the supposedly illegal agreement into which he allegedly entered, with particularity, regarding the fixed bids and prices as to each alleged incident.

### B. The Government Should Identify the Names of Any and All Additional Alleged Co-Conspirators.

Mr. Lovette also is entitled to know the names of all individuals and companies who are alleged to be members of the conspiracy, when they joined the alleged conspiracy, and when the alleged conspiracy began and ended. *See United States v. Gomez*, 2011 WL 5828016, at *3 (D. Kan. Nov. 18, 2011) (ordering the government to provide identify undisclosed co-conspirators);

*United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009) (evaluating six factors to order the government to provide a bill of particulars seeking information about coconspirators).

The *Kahale* court has distilled six factors to assess the need for a bill of particulars listing unindicted co-conspirators. *See Kahale*, 789 F. Supp. 2d at 372 (granting bill of particulars seeking information about co-conspirators). Here, as in *Kahale*, at least four of these factors weigh in favor of disclosure of the unindicted co-conspirators. First, the alleged duration of the conspiracy, at least seven years, is lengthy and the scope of the conspiracy—nationwide—is expansive. Second, due in part to the expansive geographic scope and extensive duration of the alleged conspiracy, along with the size of the poultry industry, the number of potential co-conspirators is potentially large. Third, the Government has failed to provide the particulars requested. Fourth, the Government has overwhelmed the Defendants with voluminous discovery which makes it difficult to ascertain any of the particulars requested. Finally, the complexity of the charge facing the Defendants weighs in favor of the Government being required to identify all co-conspirators and victims of the alleged conspiracy. *See also*, *Reddy,* 190 F. Supp. 2d at 570 (courts have granted bills of particulars identifying co-conspirators when the "number of defendants was large, where the alleged conspiracy spanned long periods of time, and where the alleged schemes were wide-ranging."); *United States v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C 1998) (requiring government to file bill of particulars listing unindicted co-conspirators "because some co-conspirators may have dealt only with co-conspirator other than defendant, conspiracy lasted three and a half years, and there was large number of potential co-conspirators")

While the Government may argue that the volume of discovery it has provided moots the need for a bill of particulars as to unindicted co-conspirators, and this request somehow invades its trial preparation, the fact is that to ensure a fair trial without undue surprise to the Defendants

the millions of pages of discovery provided by the Government does not cure these uncertainties. Without knowing the identities of the unindicted co-conspirators, Mr. Lovette cannot conduct meaningful pretrial investigation and preparation. *See United States v. Nachamie*, 91 F. Supp. 2d 565, 572-73 (S.D.N.Y Jan. 14, 2000) ("If the Government has failed to provide adequate notice of the particulars, or if the discovery has been voluminous, identification of known unindicted co-conspirators will help a defendant focus his investigation and prepare for trial."); *see also Kahale*, 789 F. Supp. at 372 (holding that "a bill of particulars identifying those unindicted co-conspirators known to the government is necessary to allow the defendants to adequately prepare their defenses and avoid unfair surprise at trial" where the number of potential con-conspirators "is potentially large," and the duration of the conspiracy was five years). It is not sufficient for the Government to respond to a motion for a bill of particulars merely by pointing to voluminous discovery or its open file policy. *Bazezew*, 783 F. Supp. 2d at 168 (citing *United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006) (citing *Trie*, 21 F. Supp. 2d 7, 21 n.12). Indeed, it is not uncommon for the courts to order a bill of particulars with detail, including the names of potential witnesses at trial. *Will v. United States*, 389 U.S. 90, 98-99 (1967) (*citing United States v. Debrow*, 346 U.S. 374, 378 (1953); *United States v. White*, 370 F.2d 559 (7th Cir. 1966).

C. **The Government Should Specify How Mr. Lovette Allegedly Participated in this Alleged Seven+-Year Conspiracy, Specifically Its Theory Demonstrating When and By What Action(s) Mr. Lovette Agreed to Join the Conspiracy.**

The Government should specify how the described incidents implicate Mr. Lovette, including identifying which acts of other employees at Pilgrim's Pride, if any, the Government contends that Mr. Lovette is responsible for and under what theory. *Dunn*, 841 F.2d at 1030 (defendant is entitled to "the theory of the government's cases"). This information is critical because Mr. Lovette is alleged to be involved in only six of the fourteen episodes and his alleged

involvement is minimal and lawful as alleged. The majority of Mr. Lovette's involvement consists of internal communications between Mr. Lovette and Mr. Penn, a Pilgrim's Pride employee, or other employees at Pilgrim's Pride. Yet, the Government alleges that Mr. Lovette "participated in a continuing network of Suppliers and coconspirators," and seemingly suggests that the Government may seek to hold him responsible for the conduct of others that occurred through the undefined "continuing network" about which he has no participation or knowledge. (Dkt. 101 ¶ 47). Mr. Lovette is therefore entitled to be provided with the particulars regarding the Government's theory as to how he joined and contributed to the charged conspiracy so that he can prepare his defense. *See United States v. Feil*, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010) ("Defendants are entitled to further particulars on the 'manner in which [they] and each alleged co-conspirator, whether or not named in the indictment, contributed to the charged conspiracy.'") (citation omitted); *compare United States v. Helmel*, 769 F. 2d 1306, 1322 (8th Cir. 1985) (vagueness in indictment as to time of defendant's participation in the alleged conspiracy cured by bill of particulars disclosing the time frame of defendant's); *United States v. Bazezew*, 783 F. Supp. 2d at 168-69 (due to breadth of alleged conspiracy and lack of specifics regarding certain defendants requiring (1) a description of any overt act taken by each of the defendants prior to key dates indicating their earliest participation in the conspiracy; (2) the identities of all alleged co-conspirators regardless of whether they would  be called as trial witnesses; and (3) the approximate date of any conversations between any of the defendants  and any purported co-conspirators that preceded a key date).

