**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **TIMOTHY R. MULRENIN,**
6. **WILLIAM VINCENT KANTOLA,**
7. **JIMMIE LEE LITTLE,**
8. **WILLIAM WADE LOVETTE,**
9. **GARY BRIAN ROBERTS,**
10. **RICKIE PATTERSON BLAKE,**

    Defendants.

---

**GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT
MOTION FOR ADDITIONAL DISCOVERY**

---

The Court should deny the defendants' joint motion for additional discovery, which seeks to compel the government to produce unredacted versions of "white papers" written by outside counsel for four chicken suppliers arguing why the suppliers should not be charged for their participation in the same conspiracy charged in this case. The redacted portions of the white papers—comprising attorney arguments, previously disclosed factual assertions, and prudential considerations relating to prosecutorial discretion—are simply not discoverable under Rule 16. Nor are they *Brady/Giglio* material. Tellingly, counsel for Mr. Fries and Mr. Brady, who possess and

have reviewed a fully unredacted version of their employer's (Claxton's) white paper and therefore are in a position to compare it to the redacted version produced by the government, offer no concrete examples of improper redactions. Thus, far from making a *prima facie* showing that the redactions obscure anything exculpatory or otherwise material to preparing the defense, the defendants' motion is grounded in mere speculation.

## BACKGROUND

The government is conducting an ongoing investigation in the broiler chicken industry which has so far resulted in felony charges against the ten defendants captioned above and has many other subjects, both individual and corporate, who remain under investigation. As with almost any overt investigation, counsel representing the various subjects have sought, from time to time, to persuade the government to exercise its prosecutorial discretion in a manner favorable to their respective clients, often by making attorney arguments, explaining their views on the facts, or raising prudential considerations that, in their opinion, weigh against prosecution. Such communications have taken place in person, over the phone, via video conference, and in writing, including via advocacy pieces termed as "white papers." The government has so far received white papers from four chicken suppliers (Pilgrim's, Claxton, Koch, and George's) containing attorney arguments and factual assertions, and addressing the "Filip" factors.[1]

---

[1] The Filip factors, also known as the Principles of Federal Prosecution of Business Organizations, set forth prudential considerations to guide the government in exercising its prosecutorial discretion with respect to corporations. *See* Justice Manual § 9-28.300.

2

In the course of communicating with counsel, the government received many factual assertions, which it has disclosed to the defendants under *Brady/Giglio*, Rule 16, or the government's liberal approach to discovery in this case. To that end, the government provided the defendants with 87- and 50-page information letters for the vast majority of those communications—which the defendants have inaccurately dubbed "*Brady* letters"—summarizing the factual assertions and providing relevant Bates numbers but generally omitting attorney argument and prudential considerations raised by counsel. For example, an information letter dated August 5, 2020, contains entries of the following nature:[2]

- The chicken mafia may all lease a property outside of Atlanta, GA that they use for hunting. ▌▌▌▌ may have hunted with some of them. They might have thrown prices and rigged bids amongst each other. ▌▌- 0000011012 showed ▌▌▌▌ forwarding an email with attached pricing model. [p. 33]

- Amongst ▌▌ employees, ▌▌ was known as a person who could procure price information from competitors. An email chain, ▌▌- 000260691, describes him as "the stud of all studs" in reference to competitor contacts. [p. 41]

- ▌▌ did not remember the call, but believed it could have been about ▌▌ pricing. ▌▌ may have asked where ▌▌ ended up, but he did not have a specific recollection. [p. 79]

In the case of the white papers, however, rather than producing a summary letter of a similar nature, the government opted to produce the white papers themselves. In so

---

The government cites the Justice Manual here for context only, and the citation is not intended to imply that the Justice Manual creates rights for defendants.
[2] The redactions here are for the purposes of this public filing. Also, the letter is 87 pages, so the government does not attach it as an exhibit to this brief. However, the government will provide the full unredacted letter to the Court if the Court so desires.

doing, the government redacted factual assertions that have already been produced to the defendants, attorney arguments, and the Filip-factor analyses. In other words, the government did not redact what could be considered new factual assertions but did redact factual information already provided and, consistent with the approach taken in creating the 87- and 50-page information letters, also redacted attorney arguments and prudential considerations (Filip factors).

