**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    TIMOTHY R. MULRENIN,
6.    WILLIAM VINCENT KANTOLA,
7.    JIMMIE LEE LITTLE,
8.    WILLIAM WADE LOVETTE,
9.    GARY BRIAN ROBERTS,
10.  RICKIE PATTERSON BLAKE,

      Defendants.

## DEFENDANTS' JOINT REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR ADDITIONAL DISCOVERY

Defendants Jayson Penn, Mikell Fries, Scott Brady, Roger Austin, Timothy Mulrenin, William Kantola, Jimmie Little, William Lovette, Gary Roberts and Rickie Blake, by and through their respective counsel, respectfully file this Joint Reply in support of their Joint Motion for Additional Discovery, and in further support of said Motion, state as follows:

When it suits the government's purpose, it dumps millions of documents on defendants without undertaking any effort to filter or review them for materiality, noting in each and every discovery letter that "many of the materials are not required to be produced under the Government's discovery obligations, but are nonetheless being made available to you" and that "[b]y producing this material, however, we are not agreeing that it is discoverable or necessary to

1

produce under our discovery obligations." *See* Government's Response to Defendants' Joint Motion for Additional Discovery ("Response") (Doc. 236) at 3 (describing its approach to discovery as "liberal"). The government has indicated in its Response that, at least with respect to most of its discovery, it "does not have the resources to redact 13 million documents, and there is no requirement that it do so." *Id.* at 14. The net result is that defendants are tasked on a continual basis with searching for needles of material evidence in production haystack after production haystack, for none of which the government has provided any detailed log.

But when it comes to the production of the White Papers, the government has elected to take a completely different approach. For the first time, as defendants understand it, the government has applied a selective and narrow approach to its discovery obligations by heavily redacting all four of the White Papers. As the Court can see from the four redacted White Papers, the heavy-handed redactions stand in stark contrast to the government's stated approach to its discovery obligations in this case. *See* Redacted White Papers of Pilgrim's Pride, Claxton, Koch, and George's, attached hereto as Exhibits A through D.

The government argues that the redacted portions of the White Papers are somehow immaterial and, therefore, not discoverable. However, arguments of corporate counsel in white papers are typically intertwined with facts and factual determinations drawn from proffered results of internal investigations, rendering them material and discoverable. In making their arguments that Pilgrim's, Claxton, Koch, and George's did not violate the Sherman Act, counsel undoubtedly marshaled evidence gathered during their internal investigations, evidence which is surely material to the defendants and likely exculpatory. Moreover, balancing the reasons for withholding this information against the rights of the defendants, the redacting cannot be justified and, moreover, cannot be reconciled with this District's approach to discovery in

criminal cases. As discussed in greater detail in Defendant's Joint Motion For Additional Discovery (Doc. 231) at 7-9, "the prosecution must resolve close cases and doubtful questions in favor of disclosure." *United States v. McVeigh*, 923 F. Supp. 1310, 1314 (D. Colo. 1996) (citation omitted); *United States v. Nacchio*, 2006 U.S. Dist. LEXIS 114950, *19 (D. Col. Aug. 28, 2006).

In defending its redactions, the government mistakenly conflates materiality with admissibility. It contends that arguments of counsel for some of the chicken producers are not discoverable in this case because they would be inadmissible at trial. While defendants agree that arguments of counsel are inadmissible, the government's argument ignores two important points: (1) materiality under the Federal Rules of Criminal Procedure is not predicated on admissibility under the Federal Rules of Evidence; and (2) the government has already produced extensive summaries of the arguments of corporate counsel, albeit in the government's own words, in the form of the two government-dubbed "information letters" provided to defendants by the government. *See United States v. Lujan*, 530 F.Supp.2d 1224, 1234 (D. N.M. 2008) ("This materiality requirement is not a heavy burden; rather, evidence is material as long as there is a strong indication that the evidence 'will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'") (citing *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)). Indeed, those two letters, which comprise a total of 137 pages, were the product of an intentional decision by the government to summarize numerous meetings with corporate counsel, which is, at a minimum, a concession regarding the materiality of the statements and arguments of corporate

