## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  JAYSON JEFFREY PENN,
2.  MIKELL REEVE FRIES,
3.  SCOTT JAMES BRADY,
4.  ROGER BORN AUSTIN,
5.  **TIMOTHY R. MULRENIN**,
6.  WILLIAM VINCENT KANTOLA,
7.  JIMMIE LEE LITTLE,
8.  WILLIAM WADE LOVETTE,
9.  GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

      Defendants.

---

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT MULRENIN'S MOTION PURSUANT TO RULE 17(c) FOR COURT ORDER AUTHORIZING A SUBPOENA DUCES TECUM TO PRODUCE DOCUMENTARY EVIDENCE IN ADVANCE OF TRIAL

The government respectfully submits this response in partial opposition to

defendant Timothy Mulrenin's motion for a Rule 17(c) subpoena to his former employer,

Tyson Foods, Inc. ("Tyson"). ECF No. 330. While the government does not oppose

Mr. Mulrenin's efforts to obtain information to aid his defenses in general, the proposed

subpoena to Tyson is the antithesis of the targeted subpoenas contemplated by Rule

17(c) and the Supreme Court in *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).

Instead, the subpoena's demands, with one exception, are either of the "all documents

over a long period of time" variety, or aimed at the government's investigation with

respect to Tyson. Mr. Mulrenin is engaging in a fishing expedition, seeking to circumvent the rules of discovery, attempting to undermine the government's investigation, and setting the stage for a delayed trial. The government thus opposes his motion except as to document request 4.[1]

## BACKGROUND

Notwithstanding Mr. Mulrenin's receipt of 14 million documents, dozens of interview reports, and extensive information disclosure letters, and further notwithstanding his two motions for the government to halt its rolling productions of newly received documents (even though Rule 16 and this Court's order require the productions), ECF Nos. 235 & 291, Mr. Mulrenin now moves the Court to issue a broad Rule 17 subpoena to Tyson, his former employer. The subpoena has 13 document requests. Requests 1-3, and 5 would require Tyson to produce "all documents" across an 8-year period. The remaining eight requests would require Tyson to produce materials relating to the government's investigation. *See* ECF No. 331.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 17(c)(1) enables a party to criminal litigation to obtain "books, papers, documents, data, or other objects" for admission at trial. *See* FED. R. CRIM. P. 17(c)(1). The rule "is 'not intended to provide an additional means of discovery,' but 'to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials.'" *United States v. Abdush-Shakur*, 465 F.3d

---

[1] The government does not oppose document request 4 so long as compliance with the request does not delay the scheduled October 25, 2021, trial date.

458, 467 (10th Cir. 2006) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220

(1951)).

For that reason, to gauge whether a requested Rule 17 subpoena should be

permitted, the Supreme Court has set forth a stringent test:

> in order to require production prior to trial, the moving party must
> show: (1) that the documents are evidentiary and relevant; (2) that
> they are not otherwise procurable reasonably in advance of trial by
> exercise of due diligence; (3) that the party cannot properly prepare
> for trial without such production and inspection in advance of trial
> and that the failure to obtain such inspection may tend
> unreasonably to delay the trial; and (4) that the application is made
> in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974). To successfully pass the *Nixon*

test, the movant "'must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3)

specificity.'" *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (quoting *Nixon*,

418 U.S. at 700).[2]

"The requirement of relevance serves to ensure that a subpoena is not used to

circumvent Rule 16." *United States v. Castro-Motta*, No. 11-cr-00033-REB, 2012 WL

---

[2] The government does not have access to Mr. Mulrenin's *ex parte* brief, but similar to defendants' prior motion, ECF No. 284 at 5, Mr. Mulrenin may claim that the District of Colorado adopted the standard set out in *United States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000), that considers whether the Rule 17(c) subpoena being sought is "reasonable" and "not unduly oppressive." But the court did not apply the *Nachamie* standard in the case cited by defendants in their motion, ECF 284 at 5, *United States v. Newsom*, No. 15–cr–00265–WJM, 2015 WL 6735397, at *4 (D. Colo. Nov. 4, 2015). Instead, the court found that the "looser subpoena standard [of *Nachamie*], to the extent it might apply, ha[d] not been satisfied" and "analyze[d] [defendant's] subpoena under the *Nixon* standard." *See id.* Furthermore, "the lower standard has very limited support and is in a distinct minority view" as "cases from the overwhelming majority of courts have applied the *Nixon* test." *United States v. Nelson*, No. 15-2023 MV, 2015 WL 9943540, at *3 n.1 (D.N.M. Dec. 4, 2015) (internal quotations omitted); *see id.* (finding no reason to eschew "the great weight of authority").

