IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    TIMOTHY R. MULRENIN,
6.    WILLIAM VINCENT KANTOLA,
7.    JIMMIE LEE LITTLE,
8.    WILLIAM WADE LOVETTE,
9.    GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

       Defendants.

No. 20-cr-00152-PAB

## DEFENDANTS' JOINT OPPOSITION TO THE DEPARTMENT OF JUSTICE'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY AND TO ORDER NEW EXPERT DISCLOSURE FOR NON-EXCLUDED TESTIMONY

The Department of Justice ("DOJ") moves to exclude nearly every opinion from every defense expert. In seeking this extreme remedy, the DOJ ignores Tenth Circuit precedent and foundational constitutional principles. Both protect the rights of criminal defendants to present relevant evidence in their defense, and both limit exclusion to rare circumstances not present here. Defendants complied with Federal Rule of Criminal Procedure 16, and the expected testimony is relevant, probative, and admissible. The Court should deny the DOJ's motion.

## BACKGROUND

The DOJ charged Defendants with a price-fixing and bid-rigging conspiracy involving numerous wholesale suppliers of broiler chickens. Superseding Indictment ("Super. Ind.") ¶¶ 1,

51-145, 147, 151. Defendants worked for broiler chicken suppliers that sold chickens to quick-service restaurants ("QSRs"). *Id*. ¶¶ 3-4, 12-21. To date, the DOJ has produced a large volume of documents demonstrating that its case will delve deeply into the intricacies of QSRs and chicken purchases, as well as associated contracts, bidding processes, and communications. Against that backdrop, the superseding indictment charges that Defendants "participate[d] in conversations and communications" with competitors about "bids, prices and price-related terms," *id*. ¶ 48(b); possessed information about competitor pricing, *id*. ¶ 60; received information regarding supplier margins, *id*. ¶ 94(c), (d); and engaged in some parallel pricing, *id*. ¶¶ 62, 63, 125.

On November 17, 2020, the Court set trial to commence on August 2, 2021, with a pretrial motions deadline of May 21, 2021. Doc. 198, 247. On May 14, 2021, Defendants served initial expert disclosures, in compliance with the Court's November 17, 2020, scheduling order. Doc. 299-1. On May 20, 2021, the Court reset trial to commence on October 25, 2021, with pretrial motions due by July 26, 2021. Doc. 264. On July 19, 2021, Defendants served supplemental expert disclosures. Doc. 299-2.

## LEGAL STANDARD

***Federal Rule of Evidence 702.*** When applying Rule 702, courts perform "a two-step analysis." *103 Investors I, L.P. v. Square D Co.,* 470 F.3d 985, 990 (10th Cir. 2006). First, they determine whether the expert is qualified to render an opinion. *Id*. "[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702, Advisory Comm. Notes (2000 Amendment). Second, courts assess the reliability of the proffered opinions. *103 Investors*, 470 F.3d at 990. When an expert is

qualified on the basis of experience, the expert's "methodology is her training and experience." *Pritchett v. I-Flow Corp.*, 2012 WL 1059948, at *8 (D. Colo. Mar. 28, 2012); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). Taken together, testimony is admissible "so long as [the expert] possess[es] such skill, experience or knowledge so that the opinion rests on a substantial foundation that will aid the trier of fact." *Murphy-Sims v. Owners Ins. Co.*, 2018 WL 8838811, at *4 (D. Colo. Feb. 27, 2018).

And while some expert testimony may touch on matters in dispute, expert testimony is also admissible to provide explanatory background that may help the jury. *See, e.g.*, *Perry v. Union Pac. R.R. Co.*, 2020 WL 6290511, at *5 (D. Colo. Oct. 27, 2020); *Bullock v. Daimler Trucks N. Am. LLC*, 2010 WL 4115372, at *4 (D. Colo. Sep. 30, 2010) (Brimmer, J.). "[E]xclusion of expert testimony under Rule 702 'is the exception rather than the rule.'" *Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 861 (10th Cir. 2014) (quotation omitted).

***Federal Rule of Criminal Procedure 16.*** Rule 16(a)(1)(G) requires that the DOJ, at a defendant's request, "give to the defendant a written summary of any testimony" it "intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." If the DOJ complies, the defendant must make reciprocal disclosures. Fed. R. Crim. P. 16(b)(1)(C). In both instances, the "summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id*. The Rule 16 summary "falls far short of the complete statement required of litigants in civil cases" and "does not require experts in criminal cases to provide written reports explaining their opinions" "or to make a written proffer containing the information required under the civil rules." *United States v. Shannon*, 2019

WL 458911, at *2 (D. Colo. Feb. 6, 2019) (quotation omitted). The Rule's purpose is to promote

"focused cross-examination." Fed. R. Crim P. 16, Advisory Comm. Notes (1993 Amendment).

If a party fails to comply with Rule 16, the Court may, among other things, "grant a

continuance; prohibit that party from introducing the undisclosed evidence; or enter any other

order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(A)-(D). "[E]xclusion of a

witness's expert testimony is almost never imposed in the absence of a constitutional violation or

statutory authority for such exclusion." *United States v. Sarracino*, 340 F.3d 1148, 1170 (10th

Cir. 2003) (quotation omitted). In the "absence of a finding of bad faith, the court should impose

the least severe sanction that will accomplish full compliance with" discovery obligations.