Additionally, the timing of when the alleged agreement was made is crucial to prepare a defense against the allegations. The Superseding Indictment fails to set forth, with particularity, the dates of the alleged illegal conduct, and the means by which Mr. Lovette allegedly joined the

conspiracy. The Superseding Indictment includes fractured and unrelated actions and actors over at least a seven-year period (in which Mr. Lovette is alleged to have participated in acts between 2012 and 2016). The Government's theory regarding when Mr. Lovette agreed to participate in the conspiracy and by what actions Mr. Lovette agreed to participate in the alleged conspiracy is critical because Mr. Lovette has no alleged involvement in eight of the fourteen alleged incidents in the Superseding Indictment. His involvement in 2012 is limited to receipt of a document from Mr. Penn, an alleged co-conspirator who reported to Mr. Lovette at Pilgrim's Pride. Mr. Lovette's involvement in 2014 is limited to alleged conversations that, on their face, appear to be typical day-to-day routine internal business communications between employees at Pilgrim's Pride.

Finally, the Government alleges that Mr. Lovette knowingly participated in a conspiracy. Acting "knowingly" means to act voluntarily and intentionally, not because of a mistake or accident. *United States v. Wise*, 370 U.S. 405, 415-416 (1962). To be convicted, the evidence must establish that Mr. Lovette joined the conspiracy and that he did so with the intent to advance the objective of the conspiracy – price fixing. Yet, the Superseding Indictment fails to set forth any facts or theory demonstrating how Mr. Lovette joined the alleged conspiracy, nor does it explain how Mr. Lovette joined the alleged conspiracy with the intent to advance price-fixing.

The Government should specify Mr. Lovette's involvement in the conspiracy including (1) when Mr. Lovette agreed to join the conspiracy; (2) by what acts Mr. Lovette agreed to join the conspiracy (3) which of the co-conspirators Mr. Lovette conspire with; and (4) which acts of other employees at Pilgrim's Pride, if any, the Government contends that Mr. Lovette is responsible for and under what theory.

**D.  The Government Should Specify Which of the Alleged Overt Acts in Furtherance of the Conspiracy were Alleged to Have Occurred within the Limitations Period.**

To prepare a defense of this case, Mr. Lovette is entitled to rely upon the alleged acts in furtherance of the conspiracy that occurred within the statute of limitations. The Government has failed to identify which overt acts in furtherance of the alleged conspiracy it relies upon that occurred within the limitations period. The Superseding Indictment alleges fourteen distinct incidents that occurred over a seven-year time period but fails to describe how the fourteen incidents are related to any single conspiracy involving Mr. Lovette. Mr. Lovette also is entitled to understand the Government's theory about how these alleged disparate acts relate to a single, continuing conspiracy and how Mr. Lovette allegedly participated in such a conspiracy.   Based on the Superseding Indictment, Mr. Lovette is left to hazard a wild guess as to the Government's theory on how he was involved in an alleged continuing conspiracy.

The Superseding Indictment claims that, "beginning at least as early as 2012 and continuing through at least early 2019," the Defendants engaged in an agreement to fix, maintain, stabilize and raise the price of broiler chickens. (Dkt. 101 ¶¶ 1-2). Despite this, the Superseding Indictment only alleges incidents occurring through 2017. Even more, the Superseding Indictment provides information concerning fourteen separate and distinct incidents which were said to be "part of" the conspiracy, suggesting that there are potentially more undisclosed incidents the Government contends are a part of the conspiracy.

Mr. Lovette is entitled to "the theory of the government's cases," including how the acts charged occurred within the limitations period. *Dunn*, 841 F.2d at 1030. There is only once incident alleged to have occurred after October 6, 2015 (the date five years preceding the return of the Superseding Indictment) that involves Mr. Lovette, and all of the alleged actions prior to October 6, 2015 are barred by the statute of limitations. *See* 18 U.S.C. § 3282. To prepare a defense, Mr.

Lovette needs to be provided the particulars of when the alleged conspiracy began, what alleged overt acts occurred within the limitations period, and when the alleged conspiracy ended.

## IV.   CONCLUSION

Mr. Lovette is entitled to the basic information needed in order to defend himself at trial against the charges alleged. The court should order the Government to provide Mr. Lovette a bill of particulars. Mr. Lovette respectfully requests particularity to the following:

(1) a list of implicated contracts or bids, including the time frame, the customers, the relevant products, the allegedly impacted contractual terms or prices, the suppliers involved and the names of those with whom he allegedly conspired;

(2) when the conspiracy began;

(3) when and by what action Mr. Lovette agreed to join the conspiracy;

(4) the identities of all the alleged co-conspirators;

(5) the substance of the conspiratorial agreements;

(6) the Government's theory of how the conspiracy continued throughout the alleged seven plus-year period (including before 2012) and across the fourteen identified instances;

(7) the Government's theory of how Mr. Lovette allegedly participated in the conspiracy, including the acts of other employees at Pilgrim's Pride, if any, the Government contends that Mr. Lovette is responsible for and under what theory; and

(8) when the conspiracy ended.

This the 30th day of November, 2020.

Respectfully submitted,

By: /s/ John A. Fagg, Jr.
**Moore & Van Allen PLLC**
100 North Tryon Street
Suite 4700
Charlotte, NC  28202-4003
Telephone:  704-331-3622
Email:  johnfagg@mvalaw.com

*Attorneys for William Wade Lovette*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of November, 2020, I electronically filed the foregoing **DEFENDANT WILLIAM LOVETTE'S MOTION FOR BILL OF PARTICULARS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

By: <u>/s/ John A. Fagg, Jr.</u>