Soon thereafter, the defendants requested unredacted versions of the white papers based on the speculative assertion that the redacted portions may contain *Brady* and/or *Giglio* material. They also requested the government's legal bases for withholding the redacted portions of the white papers. Far from "refusing" to provide its legal bases, the government provided a reasonable explanation to defense counsel on December 28, 2020:

> The government is aware of, has abided by, and will continue to abide by, its disclosure obligations under *Brady*, *Giglio*, Jencks, Rule 16, and the like. Importantly, however, the government's obligations do not translate into a right for defendants to access everything in the prosecution file. *United States v. Garcia-Martinez*, 730 Fed. App'x 665, 677 (10th Cir. 2018). Your non-specific speculation that the redacted portions of the white papers "very well may contain, inter alia, *Brady* and/or *Giglio* materials" is an insufficient basis to justify your demand for fully unredacted versions. At best, it is a general request governed by the principles enumerated in *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), it is the State that decides which information must be disclosed."), and more recently set forth in *United States v. Nacchio*, 05-cr-545, 2006 WL 8439750, at *7 (D. Colo. Aug. 28, 2006) ("In the face of Defendant's lack of specificity in his requests, the Government's disclosure decisions control.") (citing *Ritchie*, 480 U.S. at 59).

The defendants were unsatisfied with the government's explanation and renewed their request for the government's legal bases for the redactions. And again, far from

4

"refusing," the government responded on January 25, 2021:

> Our legal basis for redacting the white papers is simply that the redacted portions are not discoverable under *Brady*, *Giglio*, 3500, Rule 16, or any other authority, and as such were not produced. While we could have produced summary letters disclosing what is at best potentially discoverable information contained in the white papers, *United States v. Garcia-Martinez*, 730 Fed. Appx. 665, 677 (10th Cir. 2018) (approving the government's production of summary letters in place of underlying documents to satisfy *Brady* obligations); *United States v. Brown*, 650 F.3d 581, 589-91 (5th Cir. 2011) (same), in this instance we made a perfectly reasonable and appropriate decision to produce the white papers redacted to remove non-discoverable material, *United States v. Davis*, 971 F.3d 524, 533-34 (5th Cir. 2020) (holding that there was no *Brady* or *Giglio* violation where the prosecution produced redacted interview reports to the defendant); *United States v. Rodriguez*, 452 Fed. Appx. 883, 888-89 (11th Cir. 2012) (similar); *United States v. Stinson*, 647 F.3d 1196, 1208 (9th Cir. 2011) (similar). Either approach adequately satisfies the government's discovery obligations, and we opted for the latter.

Still unsatisfied, the defendants filed the instant motion.

## LEGAL STANDARD

Rule 16 permits a defendant to make a general request for discovery that triggers the government's duty to turn over "items"—evidence in the form of "books, papers, documents, data, photographs, tangible objects, buildings or places"—or "*portions* of any of these items," Federal Rule of Criminal Procedure 16(a)(1)(E) (emphasis added), that are "material to preparing the defense," Rule 16(a)(1)(E)(i). Such evidence is "material" under Rule 16 if it tends to "refute the Government's arguments that the defendant committed the crime charged." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). Thus, "[m]ateriality means more than that the evidence in question bears some abstract logical relationship to the issues in the case." *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975). Rather, to be material, "[t]here must be some indication

5

that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Id.* at 763.

If the defendant makes a subsequent Rule 16 request for evidence that the government did not disclose, he "bears the burden to make a *prima facie* showing of materiality." *United States v. Simpson*, 845 F.3d 1039, 1056 (10th Cir. 2017); *see also United States v. Lujan*, 530 F. Supp. 2d 1224, 1234 (D.N.M. 2008). "[T]he defendant must make a specific request for the item together with an explanation of how it will be helpful to the defense." *United States v. Jordan,* 316 F.3d 1215, 1250 (11th Cir. 2003) (internal quotation marks omitted). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). Even if the defendant carries his burden, Rule 16 does not require the government to produce "information that is . . . duplicative of other materials already produced in discovery." *United States v. Santiago*, No. 10-cr-164, 2015 WL 13215020, at *8 (D. Colo. July 14, 2015).