3

counsel.  Similarly, White Papers, which contain, *inter alia,* arguments of corporate counsel, would fall in the same category, and should also be produced.[1]

In its Response, the government makes much of the fact that counsel for Messrs. Fries and Brady omitted examples of material information contained in the redacted Claxton White Paper and then suggests those counsel lacked a good faith basis for filing the Motion for Additional Discovery.[2]  Such a suggestion is unwarranted and inappropriate.  As the government is aware, the Claxton White Paper is replete not only with arguments of Claxton's counsel, but also with *factual statements* that clearly are material to the defense of the case.  For example, Claxton's counsel address *specific facts* (not just legal argument) regarding six of the incidents set forth in the Superseding Indictment, and then argue that such facts do not support criminal allegations against the company, as well as Messrs. Fries and Brady.  It is this type of factual recitation, which the government knows is the backbone of the legal arguments in the White Papers, that renders them material to all defendants.  If the Court has any doubt about whether the White Papers should be produced in unredacted form, defendants urge the Court to review

---

[1] An analogy to the sword and shield doctrine is inescapable.  "A litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2005) (quoting *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998)).  Here the government portrays its interactions with corporate counsel to its advantage – using as a sword selected summaries and choice words – while preventing defendants from testing or challenging the government's summaries, descriptions, and related assertions by using "materiality" as the shield.  The result should be the same.

[2] Consistent with defendants' understanding of the Court's expectation regarding how the parties should address discovery disputes, defendants twice asked the government to explain why, having decided to produce the White Papers in the first place, it was entitled to heavily redact them.  Both of the government's replies were non-responsive on the question of the basis for its redactions and instead simply stated its conclusion that the material is not discoverable.  Response at 5.  It was only in response to defendants' motion that the government provided the actual reasoning behind its redactions.

the unredacted White Papers *in camera* so that it can make its own determination. The government should have no objection since the Department of Justice's own policy encourages such a review. *See* Justice Manual, 9-5.001(F) ) (updated Jan. 2020), https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings#9-5.001 ("Where it is unclear whether evidence or information should be disclosed, prosecutors are encouraged to reveal such information to defendants or to the court for inspection *in camera* and, where applicable, seek a protective order from the Court. By doing so, prosecutors will ensure confidence in fair trials and verdicts.") (emphasis in original).

Of significance, the government's inconsistent approaches to its discovery obligations in this case would deprive defendants of evidence material to their defense, if not addressed by this Court. It was only by filing the instant motion and receiving the government's response that defendants discovered the government was employing such a disparate approach to its discovery obligations, and that material evidence had been inappropriately redacted from the White Papers. *See* Response at 9 n.4 (conceding that a "few Bates numbers were inadvertently redacted from the white papers" and that "a handful of documents cited in one of the white papers" were also not produced). In departing from its apparent prior practice of not making materiality determinations, the government has now decided to apply wholesale redactions and, as a result, has withheld material evidence.[3]

---

[3] In erring on the side of disclosure with respect to discovery (other than the White Papers), the government was following its own internal policy: "Recognizing that it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence. *Kyles*, 514 U.S. at 439. While ordinarily, evidence that would not be admissible at trial need not be disclosed, this policy encourages prosecutors to err on the side of disclosure if admissibility is a close question." Justice Manual, 9-5.001(B)(1); *see also* 9-5.001(C) ("Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between

Defendants submit that the government should not be permitted to have it both ways – to drown defendants in irrelevant evidence with what appears to be the production of every document it received in response to myriad grand jury subpoenas, including all documents produced in a pending civil class action, and then strategically parse out particular evidence in the White Papers.