3400828, at *2 (D. Colo. Aug. 15, 2012). While in many instances relevance cannot be determined conclusively in advance, the movant must demonstrate "a sufficient likelihood that each of the [documents contain information] relevant to the offenses charged in the indictment," *Nixon*, 418 U.S. at 700, and must do so "*when* the evidence is sought," *United States v. Anderson*, 31 F. Supp. 2d 933, 944 (D. Kan. 1998) (emphasis added). Importantly, the concept of relevance in the Rule 17 context is narrow. "To demonstrate relevance, [the movant] must show that the evidence [he] seeks would demonstrate the absence of one or more of the essential elements of the crimes with which she is charged." *Castro-Motta*, 2012 WL 3400828, at *2.

The admissibility hurdle is also significant. The movant must demonstrate that the subpoenaed materials are admissible or at minimum very likely admissible through "a sufficient preliminary showing that each of the subpoenaed [documents] contains evidence admissible with respect to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700. As such, the question of admissibility cannot be set aside and determined at trial; as with relevancy, admissibility must be addressed "when the evidence is sought." *Anderson*, 31 F. Supp. 2d at 944.

The final, and most difficult, hurdle is specificity. *Anderson*, 31 F. Supp. 2d at 945. The subpoenas must be aimed at "certain documents or sharply defined groups of documents." *Id.* "[V]ague, global requests set forth in [Rule 17] subpoenas are patently inadequate to satisfy [the movant's] burden of proof." *Castro-Motta*, 2012 WL 3400828, at *2. Indeed, as this Court stated in its recent decision on defendants' motion for Rule

17 subpoenas, "requests for an entire file are evidence of an impermissible fishing expedition." ECF No. 315 at 2 (quoting *Morris*, 287 F.3d at 991).

## ARGUMENT

Even a brief review of the subpoena to Tyson reveals that Mr. Mulrenin cannot carry his burden under *Nixon*. Although the government is not privy to Mr. Mulrenin's *ex parte* brief in support of his motion, there is no readily apparent connection between the broad swaths of documents requested and his ability to "demonstrate the absence of one or more of the essential elements of the crimes[] . . . charged," *Castro-Motta*, 2012 WL 3400828, at *2. *See* ECF No. 284 at 7-11. Likewise, it is far from obvious that Mr. Mulrenin is able to make "a sufficient preliminary showing that *each* of the subpoenaed [documents] contains evidence admissible with respect to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700 (emphasis added). And perhaps the most obvious flaw with Mr. Mulrenin's proposed subpoena is its sweeping nature and his failure to tailor the document requests to "certain documents or sharply defined groups of documents." *Anderson*, 31 F. Supp. 2d at 945.

Turning from those general observations, the government now addresses the individual subpoena requests at a more granular level:

| Document Requests 1-2 |
|---|
| *1. All requests for BIDS made by a CHICKEN PURCHASER to TYSON FOODS, or BIDS submitted by TYSON FOODS to a CHICKEN PURCHASER, or CONTRACTS executed by TYSON FOODS, for the sale or purchase of BROILER CHICKEN PRODUCTS.* |
| *2. All purchase orders for the sale or purchase of BROILER CHICKEN PRODUCTS between TYSON FOODS and any CHICKEN SUPPLIER.* |

Document requests 1-2 fail the *Nixon* test on both specificity and relevance grounds. All contracts, bids, and purchase orders over an 8-year period is not a "sharply defined group[] of documents," *Anderson*, 31 F. Supp. 2d at 945, and the request is therefore an inappropriate fishing expedition, *Morris*, 287 F.3d at 991. As to relevance, although requests 1-2 might conceivably capture relevant bids, contracts, or purchase orders, Mr. Mulrenin fails to explain—in any public filing—why the entire corpus of documents is relevant to his defense. In addition, Mr. Mulrenin already possess many of the requested documents within the approximately 14 million documents produced by the government.[3]

| Document Request 3 |
|---|
| *3. All DOCUMENTS containing or reflecting reports from the following external market analysts relating to the sale of BROILER CHICKEN PRODUCTS or the financial performance of TYSON FOODS:* <br><br> *a. Agri Stats, Inc.* <br><br> *b. Urner Barry* <br><br> *c. Express Markets* <br><br> *d. Bank of America; and* <br><br> *e. Georgia Dock Index.* |

Document request 3 also fails the *Nixon* test. In addition to the non-specificity problem identified with respect to requests 1-2, the relevance of every single external