*United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002).

***Federal Rules of Evidence 401 and 403.*** Evidence is relevant if it "has any tendency to

make a fact more or less probable" and "the fact is of consequence." Fed. R. Evid. 401. Courts

may exclude relevant evidence "if its probative value is substantially outweighed by a danger of"

"unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence." Fed. R. Evid. 403. "In weighing the factors under

Rule 403, the court should generally give the evidence its maximum reasonable probative force

and its minimum reasonable prejudicial value." *SEC v. Peters*, 978 F.2d 1162, 1171 (10th Cir.

1992) (quotation omitted; exclusion is "extraordinary remedy").

## ARGUMENT

Defendants generally have the right to introduce evidence (i) directly pertaining to any

element of a charged offense or an affirmative defense; (ii) about collateral matters that could

make an element of the charged offense more or less certain; (iii) that could impact the

credibility of DOJ witnesses; and (iv) that, even if not directly relevant to an element, tends to place the DOJ's evidence in a significantly different light. *United States v. Hurn*, 368 F.3d 1359, 1363 (11th Cir. 2004). The DOJ's effort to exclude nearly every opinion by every defense expert—each of which is admissible and properly disclosed—ignores these principles and threatens Defendants' Fifth and Sixth Amendment rights. *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997) ("the state may not arbitrarily deny a defendant the ability to present testimony that is relevant and material and vital to the defense"). The Court should deny the DOJ's motion.

**I.      Professor Snyder's Opinions Are Relevant, Probative, and Properly Disclosed.**

The DOJ moves to exclude four opinions from Defendants' economic expert, Professor Edward Snyder, on the bases that they are irrelevant, prejudicial, or not sufficiently disclosed. Mot. at 5-10. The opinions are (i) "economic indicia do not point to the existence of the conspiracy" (the "economic indicia opinions"), Doc. 299-2 at 7, *see* Doc. 299-1 at 17-18, 20; (ii) information exchanges "would likely occur in the absence of any price-fixing or bid-rigging agreement" (the "information exchange opinions"), Doc. 299-2 at 8, *see* Doc. 299-1 at 18; (iii) the economic outcomes "are not consistent with those that economists would expect to find in the presence of a price fixing or bid-rigging agreement" (the "economic outcomes opinions"), Doc. 299-2 at 8, *see* Doc. 299-1 at 18-20; and (iv) "industry conditions are not consistent with" conspiracy alone (the "industry attributes opinion"), Doc. 299-1 at 17-18, *see* Doc. 299-2 at 7-8. None of the DOJ's arguments in support of exclusion has merit.

**A.      Professor Snyder's Information Exchange and Industry Attributes Opinions Are Relevant.**

The DOJ contends that Professor Snyder's opinions about information exchanges and industry attributes are irrelevant. Mot. at 6, 9. Its argument misunderstands settled law, ignores

the central character of this case, and misrepresents Professor Snyder's opinions. Whether a *per se* case or not, "[t]he essence of a claim of violation of Section 1 of the Sherman Act is the agreement itself," which plaintiffs may prove "by direct or by circumstantial evidence." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1082 (10th Cir. 2006) (quotation omitted). "Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *Id.* at 1083 (quotation omitted). It must, in other words, be "tantamount to an acknowledgment of guilt." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002).

Circumstantial evidence, on the other hand, requires the trier of fact to infer an agreement from the "circumstances, acts, and conduct of the parties." *United States v. Wardell*, 591 F.3d 1279, 1287-88 (10th Cir. 2009) (quotation omitted). There are important limits to the range of "permissible inferences" a trier of fact can draw in antitrust cases. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). "[A]mbiguous conduct that is as consistent with permissible competition as with illegal conspiracy," for example, "does not by itself support an inference of antitrust conspiracy." *Multistate Legal Stud., Inc. v. Harcourt Brace Jovanovich Legal and Pro. Publ'ns, Inc.*, 63 F.3d 1540, 1556 (10th Cir. 1995). Nor do "[m]ere exchanges of information, even regarding price." *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999). And the "range of inferences that can be drawn from circumstantial evidence varies with the strength of the proffered economic theory—the more economically rational a conspiracy is in a given situation, the broader the range of inferences that can be drawn from the evidence." *Champagne Metals*, 458 F.3d at 1084-85.

Here, the DOJ does not identify a document or witness that provides direct evidence of an

agreement, nor can Defendants find either in the discovery to date. *See* Doc. 358 (DOJ's *James* briefing discussing only circumstantial evidence). Under the most generous reading, the superseding indictment relies entirely on circumstantial evidence. For instance, it charges generically that the Defendants "participate[d] in conversations and communications" with competitors about "bids, prices and price-related terms," Super. Ind. ¶ 48(b); possessed information about competitor pricing, *id*. ¶ 60; and received information regarding supplier margins, *id*. ¶ 94(c), (d). The superseding indictment also points to a handful of instances of parallel pricing. *See id*. ¶¶ 62, 63, 125. At trial, the DOJ will be asking the jury to infer that Defendants entered into an illegal agreement based on conduct and economic outcomes—like information sharing and price increases—that, standing alone, are lawful. *See id*. ¶¶ 71-76, 87-97 (pointing to prices before and after communications).