The government must also produce exculpatory and impeachment evidence under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), that is, evidence favorable to the defendant and material to his guilt or punishment, *Brady*, 373 U.S. at 87. Strictly speaking, however, *Brady*/*Giglio* are not discovery rules but rather due process requirements. *Smith v. Sec. of N.M. Dep't of Corrections*, 50 F.3d 801, 822 (10th Cir. 1995). Although both Rule 16 and *Brady*/*Giglio*

hinge on "materiality," that word has a different meaning in each respective context.[3] Whereas Rule 16 requires an evaluation of whether an undisclosed item of evidence is material to preparing the defense, *Brady*/*Giglio* require an evaluation of whether an entire body of undisclosed evidence favorable to the defendant is material in that it creates a "reasonable probability" of a different result at trial. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (The government has a "responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached.").

Two consequences follow. First, "[t]he mere possibility that an item of undisclosed information might have aided the defense, . . . does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110 (1976) (internal citation omitted); *see also United States v. Bagley*, 473 U.S. 667, 675 n.7 (1985) ("[A] rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgments."); *Smith*, 50 F.3d at 823 ("The Constitution, as interpreted in *Brady*, does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant."); *United States v. Espinoza-Romero*, No. 14-cr-00144-CMA, 2016 WL 11642376, at *2 (D. Colo. Jan. 28, 2016) (explaining that "*Brady*

---

[3] The government recognizes that *United States v. Weiss*, No. 05-CR-179-B, 2006 WL 1752373, at *2 (D. Colo. June 21, 2006), held otherwise. However, the decision was based on a misreading of the 1974 Advisory Committee Notes, which specifically state that Rule 16 does not codify *Brady* but recognizes that there is some overlap.

and its progeny do not require disclosure of all information that might simply be useful to a defendant").

Second, achieving a different result at trial presupposes that *Brady*/*Giglio* evidence must be either admissible or capable of leading to the discovery of admissible evidence. *See Madrid v. Wilson*, 590 F.3d 773, 778 (10th Cir. 2014); *Banks v. Workman*, 692 F.3d 1133, 1142 (10th Cir. 2012) ("The nub of the problem is that evidence cannot qualify as material without first being admissible or at least 'reasonably likely' to lead to the discovery of admissible evidence.").

## DISCUSSION

The defendants' motion should be denied because the redacted portions of the white papers are neither discoverable under Rule 16 nor required to be disclosed under *Brady*/*Giglio*. White papers—advocacy pieces—are not evidence in the traditional sense. To be sure, they may have factual components inserted by lawyers, but they are not ordinary-course documents, communications among conspirators, or fruits of a crime, etc., and so handling them like typical evidence in criminal discovery is like putting a square peg in a round hole. The Federal Rules of Criminal Procedure and the Due Process Clause certainly were not written with white papers in mind. Nevertheless, as Rule 16 specifically contemplates discovery of "portions" of evidentiary items, Fed. R. Crim. P. 16(a)(1)(E), and the government attempted to strike a balance by providing the defendants with arguably new factual assertions contained in the white papers and redacting portions of the materials to which defendants are not entitled, namely: (1) attorney arguments, (2) previously disclosed information, and (3) prudential

considerations relating to prosecutorial discretion.

Each of those categories is discussed below, but it is first worth noting a telling omission from the defendants' brief: counsel for Mr. Fries and Mr. Brady have access to the complete, unredacted white paper submitted by Claxton, and yet they offer not a single concrete example to demonstrate that the redacted portions are material under Rule 16 or *Brady/Giglio*. The most they offer is that the Claxton white paper "addresses each of the incidents in the original Indictment relevant to Claxton (and in turn the other defendants implicated in those allegations), relying on specific documents[4] to support its argument and analysis that there was no bid rigging or price fixing as alleged by the government." Defs.' Br. at 6. That describes most any white paper submitted by investigative subjects and plainly falls short of the specificity required to establish a *prima facie* case of materiality for purposes of Rule 16. *Mandel*, 914 F.2d at 1219. Likewise, if the Claxton white paper contains any *Brady/Giglio* material, as the defendants speculate about the other white papers, it stands to reason that Mr. Fries and Mr. Brady would have mentioned that in the opening line of their brief and filed it under restriction as an attachment. But they did not. This is all to say that the defendants have created a lot of smoke where there is no fire.

---

[4] Bates-numbered documents cited in the white papers have already been produced, with the exception of a handful of documents cited in one of the white papers. The government has requested those documents and will promptly produce them to the defendants once they are received by the government and processed for production, as the government continues to do with all documents received on an ongoing basis. Also, a few Bates numbers were inadvertently redacted from the white papers. The government will provide those to the defendants as well.