The principal danger of the government's approach is that defendants rarely would have visibility into when the government decides to apply one approach or another, and correspondingly would be deprived of an opportunity to object and possibly seek judicial review, if a noted deficiency had not been cured. But for the instant motion, defendants would have been lulled into false comfort, that while they are buried in irrelevant material, at least the government was not selectively withholding evidence by applying its own faulty definition of materiality to its discovery obligations. In light of the government's inconsistent treatment of the White Papers and its admission after the filing of the motion that, in fact, it had not produced all of the discoverable information in the White Papers (though it now intends to self-remediate), the government's position should not be accepted by the Court without the Court having the opportunity to make its own assessment.

WHEREFORE, defendants respectfully request that the Court order the government to produce unredacted copies of the White Papers or conduct an *in camera* review of the unredacted

---

guilt and innocence. As a result, this policy requires disclosure by prosecutors of information beyond that which is 'material' to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999)."); 9-5.001(F) ("Thus, this policy encourages prosecutors to err on the side of disclosure in close questions of materiality and identifies standards that favor greater disclosure in advance of trial through the production of exculpatory information that is inconsistent with any element of any charged crime and impeachment information that casts a substantial doubt upon either the accuracy of any evidence the government intends to rely on to prove an element of any charged crime or that might have a significant bearing on the admissibility of prosecution evidence.")

White Papers to determine whether they should be produced without redactions or, at a minimum, should be produced in a less redacted form.

Respectfully submitted this 12th day of February 2021,

          *s/ Bryan B. Lavine*
          Bryan B. Lavine
          Troutman Pepper Hamilton Sanders LLP
          Attorney for Defendant Scott James Brady
          600 Peachtree St. NE, Suite 3000
          Atlanta, GA 30308
          (404) 885-3170
          Bryan.lavine@troutman.com

          *s/ Richard K. Kornfeld*
          Richard K. Kornfeld
          RECHT KORNFELD, P.C.
          Attorney for Defendant Mikell Reeve Fries
          1600 Stout Street, Suite 1400
          Denver, Colorado 80202
          (303) 573-1900
          rick@rklawpc.com

          *s/ Michael S. Feldberg*
          Michael S. Feldberg
          REICHMAN JORGENSEN LEHMAN &
          FELDBERG LLP
          Attorney for Defendant Roger Born Austin
          750 Third Avenue, Suite 2400
          New York, NY 10017
          (212) 381-1965
          mfeldberg@reichmanjorgensen.com

          *s/ Michael F. Tubach*
          Michael F. Tubach
          O'MELVENY & MYERS LLP
          Attorney for Defendant Jayson Jeffrey Penn
          Two Embarcadero Center, 28th Floor
          San Francisco, CA 94111
          (415) 984-8876
          mtubach@omm.com

*s/ Elizabeth Prewitt*
Elizabeth B. Prewitt
Latham & Watkins LLP-DC
Attorney for Defendant Timothy R. Mulrenin
885 Third Avenue
New York, NY 10022-4834
(212) 906-1354
Elizabeth.Prewitt@lw.com

*s/ James A. Backstrom*
James A. Backstrom, Counsellor at Law
Attorney for Defendant William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*s/ Mark A. Byrne*
Mark A. Byrne
Byrne & Nixon LLP
Attorney for Defendant Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

*s/ John Anderson Fagg, Jr.*
John Anderson Fagg, Jr.
Moore & Van Allen PLLC
Attorney for Defendant William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Craig Allen Gillen*
Craig Allen Gillen
Gillen Withers & Lake, LLC
Attorney for Defendant Gary Brian Roberts
400 Galleria Parkway
Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

*s/ Barry J. Pollack*
Barry J. Pollack
Attorney for Defendant Rickie Patterson Blake
Robbins Russell Englert Orseck Untereiner
& Sauber LLP
2000 K Street N.W.
4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2021, I electronically filed the foregoing **DEFENDANTS' JOINT REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR ADDITIONAL DISCOVERY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Bryan B. Lavine*
Bryan B. Lavine