---

[3] The government acknowledges that document requests 1-2 mirror document requests 1-2 in the Pilgrim's subpoena, *see* ECF No. 284-2 Attachment A at 7, and that the Court found those requests to satisfy *Nixon*, ECF No. 315 at 4. While this footnote should not be construed as an embedded motion for reconsideration of the prior ruling, *see* D.C. Colo. LCrR 12.2, if the Court is inclined to allow Mr. Mulrenin's requests 1-2, the government respectfully urges the Court to require Mr. Mulrenin to narrow his requests significantly.

report that touches on broiler chicken sales by *anyone*, or on Tyson in any manner, across an 8-year period is not apparent. And in the unlikely event that such a wide-ranging body of documents is relevant, there are certain to be significant hearsay and other admissibility issues with any responsive documents. In addition, Mr. Mulrenin already possess many of the requested documents within the approximately 14 million documents produced by the government.[4]

| Document Request 4 |
|---|
| *4. All DOCUMENTS containing or reflecting TYSON FOODS organizational charts sufficient to identify reporting lines, groups, divisions, and company leadership.* |

The government has no objection to document request 4 as long as compliance with the request does delay the October 25, 2021, trial date.

| Document Request 5 |
|---|
| *5. All DOCUMENTS containing or reflecting any employment related documents, including but not limited to, employment contracts, compensation and bonus information, stock grants, key performance indicators, job performance metrics, performance evaluation or training (whether required or attended), and employee handbooks for the following individuals:*<br><br>    *a. TIMOTHY MULRENIN*<br><br>    *b. CARL PEPPER*<br><br>    *c. Gary Brian Roberts*<br><br>    *d. Phil Campbell*<br><br>    *e. Ritchey Collyar*<br><br>    *f. Andy Lubert*<br><br>    *g. Jared Mitchell*<br><br>    *h. Charlie Solomon* |

---

[4] Document request 3 mirrors document request 5 in the Pilgrim's subpoena. *See* ECF No. 284-2 Attachment A at 7. If the Court is inclined to allow the request, the government respectfully urges narrowing along the lines described in footnote 3 above.

|  |
|---|
| *i. Noel White* |
| *j. Timothy Scheiderer* |
| *k. Darrell Bowlin* |
| *l. Joey White* |
| *m. Kelley Davidson* |
| *n. Rob Costner* |
| *o. Steven Cullen* |
| *p. Brandon Campbell* |
| *q. Devin Cole* |
| *r. Mike Hannigan* |
| *s. Mark Milbrodt* |
| *t. Doug Ramsey* |
| *u. Charlie Solomon* |

Document request 5 fails the *Nixon* test primarily on relevance grounds because

Mr. Mulrenin does not explain how the requested human resources-type documents will

help negate "one or more of the essential elements of the crimes with which [he] is

charged." *Castro-Motta*, 2012 WL 3400828, at *2. In addition, Mr. Mulrenin already

possess many of the requested documents within the approximately 14 million

documents produced by the government.[5]

| **Document Requests 6-13** |
|---|
| *6. All documents reflecting COMMUNICATIONS with the DEPARTMENT OF JUSTICE or FBI from April 26, 2019, onward relating to BROILER CHICKEN PRODUCTS, the INVESTIGATION, the SUPERSEDING INDICTMENT, the LENIENCY APPLICATION, TIMOTHY MULRENIN or CARL PEPPER, including notes reflecting meetings, proffers, or other discussions between the DEPARTMENT OF JUSTICE and TYSON FOODS.* |

---

[5] Document request 5 mirrors document request 11 in the Pilgrim's subpoena. *See* ECF No. 284-2 Attachment A at 7. If the Court is inclined to allow the request, the government respectfully urges narrowing along the lines described in footnote 3 above.

7. *A list identifying the bates numbers for all DOCUMENTS disclosed to, delivered to, or decribed to the DEPARTMENT OF JUSTICE or the FBI from April 26, 2019, onward related to BROILER CHICKEN PRODUCTS, the INVESTIGATION, the LENIENCY APPLICATION, the SUPERSEDING INDICTMENT, TIMOTHY MULRENIN or CARL PEPPER.*

8. *All DOCUMENTS containing or reflecting records of any investigation, review, factfinding, or analysis, including interviews of any person, conducted by TYSON FOODS from April 26, 2016 onward related to the bidding, sale, or pricing of BROILER CHICKEN PRODUCTS, any investigation by the DEPARTMENT OF JUSTICE or the FBI, any alleged or potential violation of the U.S. antitrust laws, or any of the below individuals:*