It is in this context that Defendants expect Professor Snyder to testify that information exchanges can occur in the absence of a price-fixing or bid-rigging agreement, and about the impact of industry attributes. Doc. 299-1 at 18; Doc. 299-2 at 7-8. The opinions do not inject irrelevant issues into a *per se* case, as the DOJ wrongly contends. Mot. at 6, 9. Rather, the testimony places the "events into an economic context," *In re Urethane Antitrust Litig.*, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012), and addresses the DOJ's principal evidence. That testimony is clearly relevant as it "logically advances a material aspect of the case" and "will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotation and alteration omitted).[1]

---

[1] The DOJ itself acknowledged the relevance of this kind of evidence when it "outline[d] those conditions and events that indicate anticompetitive collusion," including bid and price behavior, suspicious patterns of conduct, and industry structure. *See* DOJ, "Price Fixing, Bid Rigging, And

Given the inherently ambiguous nature of circumstantial evidence, courts "regularly admit expert testimony regarding whether conduct is indicative of collusion." *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980, at *4 (D. Md. May 1, 2013) (quotations omitted); *see In re Processed Egg Prod. Antitrust Litig.*, 81 F. Supp. 3d 412, 420 (E.D. Pa. 2015) ("widely followed approach"); *In re Urethane*, 2012 WL 6681783, at *3 (admitting economic expert). In criminal cases especially, expert evidence can be critical to Fifth Amendment protections since defendants "have the right to establish by any and all relevant evidence that there was no agreement" or "that they were not participants in an agreement." *United States v. Nu-Phonics, Inc.*, 433 F. Supp. 1006, 1014 (E.D. Mich. 1977) (admitting economic evidence); *see Hurn*, 368 F.3d at 1363; *Richmond*, 122 F.3d at 872.

In *United States v. Bestway Disposal Corp.*, 724 F. Supp. 62 (W.D.N.Y. 1988), for example, the court admitted testimony from a "noted economist" that "the defendants' behavior was completely consistent with the economic theory of competition in the marketplace." *Id*. at 69. That evidence was probative (and ultimately determinative) because "[m]ore than a possibility of a conspiracy is needed"—guilt "require[s] proof beyond a reasonable doubt as to all elements of the crime and in particular, the critical threshold requirement of proof of the parties' intent to enter into a conspiracy." *Id*. at 69-70. Economic evidence can demonstrate "valid business motives" and establish that conduct is "as consistent with permissible competitive behavior as with illegal conspiracy," which "does not, without more, support an inference of conspiracy." *Id*. at 70 (quotation omitted; granting acquittal on basis of economic

---

Market Allocation Schemes: What They Are And What To Look For," February 2021, https://www.justice.gov/atr/file/810261/download (cited in Doc. 299-2 at 7 n.2).

evidence); *see United States v. Aiye*r, 470 F. Supp. 3d 383, 415 (S.D.N.Y. 2020) (admitting expert "evidence of market conditions").

Because Professor Snyder's opinions squarely address the element of agreement, they are relevant. The Court should reject the DOJ's motion. *See, e.g.*, *United States v. Goodman*, 850 F.2d 1473, 1479-80 (11th Cir. 1988) (reversible error to exclude economic evidence that "is crucial to the establishment of a valid [antitrust] defense"); *Cont'l Baking Co. v. United States*, 281 F.2d 137, 145-46 (6th Cir. 1960) (reversing district court for excluding economic evidence).[2]

**B.      The Probative Value of Professor Snyder's Economic Indicia and Economic Outcomes Opinions Greatly Outweigh the DOJ's Unsupported Contentions of Delay, Confusion, and Prejudice.**

The DOJ acknowledges that two of Professor Snyder's other opinions are relevant, but asks the Court to exclude them under Federal Rule of Evidence 403. First, the DOJ declares that any probative value from Professor Snyder's economic indicia opinions is "substantially outweighed by the trial time required" for his testimony. Mot. at 6 n.4. The DOJ offers no support for its claim; nor could it. The introduction of economic evidence is not a "delay" at all, but evidence central to Defendants' constitutional protections and upon which they are entitled to rely. *Goodman*, 850 F.2d at 1479-80; *Nu-Phonics*, 433 F. Supp. at 1014. In any event, "[d]elay alone is no bar to admission; it also must be 'undue.'" *Hill v. Bache Halsey Stuart Shields Inc.*, 790 F.2d 817, 826-27 (10th Cir. 1986). The DOJ does not even attempt to establish undue delay. Nor does it address Defendants' Fifth and Sixth Amendment rights. Instead, it effectively argues that Defendants cannot put on a case even though economic evidence is often central to the

---

[2] Professor Snyder's opinions are also relevant to the affirmative defense of statute of limitations. Professor Snyder's testimony can help the jury evaluate whether payments were unlawfully inflated in furtherance of the conspiracy and therefore extended the limitations period.

question of agreement in circumstantial evidence cases like this. The Court should reject the

DOJ's argument. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("Few rights are more

fundamental than that of an accused to present witnesses in his own defense."); *Washington v.