9

*Attorney Arguments.* The government's redaction of attorney argument in the white papers was entirely proper. Rule 16 and *Brady*/*Giglio* are concerned with *evidence*. But a fundamental tenet of our adversarial legal system is that "attorney argument is *not* evidence." *Bird v. West Valley City*, 831 Fed. App'x 881, 891-92 (10th Cir. 2020) (emphasis added). That ends the inquiry.

Even if they were somehow considered "evidence," attorney arguments in the white papers are not material under Rule 16 as they do not enable the defendants "significantly to alter the quantum of proof in [the defendants'] favor." *Ross*, 511 F.2d at 762. In *United States v. Rigas*, the defendants, accused of defrauding their employer, made a Rule 16 request for "Firm documents" that consisted of "memoranda, presentations, reports, and issues catalogues" created by two law firms and an accounting firm hired by the employer to investigate the defendants' scheme. 258 F.Supp.2d 299, 306 (S.D.N.Y. Apr. 21, 2003). The government agreed to produce "any documents referred to, cited in, or incorporated in the Firm Documents [and] any witness statements," but not the Firm documents themselves, which contained analyses and conclusions of the investigation. *Id.* In attempting to make their *prima facie* showing of materiality, the defendants argued that "the Firm Documents will save them time in sifting through discovery and, as the information contained therein presumably played a role in the structure of the government's case, will provide information material to preparing their defense." *Id.* at 307. The court sided with the government, explaining that "[a]lthough they argue strenuously that the Firm Documents are vital to preparing their defense, at bottom Defendants attempt to equate 'material' with 'useful' in order to

meet their burden under Rule 16(a)(1)(E)(i)." *Id.*

The defendants here have not made a *prima facie* showing of materiality with respect to attorney arguments. They claim that they should be permitted to review "arguments derived by these [chicken suppliers] and their counsel that counter the government's legal theory," Defs.' Br. at 5, so they can pursue "legal theories" material to the case. *Id.* at 6. As in *Rigas*, the defendants here are clearly attempting to equate "material" with "useful." It strains credulity for the defendants to suggest that the more than two dozen defense lawyers from top-notch law firms listed on the docket, supported by an unknown number of lawyers and paralegals working behind the scenes, need pre-packaged attorney arguments in order to pursue legal theories. Moreover, there is nothing preventing defense counsel from consulting with the very lawyers who wrote the white papers at issue. Indeed, the protective order entered by the Court in this case contemplates such consultation. *See* ECF No. 193 ¶ 4 (allowing disclosure of protected material to "outside counsel for a defendant's employer or, in the case of Mr. Austin, former employer").

Nor are attorney arguments material under *Brady/Giglio* because the government has "no obligation to disclose possible theories of the defense to a defendant." *United States v. Comosona*, 848 F.2d 1110, 1115 (10th Cir. 1988). The defendants' contention that "a company's denial of criminal wrongdoing is potentially exculpatory," Defs.' Br. at 6, does not change that. Attorney arguments are also immaterial because either they are not admissible or, to the extent attorney arguments are capable of leading to admissible evidence, the arguments in the white papers would lead to factual

11

underpinnings the defendants already have (13 million documents, 87- and 50-page information letters, interview reports, and the unredacted portions of the white papers themselves). *Banks*, 692 F.3d 1144 ("[I]t's hard to see how the [evidence at issue] would have tipped off [the defendant] to any leads of which he was not already aware of.")

*Previously-Disclosed Information.* The government properly redacted factual assertions that have been provided to the defendants in some other form, such as the 13 million documents, 87- and 50-page information letters, and interview reports already produced. The defendants therefore cannot make a *prima facie* showing of materiality as to those facts under Rule 16.