    *a. TIMOTHY MULRENIN*

    *b. CARL PEPPER*

    *c. Gary Brian Roberts*

    *d. Phil Campbell*

    *e. Ritchey Collyar*

    *f. Andy Lubert*

    *g. Jared Mitchell*

    *h. Charlie Solomon*

    *i. Noel White*

    *j. Timothy Scheiderer*

    *k. Darrell Bowlin*

    *l. Joey White*

    *m. Kelley Davidson*

    *n. Rob Costner*

    *o. Steven Cullen*

    *p. Brandon Campbell*

    *q. Devin Cole*

    *r. Mike Hannigan*

    *s. Mark Milbrodt*

    *t. Doug Ramsey*

    *u. Charlie Solomon*

> 9. All DOCUMENTS containing, reporting on, documenting, or reflecting any COMMUNICATIONS, meetings, proffers, or discussions between TYSON FOODS and any State Attorneys General or private plaintiffs from April 26, 2019, onward related to the allegations and events described in the SUPERSEDING INDICTMENT, the INVESTIGATION, TIMOTHY MULRENIN or CARL PEPPER.

> 10. All DOCUMENTS containing, reporting on, documenting, or reflecting the COMMUNICATIONS between the DEPARTMENT OF JUSTICE and CARL PEPPER listed in Exhibit B, and the length of those meetings.

> 11. All DOCUMENTS from April 26, 2019 to present containing or reflecting COMMUNICATIONS involving TYSON FOODS and CARL PEPPER relating to YOUR status as a LENIENCY APPLICANT, including any calendar entries reflecting such COMMUNICATIONS.

> 12. All DOCUMENTS from April 26, 2019 to present containing or reflecting COMMUNICATIONS between YOU and CARL PEPPER relating to payments or other benefits given or offered by YOU in consideration for cooperation with the INVESTIGATION and/or TYSON FOODS' LENIENCY APPLICATION, including any agreements or offers to pay legal fees, or actual payments thereof.

> 13. All DOCUMENTS from April 26, 2019 to present containing, reflecting, or constituting records of attorney fees paid or reimbursed by TYSON FOODS on behalf of any TYSON FOODS employee, including CARL PEPPER, relating to the INVESTIGATION and/or the events contained in the SUPERSEDING INDICTMENT.

Document requests 6-13 fail the *Nixon* test as an improper fishing expedition aimed at gleaning details about the grand jury investigation to which Mr. Mulrenin is not entitled under Rule 16 or any other authority. *United States v. Abdush-Shakur*, 465 F.3d at 467 (explaining that Rule 17(c) subpoenas are not to be used as an additional means of discovery). The requests are also directed at documents for which there is no facial argument for admissibility, and if Mr. Mulrenin's purpose for these requests is to fish for impeachment evidence, that too is an inappropriate use of Rule 17(c) subpoenas. *See Nixon*, 418 U.S. at 701; *Hargrove*, 2013 WL 3465791, at *2; *Castro-Motta*, 2012 WL 3400828, at *3. To the extent the nature of the requests suggests the government has

not provided adequate discovery or disclosures, such a suggestion is unfounded. The government understands and has fulfilled, and will continue to fulfill, its Rule 16 discovery obligations and its obligations under *Brady*, *Giglio*, and the Jencks Act. Finally, if compliance with document requests 6-13 would require production of documents similar to the white papers or other advocacy pieces that the defendants unsuccessfully moved to compel from the government, ECF No. 316, the government submits that it would be incongruent with the Court's ruling to allow such materials to be obtained through a Rule 17(c) subpoena.[6]

## **CONCLUSION**

For the above-stated reasons, the Court should deny Mr. Mulrenin's motion with the exception of document request 4. The government also respectfully requests the Court to order a production date no more than three weeks from the date of the Court's ruling, consistent with the prior Rule 17 ruling. ECF No. 315 at 6.

Respectfully submitted this 6th day of August 2021.

By:   /s/ Michael Koenig

Michael T. Koenig
Heather D. Call
Carolyn M. Sweeney
Paul J. Torzilli
Trial Attorneys
Antitrust Division
U.S. Department of Justice
Washington Criminal II Office

---

[6] Document requests 6-13 mirror document requests 13-17 in the Pilgrim's subpoena. *See* ECF No. 284-2 Attachment A at 8-9. If the Court is inclined to allow the requests, the government respectfully requests narrowing along the lines described in footnote 3 above.

450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2165
Email: michael.koenig@usdoj.gov