Texas*, 388 U.S. 14, 19 (1967) (similar).

Second, the DOJ claims the Court should exclude Professor Snyder's economic outcomes

opinions because there is "great potential" for "juror confusion or undue prejudice." Mot. at 8.

The DOJ does not explain how the opinions would confuse or unduly prejudice; it states only

that the "[s]uccess of the conspiracy" is not an element of the crime. *Id*. But Professor Snyder's

expected testimony goes directly to whether economic outcomes are consistent with the

existence of an agreement—foundational antitrust evidence. *Goodman*, 850 F.2d at 1479;

*Bestway Disposal*, 724 F. Supp. at 69-70. And the DOJ's failure to explain and prove undue

prejudice or jury confusion is itself grounds to deny the request. *United States v. Apperson*, 441

F.3d 1162, 1204 (10th Cir. 2006) (summarily asserting prejudice does not demonstrate undue

prejudice); *Peters*, 978 F.2d at 1171 (exclusion is extreme and sparingly-used because all

evidence is prejudicial to one side).

### C.    Defendants Properly Disclosed Professor Snyder's Opinions.

The DOJ argues that the Court should exclude Professor Snyder's economic indicia,

economic outcome, and industry attributes opinions on the additional ground that Defendants did

not disclose the bases or reasons for the opinions and, in the case of industry attributes, the

opinions themselves. Mot. at 6, 8-10. In all respects, the DOJ is wrong.

To begin, the DOJ ignores in its entirety Professor Snyder's original disclosures. It claims

the original disclosures describe opinions about which Professor Snyder "may" testify, while the

supplemental disclosures describe opinions about which Professor Snyder "expects" to testify and are therefore a "more refined and concrete version of the initial disclosure rather than a supplement." Mot. at 5 n.3. This position makes no sense and is factually wrong. The supplemental disclosures are unambiguous that they are "[i]n addition to the topics identified in" the original disclosures. Doc. 299-2 at 6. And like the original disclosures, they state that Professor Snyder "may" offer the relevant testimony since his opinions are contingent on the DOJ's case-in-chief and ongoing discovery. *Id.*; *see* Doc. 299-1 at 17 (original disclosures describe "expected testimony").

Properly considered, the disclosures appropriately describe Professor Snyder's opinions as well as the bases and reasons for them. Doc. 299-1 at 16-20; Doc. 299-2 at 6-9. Nothing more is required. The "failure to cite literature or studies," for example, "does not render the disclosure insufficient under Rule 16." *United States v. Heller*, 2019 WL 5101472, at *1 (D. Colo. Oct. 11, 2019) (Brimmer, J.); *compare* Mot. at 7 (demanding sources for economic indicia opinions). Rule 16 does not require disclosure of the specific data or documents reviewed. *United States v. Reulet*, 2015 WL 7776876, at *6 (D. Kan. Dec. 2, 2015); *United States v. Schneider*, 2008 WL 11396783, at *2 (D. Kan. July 15, 2008); *compare* Mot. at 8-9 (demanding data for economic outcomes opinions). And Rule 16 does not require Defendants to "specifically describe the expert's methodology." *United States v. Brown*, 592 F.3d 1088, 1091 (10th Cir. 2009); *Reulet*, 2015 WL 7776876, at *6 (same); *Schneider*, 2008 WL 11396783, at *2 (same); *compare* Mot. at 6, 8-9 (demanding methodology for economic indicia and outcomes opinions).

As long as a party has "full notice of the *actual opinions* to which the [expert] intend[s] to testify"—as the DOJ does here—the disclosure is sufficient. *Heller*, 2019 WL 5101472, at *1

(Brimmer, J.) (when actual opinions disclosed, court is "unpersuaded" by "criticism of the lack of detail regarding the *bases* for those opinions"); *see United States v. Rosa-Calderon*, 2021 WL 3186631, at *2 (D. Colo. July 28, 2021) (Rule 16 notice "merely incorporating by reference each witness's litigation packet" sufficient). And contrary to the DOJ's arguments (Mot. at 6, 9), Rule 16 disclosures are "not designed to allow the district court to move immediately to a *Daubert* determination," and they need not resemble the "complete statement" of expert opinions "required of litigants in civil cases." *Shannon*, 2019 WL 458911, at *2 (quotations omitted); *see United States v. Nacchio*, 608 F. Supp. 2d 1237, 1252 n.23 (D. Colo. 2009) (Rule 16 disclosures "are not drafted to address the requirements of Rule 702"). To accept the DOJ's position and impose additional requirements on Defendants "would result in grossly incongruent and inequitable disclosure obligations, which are surely not required under the rules," and which the Constitution protects against. *United States v. Mehta*, 236 F. Supp. 2d 150, 155-58 (D. Mass. 2002) (defendant need not disclose "final opinion" while discovery ongoing or a "line by line" accounting of why the expert raises certain challenges).