It should go without saying that Rule 16 does not require the government to produce "information that is . . . duplicative of other materials already produced in discovery." *Santiago*, 2015 WL 13215020, at *8. *United States v. Loewen* illustrates the point. No. 13-cr-10200, 2015 WL 134157 (D. Kan. Jan. 9, 2015). There, the defendant moved for "disclosure of FBI electronic communications which have been redacted by 'blacking out' parts of documents." *Id.* at *1. In denying the motion, the court explained that "materiality must be viewed in the overall context of document disclosure." *Id.* at *2. In light of the fact that "[l]iterally tens of thousands of documents have been disclosed by the government," coupled with the government's representation that "most of the unredacted [*sic*, redacted] portions of the documents in question have been disclosed in other documents," the court concluded that "no showing has been made that the redacted information, if disclosed, would significantly alter the quantum of proof in defendant's favor." *Id.*

12

The same result is warranted here. Considering, as the *Loewen* court did, the overall context of disclosure in this case—where the government disclosed approximately 13 million documents (which are electronically searchable and accompanied by annotated indices), two lengthy disclosure letters, and interview reports—the redacted portions of the white papers do not contain information that has not yet been disclosed but which is capable of "significantly . . . alter[ing] the quantum of proof" in defendants' favor. *Ross*, 511 F.2d at 762. In any event, throughout the white papers, any Bates numbers identifying the documentary support for factual assertions remain unredacted. Therefore, the defendants have the documents that the authors of the white papers deemed most relevant and are free to develop leads from those documents.

*Brady/Giglio*, like Rule 16, also do not require the government to produce duplicative evidence. *Santiago*, 2015 WL 13215020, at *8.

<u>*Prudential Considerations.*</u> The government properly redacted from the white papers Filip factor analyses, which are prudential considerations meant to guide the government in the exercise of its prosecutorial discretion with respect to corporations (not individuals), as such analyses are unrelated—except in the most tangential way—to the merits of the charges against the defendants.

The defendants cannot make a *prima facie* showing of materiality under Rule 16 for the Filip factor analyses because it is axiomatic that irrelevant evidence (to the extent the analyses can be considered "evidence" in the first place) is not material to preparing the defense. The irrelevance of the Filip factors to the defendants' guilt or

innocence also renders them immaterial for purposes of *Brady/Giglio*.

*************************

The defendants make a few additional arguments that do not fit neatly into the above discussion, but merit addressing. First, the legitimacy of the government's decision to redact the white papers is not undermined by its prior decision to share arguments in information letters. Defs.' Br. at 7. To the extent a few attorney arguments may have made their way into the information letters, the letters themselves state that "there is an abundance of information being produced herein that goes well beyond those [discovery] obligations." To require the government to exceed its discovery obligations merely because it has done so previously is unsupported by law. Doing so would violate the spirit of Rule 16 and *Brady/Giglio*, creating perverse incentives for the government to guard information more closely in future cases.

Second, and related, the defendants argue that the government's failure to redact non-discoverable and non-*Brady/Giglio* evidence from 13 million documents undermines the legitimacy of the white paper redactions. Defs.' Br. at 8. That argument fails for the reason stated in the previous paragraph, and further because of its absurdity; the government does not have the resources to redact 13 million documents, and there is no requirement that it do so.

Finally, the defendants argue that Pilgrim's agreement to plead guilty[5] after submitting a white paper is significant. Defs.' Br. at 6. Although the exact import of the

---

[5] Pilgrim's Pride Corporation has agreed to plead guilty, and Judge Raymond Moore is set to accept or reject the agreement during a change of plea hearing on February 23, 2021. *United States v. Pilgrim's Pride Corp.*, No. 1:20-cr-00330-RM.

14

timing is unclear to the government, the thrust of the defendants' argument seems to be that any discrepancies between the Pilgrim's white paper and the factual basis for the guilty plea renders the white paper material. However, the defendants fail to articulate why any such discrepancies would be material. In any event, the Tenth Circuit has addressed a similar argument and rejected it. *See Comosona*, 848 F.2d at 1115 ("[The defendant's] theory seems to be that even though none of the statements was exculpatory, the discrepancies contained in the statements could have given rise to an inference that [someone else] was responsible for [the victim's] death. We decline to extend the scope of the *Brady* decision so far."). The Court should reject it here as well.

## CONCLUSION

For the reasons discussed above, Defendants' motions should be denied in full.

Respectfully submitted this 8th day of February, 2021.

> By:  s/ Michael T. Koenig
> Michael T. Koenig
> Heather D. Call
> Carolyn M. Sweeney
> Paul J. Torzilli
> Trial Attorneys
> Antitrust Division
> U.S. Department of Justice
> 450 Fifth Street, N.W.
> Washington, D.C. 20530
> Tel: (202) 616-2165
> Email: michael.koenig@usdoj.gov