* * * * *

For all of these reasons, Professor Snyder's opinions are relevant, non-prejudicial, and properly disclosed pursuant to Rule 16. There are no bases to exclude his testimony or to order further supplementation. If the Court disagrees, however, the proper remedy is additional disclosure, not exclusion. *Brown*, 592 F.3d at 1090 n.4 (exclusion is "extreme"); *Rosa-Calderon*, 2021 WL 3186631, at *2 n.2 (exclusion is "drastic remedy" for Rule 16 deficiency); *United States v. Yurek*, 2017 WL 2930577, at *2 (D. Colo. July 7, 2017) ("appropriate remedy" is "to

direct supplementation, rather than to exclude the testimony").[3]

## II.     Mr. Sinowitz's Expertise Will Help the Jury Understand the Evidence and Determine Facts in Issue.

Mr. Paul Sinowitz, Defendants' industry expert, is an executive with over forty years of experience in the wholesale protein industry, including four years as a Senior Director responsible for purchasing poultry for Yum! Brands and two years as a Vice President at Qdoba Mexican Eats overseeing its entire supply chain. By virtue of this experience, Mr. Sinowitz is eminently qualified to describe and opine on the market for broiler chickens. His testimony will clarify a complex and highly-specialized industry about which most jurors have no knowledge, and his opinions are firmly grounded in his deep experience.

For example, Mr. Sinowitz is expected to provide critical background information about (i) "market conditions affecting prices, sales, negotiations, and the supply of broiler chickens"; (ii) "specialized industry practices affecting the prices, sales, negotiations, relationships, and supply of broiler chicken"; (iii) "information exchange practices among suppliers and QSRs or their distributors in the context of solicitation and acceptance of bids"; and (iv) "supply-chain management for broiler chickens." Doc. 299-2 at 4-6. Based on his personal knowledge, observation, and experience, Defendants also expect Mr. Sinowitz to provide information about the dynamics of QSR purchasing, including (i) the importance of "consistency and adequacy of supply"; (ii) the importance of "quality, both of the product and of service"; (iii) customer desire

---

[3] The DOJ ambiguously asks the Court to "exclude certain expert testimony and, with respect to non-excluded testimony, order the defendants to file additional expert disclosures." Mot. at 2. To the extent the DOJ requests supplemental disclosures about testimony it does not challenge, the DOJ offers no basis for the request and the Court should reject it. *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) (failure "to press a point by supporting it with pertinent authority" "forfeits the point.").

for "suppliers' prices to be as similar or close to each other as possible"; (iv) the role of franchise owners; (v) customer expectations that suppliers communicate and "cover for each other when one had a short or shortage"; and (vi) customer views of competition and supplier behavior. *Id*.

Defendants adequately disclosed the bases and reasons for this expected testimony, and the DOJ's challenges do nothing to undermine their admissibility. In fact, the DOJ fails to challenge (or even acknowledge) most of Mr. Sinowitz's opinions. The Court should deny the DOJ's request to exclude Mr. Sinowitz.

### A.     Mr. Sinowitz Is an Industry Expert Who Will Assist the Jury.

The DOJ challenges Mr. Sinowitz's qualifications as an expert, attempting to write off his decades of experience as somehow irrelevant. But Mr. Sinowitz "has over 40 years of experience in the wholesale protein industry" and has "extensive knowledge of cost-plus pricing models, poultry supply contracts, pricing and industry practices, franchise practices, and poultry negotiations." Doc. 299-2 at 4-5. He "is an expert in the procurement of poultry for [QSRs] and other restaurants." *Id*. at 4.

The DOJ ignores this fact and instead focuses on two of Mr. Sinowitz's jobs. Mr. Sinowitz worked as a Senior Director of Fresh Poultry Purchasing and Senior Director of Strategic Purchasing for Yum!, *id*., the primary alleged "victim" here. The DOJ waves this experience away because Mr. Sinowitz left Yum! in 2003, Mot. at 10, but the DOJ does not suggest the industry has changed in any material way. Equally puzzling, the DOJ attempts to dismiss Mr. Sinowitz's current job for Qdoba Mexican Eats because Qdoba is supposedly a "market participant not directly involved in this case." *Id*. at 11. But being a "market participant" is precisely what qualifies Mr. Sinowitz as an expert witness, and the fact that Qdoba is not

currently involved in the case says nothing about Mr. Sinowitz's ability to testify about the market. *See id*. at 10 (conceding Qdoba "could still be considered a victim").

     **B.**     **Mr. Sinowitz's Testimony Is Grounded in His Experience and Expertise.**

The DOJ attacks Mr. Sinowitz's proffered testimony because it is based on "personal knowledge" and supposed "conjecture." Mot. at 11. With respect to personal knowledge, it is unclear what the DOJ means since all expert testimony is based on "personal knowledge." *See* Fed. R. Evid 702.[4] To the extent the DOJ challenges Mr. Sinowitz because his expertise is experience-based, that too flies in the face of Rule 702, which "expressly contemplates that an expert may be qualified on the basis of experience." *Id*., Advisory Comm. Notes (2000 Amendment). "In certain fields," such as the broiler chicken industry, "experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id*. And "there is nothing unusual about having this type of expert" provide background testimony that explains a complicated area and then gives opinions based on that background. *Bullock*, 2010 WL 4115372, at *4 (Brimmer, J.) (expert properly provided background on the regulations in place and then opined on compliance); *Perry*, 2020 WL 6290511, at *5.

As to the supposed "conjecture," the DOJ uses broad language but only challenges two opinions. First, it challenges Mr. Sinowitz's testimony about the considerations that are important to QSRs, to the extent he did not work for those QSRs. Mot. at 11 (no challenge to QSRs for whom Mr. Sinowitz worked). There is nothing improper about this testimony. As a deeply experienced and sophisticated participant in the market, Mr. Sinowitz can apply his

---

[4] Contrary to the DOJ's claims, Defendants do not "sidestep" the Rules of Evidence or "cloak" inappropriate "testimony in the shroud of an expert." Mot. at 10. Defendants properly disclosed Mr. Sinowitz as an expert based on his decades of experience as a customer in the industry.

knowledge, his experience working at QSRs, and his observations of other QSRs to reliably testify about the considerations relevant to QSRs generally. Second, the DOJ challenges Mr. Sinowitz's testimony about suppliers from whom he purchased chicken. *Id*. Far from being "speculat[ion] about the broiler chicken suppliers' states of mind," *id*., the disclosed opinions reflect his experience with and observations of suppliers. Mr. Sinowitz's "methodology is [his] training and experience." *Pritchett*, 2012 WL 1059948, at *8. And in circumstantial evidence cases like this, courts "regularly admit expert testimony regarding whether conduct is indicative of collusion." *In re Titanium Dioxide*, 2013 WL 1855980, at *4 (quotation omitted). Mr. Sinowitz's proposed testimony is no different; he is prepared to testify that Defendants' behavior was consistent with independent decision making.

To the extent the DOJ challenges other, unidentified opinions as "conjecture," the argument is waived. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008) ("the Court adjudicates only the specific challenges raised by the party opposing the opinions"). In any event, the DOJ's generalized challenge is both untenable and, if taken to its logical conclusion, would mean that no expert could opine on matters about which he is not a fact witness. Applying expertise to situations in which the expert did not directly participate is the role of an expert witness. For example, "when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly used code words to conceal the nature of their activities." Fed. R. Evid. 702, Advisory Comm. Notes (2000 Amendment). The law enforcement officer is not "speculating" about drug dealers' states of mind, but applying "extensive experience to analyze the meaning of the conversations." *Id*. And courts routinely admit expert testimony from academics who have never

worked for *any* market participant relevant to their testimony. It would be strange if Mr. Sinowitz were excluded because he has not worked for *every* market participant.

### C.  Defendants' Rule 16 Disclosure Is More than Adequate.

The DOJ contends, without elaboration, that Defendants "fail to describe the basis and reasons for [Mr. Sinowitz's] opinions." Mot. at 12. To the contrary, Defendants provided a written summary of Mr. Sinowitz's opinions and the bases and reasons for them, including his decades of experience in the industry. Doc. 299-1 at 16-17; Doc. 299-2 at 3-6. But if the Court disagrees, the appropriate remedy is supplementation, not exclusion. *Supra* at 4, 12-13.

### D.  The DOJ's Other Arguments Are Without Merit.

*Mental States*: The DOJ asks that the Court "exclude Mr. Sinowitz's testimony to the extent he provides opinions on the defendants' mental states." Mot. at 12. But the disclosures say nothing about Defendants' mental states.

*Evidence of a Conspiracy*: The DOJ enigmatically asks the Court to exclude Mr. Sinowitz "to the extent he" "opines that the conspiracy did not exist." *Id*. But the DOJ does not explain what it means and the citation it provides nowhere mentions the exclusion of expert testimony. Defendants and the Court should not need telepathic powers to understand DOJ's requests. Moreover, Rule 704(a) expressly states that an "opinion is not objectionable just because it embraces an ultimate issue."

*Claxton Opinion*: Defendants disclosed that Mr. Sinowitz "is expected to testify about the market positions of the various suppliers, including that Claxton was not a true competitor of [large suppliers], because Claxton had only one plant and could not materially increase its ability to supply chicken," and that Claxton "could not have taken business from the larger suppliers."

Doc. 299-2 at 6. The DOJ maintains that this opinion must be excluded because a defendant "may be guilty of conspiring, although incapable of committing the objective offense." Mot. at 12. The DOJ misapprehends the import of Mr. Sinowitz's testimony. Since Claxton was not a competitor of the large suppliers, it would not have made sense for the large suppliers to conspire with Claxton. Expert testimony demonstrating that the DOJ's theory would not be a rational course of action will "help the trier of fact." Fed. R. Evid. 702(a).

### III.   Defendants Properly Disclosed Mr. Pochron's and Dr. Qing's Opinions.

The DOJ moves to exclude Defendants' forensic expert, Joseph Pochron, and Defendants' statistical expert, Dr. Siyu Qing, on the grounds that Defendants did not disclose their opinions or the bases and reasons for them. Mot. at 13. The DOJ is wrong. Mr. Pochron's disclosures make clear that he expects to testify about (i) the proper interpretation of and ambiguities in various types of digital device and telephonic records; (ii) the DOJ's methods of collection and analysis, and the potential for errors and incompleteness in that process; (iii) trends in the collected communications; (iv) the relative incidence or absence of communications across categories of communicants; and (v) the creation of charts, summaries, calculations, and databases to analyze the records. Doc. 299-1 at 12-13.

Dr. Qing expects to offer statistical analyses of the digital device and telephonic records, and discuss the creation of a database to analyze those records. *Id*. at 14. Both experts base their opinions on a review of the records produced by the DOJ, their experience, expertise, and training, and their use of standard digital forensic tools and statistical sampling techniques, including Relativity e-discovery software, SQL coding scripts, and SAS statistical analysis software. *Id*. at 11, 13. These disclosures satisfy Rule 16. *Reulet*, 2015 WL 7776876, at *2-3

(disclosure satisfied Rule 16 when it stated only that two experts "will testify about their forensic examination of the seized computers and phones, and about [their] recovery of various e-mails from the computers and texts from the phones").

In contrast, the DOJ plans to offer testimony about the same records from over a dozen digital forensic specialists and FBI agents. Because the DOJ contends their testimony is not expert opinion, it does not make any substantive expert disclosures. But in seeking to exclude Defendants' rebuttal testimony against the DOJ's own specialized witnesses, it threatens to violate Defendants' Fifth and Sixth Amendment rights. *See, e.g.*, *United States v. Lankford*, 955 F.2d 1545, 1552 (11th Cir. 1992) (reversing conviction when district court excluded defense expert offering rebuttal to IRS agent's testimony); *United States v. Sellers*, 566 F.2d 884, 886 (4th Cir. 1977) (exclusion must be "evenhanded[]"). And to the extent the Court deems any action appropriate, the proper remedy is supplementation, not exclusion. *Supra* at 4, 12-13.

The DOJ also argues that Mr. Pochron's and Dr. Qing's opinions violate Federal Rule of Evidence 704(b) to the extent their testimony may "pertain[] to the defendants' mental states." Mot. 13-14. The argument does not make sense. "Rule 704(b) only prevents experts from expressly stating the final conclusion or inference as to a defendant's actual mental state. The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *United States v. Richard*, 969 F.2d 849, 854-55 (10th Cir. 1992); *see also United States v. Vasquez-Garcia*, 2014 WL 7359490, at *7 (D. Kan. Dec. 23, 2014) (admitting testimony "about the meaning of the intercepted phone calls"). Opinions about collection methods, the interpretation of digital records and statistics generally, or trends and incidences in the communications do not opine on Defendants' mental

states, even if "the jury could conclude or infer" Defendants lacked "the requisite mental state" from this evidence. *Richard*, 969 F.2d at 855. The Court should reject the DOJ's motion.

## IV.     Dr. Chambers' Opinions Satisfy Rules 702 and 403 and Are Properly Disclosed.

Over the course of two years, the DOJ interviewed a single witness at least eleven times. There were never fewer than seven government lawyers, agents, and staff at each interview—often double that number—and lawyers for the witness's employer were always present. Doc. 330 at 2, 5-7; Doc. 330-1. During this unusual and protracted interview process, the witness's recollections changed markedly and in significant respects over time, and Defendants expect this individual to testify at trial as a DOJ witness. It is in this context that Defendants intend to offer testimony from Dr. Mark Chambers, a clinical and forensic psychology expert, to help the jury understand the science of memory and the factors that can shape changing recollections. The testimony is reliable, probative, and properly disclosed. It is also central to Defendants' ability to mount a defense.

### A.     Defendants Properly Disclosed Dr. Chambers' Opinions.

The DOJ's motion to exclude Dr. Chambers does not describe, even in the broadest terms, *how* Defendants' Rule 16 disclosure is deficient or *what* additional information Defendants should disclose. The DOJ instead asserts that "[t]he defendants' complete lack of compliance with Rule 16 alone is a sufficient basis to exclude Dr. Chambers," without providing any supporting facts or case law. Mot. at 14. The DOJ is wrong. Defendants satisfied Rule 16 by providing a summary of Dr. Chambers' opinions and the bases and reasons for them: the disclosure not only details Dr. Chambers' qualifications and experience, which form the bases of his opinions regarding memory errors, false memories, cognitive dissonance, and false

confessions, but also summarizes his opinions about each topic. If the Court disagrees, however, supplementation, not exclusion, is the proper remedy. *See supra* at 4, 12-13.

**B.      Dr. Chambers' Expected Testimony Satisfies Rules 702 and 403.**

**1.      Dr. Chambers' Expected Testimony Is Proper.**

The DOJ mischaracterizes Dr. Chambers' proffered testimony as "essentially," "witness' [sic] recollections of relevant events are false, witnesses have intentionally made false statements that have converted into false memories, and witnesses' confessions to participation in, and knowledge of, the charged conspiracy are fabricated." Mot at 14. That is simply untrue. Defendants expect Dr. Chambers to opine "whether certain identified risk factors" for memory errors were present given the circumstances and processes surrounding the DOJ's interviews. Doc. 299-2 at 2-3. This testimony will help the jury understand how witnesses' memories, and therefore their testimony, *could* be influenced by the specific circumstances present in this case. Dr. Chambers will *not* offer any opinion on the credibility of any witnesses or whether statements themselves appear to be true, false, or "fabricated," as the DOJ wrongly suggests. In other words, he would give the jury tools to help them evaluate credibility, but it would be the jury's role to decide whether, and to what extent, to use those tools to assess credibility.

Courts around the country, including in the Tenth Circuit, have admitted this form of expert testimony. *See, e.g.*, *United States v. Perrault*, 2019 WL 1318341, at *1 (D.N.M. Mar. 22, 2019) (permitting Dr. Chambers' expert testimony about "fundamental tenets of human memory" and its reliability, including "the passage of time, interference from external sources including therapy and media reports, and internal motivations and rewards"); *Franklin v. Duncan*, 884 F. Supp. 1435, 1441 (N.D. Cal.), *aff'd*, 70 F.3d 75 (9th Cir. 1995) (permitting

expert testimony about confidence in and accuracy of recollections, how repeated retellings impact confidence, and how post-event information can "contaminate[]" memories); *Souliotes v. Grounds*, 2013 WL 875952, at *7 (E.D. Cal. Mar. 7, 2013), *report and recommendation adopted as modified*, 2013 WL 1563273 (E.D. Cal. Apr. 12, 2013) (similar).

The cases cited by the DOJ are inapposite. In *United States v. Benally*, the defense claimed a confession was false and sought to offer expert testimony the "import" of which was: "disregard the confession and credit the defendant's testimony that his confession was a lie." 541 F.3d 990, 995 (10th Cir. 2008). And in *United States v. Adams*, the defendant sought to introduce expert testimony to prove the veracity of a witness statement. 271 F.3d 1236, 1246 (10th Cir. 2001). Those circumstances are not present here.

### 2.     Dr. Chambers' Testimony Is Relevant and Reliable.

Rule 702 requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue," which "goes primarily to relevance." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (quotation omitted). Dr. Chambers' testimony would do just that. By providing narrowly-tailored testimony regarding the science of memory, Dr. Chambers would assist the jury in understanding unique issues related to the malleability of memory and the factors that can influence the reliability of recollections. These are not subjects about which a lay person is otherwise aware. The Tenth Circuit, for example, recognizes that while courts in the past were skeptical of research regarding witness memory, "[m]any courts now, however, are proving receptive to admitting testimony based on this research." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1124 (10th Cir. 2006). Indeed, the court in *Rodriguez-Felix* cited approvingly to bodies of research regarding factors that may impact witness

memory—including the "training and confidence" of witnesses and the time since the remembered event. *Id*. at 1123-24. Other courts similarly recognize this type of expert testimony can help the jury. *See United States v. Bartlett*, 567 F.3d 901, 906 (7th Cir. 2009) ("That jurors have beliefs about [the fallibility of memory] does not make expert evidence irrelevant; to the contrary, it may make such evidence vital.").

Dr. Chambers' testimony is also plainly reliable. Dr. Chambers has been recognized by other courts in the Tenth Circuit as an expert in the field of human memory. *See Perrault*, 2019 WL 1318341, at *3 (exhaustively discussing Dr. Chambers' qualifications and appropriateness of testimony). His testimony is sufficiently reliable to be admitted in this case as well.

### 3.     Dr. Chambers' Opinions Are Not Prejudicial Under Rule 403.

The DOJ baldly states that "testimony that opines on witness credibility is inadmissible under Federal Rule of Evidence 403." Mot. at 15. The DOJ does not explain how Dr. Chambers' testimony would unduly prejudice. Instead, it argues that testimony telling the jury to disregard confessions outweighs any probative value. *Id*. But as noted above, that is not Dr. Chambers' expected testimony. His actual expected testimony about the factors and events that can influence memory and distort recollections is appropriate expert testimony; there is no basis to exclude Dr. Chambers pursuant to Rule 403. *Sanders v. City of Chicago Heights*, 2016 WL 4398011, at *7 (N.D. Ill. Aug. 18, 2016) (rejecting argument that proffered memory expert inadmissible under Rule 403 because nothing suggested it "would induce the jury to [render a decision] on an improper basis"); *see Perrault*, 2019 WL 1318341, at *3.

### CONCLUSION

For all of the foregoing reasons, the Court should deny the DOJ's motion.

Dated:  August 16, 2021                    Respectfully submitted,

s/ John A. Fagg, Jr.
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

s/ Michael F. Tubach
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

s/ Richard K. Kornfeld
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

s/ Michael S. Feldberg
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

s/ Bryan Lavine
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

s/ Elizabeth Prewitt
Elizabeth B. Prewitt
LATHAM & WATKINS LLP
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

s/ James A. Backstrom
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

s/ Mark A. Byrne
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

s/ Craig Allen Gillen
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

s/ Barry J. Pollack
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT,
ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated:  August 16, 2021

*s/ Michael F. Tubach*

Michael F. Tubach