IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   **SCOTT JAMES BRADY,**
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   WILLIAM VINCENT KANTOLA,
7.   JIMMIE LEE LITTLE
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

    Defendants.

## DEFENDANT SCOTT BRADY'S POST-*JAMES* HEARING BRIEF

Defendant Scott Brady hereby submits his post-hearing brief, which supplements Defendants Mikell Fries and Scott Brady's Joint Response to the United States' *James* Brief and Log, previously filed at Dkt. No. 394.[1]

**A.**     **The Government Failed to Establish Scott Brady was a Member of the Conspiracy.**

After six hours of testimony from Special Agent LaNard Taylor ("SA Taylor"), the government failed to establish the existence of a conspiracy or offer any independent evidence— and thus failed to prove by a preponderance—that Mr. Brady was a member of the conspiracy charged in the Superseding Indictment as of December 26, 2011. *See* Gov't Ex. 3; Tr. 57:12-23.

---

[1] Mr. Brady adopts and incorporates the arguments made in the post hearing submissions of his co-defendants.

To meet its burden, the government must prove: 1) Mr. Brady's agreement with another person to violate the law; 2) his knowledge of the essential objectives of the conspiracy; 3) his knowing and voluntary involvement; and 4) interdependence among the alleged co-conspirators. *See United States v. Chavis*, 461 F.3d 1201, 1208 (10th Cir. 2006). At least some independent evidence—"'evidence other than the proffered [coconspirator] statements themselves'"—is necessary to establish whether a conspiracy existed. *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) (citation omitted). Because the gravamen of the antitrust conspiracy is the illegal agreement, "the inference of an agreement must be more than mere speculation or conjecture." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1083 (10th Cir. 2004). Thus, this Court should decline SA Taylor's offer to "not get too bogged down in the word 'agreement.'" Tr. 244:18.

SA Taylor testified that Mr. Brady became a participant in the conspiracy as of December 26, 2011 (when Mr. Brady was employed at Pilgrim's and negotiated further processed chicken) because: (i) Mr. Brady spoke with Bill Kantola of Koch Foods, (ii) became aware of a price Mr. Kantola negotiated with a customer for a product that Mr. Brady neither negotiated nor sold, and (iii) communicated that information internally at Pilgrim's. Tr. 75:12-24; 222:17-223:9. SA Taylor acknowledged Mr. Brady was not agreeing to fix a price, was not agreeing to rig a bid, and was not agreeing to align a price. Tr. 228:22-229:3. SA Taylor also testified that the government has no other independent evidence that Mr. Brady joined the conspiracy as of December 26, 2011. Tr. 232-233.

The email exchange cited by the government reflects, and SA Taylor agreed, that Mr. Brady was concerned about losing business to a competitor, (Tr. 228:18-21), and that Pilgrim's was concerned about a competitor leveraging one price against another to obtain more business, (Tr. 226:11-227:5)—clearly pro-competitive conduct that runs counter to the existence of any

2

unlawful agreement. Further, at the time Mr. Brady learned of the pricing information, Pilgrim's already had submitted its pricing to the buyer. *See* Gov't Ex. 2-009 (noting on December 26, 2011 Pilgrim's pricing had been submitted to the buyer "last week"). Just because Mr. Brady internally reported an already negotiated price, (Tr. 228:15-17), he learned from a co-supplier regarding a product for which he was not responsible does not mean the exchange was a collusive act or that Mr. Brady was taking advantage of a collusive network.[2] Tellingly, SA Taylor was unable to point to any other independent evidence indicating Mr. Brady's membership in the conspiracy as of December 26, 2011, and no other evidence cited in the Conspiracy Guide or the *James* Log links Mr. Brady to the alleged conspiracy at this point in time.

## B. The Government Failed to Establish Mitch Mitchell, Pete Martin and Kevin Grindle were Members of the Conspiracy.

Similarly, SA Taylor testified that Mitch Mitchell was a member of the conspiracy as of August 29, 2014 based on the handwritten notes of another alleged co-conspirator, Pete Martin, and because Mr. Mitchell's employer, Case Farms, also is a supplier to KFC. Tr. 82:18-83:7. No evidence exists that Mr. Martin and Mr. Mitchell spoke, other than a notation in Mr. Martin's notes. *See* Gov't Ex. 2-136. Indeed, none of Mr. Martin's calls that day, as otherwise introduced by the government, were with Mr. Mitchell.[3]

---

[2] As SA Taylor conceded, not every single pricing event or exchange of information was a collusive event, (Tr. 14:18-20), and not every member of the alleged conspiracy plugged into the alleged network every time there was a negotiation, (Tr. 14:22-24).

[3] The government also cites to Mr. Martin as a co-conspirator based on an email Mr. Penn sent to Mr. Lovette in which Mr. Penn describes an interaction that he had with Mr. Martin. In that email, Mr. Penn writes, "Six months ago Pete Martin stopped me and pulled me aside. He thanked me for making Pilgrim's a better competitor." Gov't Ex. 2-039. Demonstrating the tenuous nature of the government's evidence for unindicted co-conspirators, Mr. Martin is a "co-conspirator" based on alleged "conspiracy jargon" *written by Mr. Penn* with no independent evidence Mr. Martin actually used that term, and Mr. Mitchell has been made a "co-conspirator" *based on a line in Mr. Martin's notes*. In both instances, each co-conspirator's participation is unsupported by independent evidence and based entirely on the government's improper conjecture, speculation, and mischaraterization.

Case No. 1:20-cr-00152-PAB   Document 478   filed 09/13/21   USDC Colorado   pg 4 of 6

SA Taylor also testified that Kevin Grindle became a member of the conspiracy as of February 14, 2014 because Mr. Grindle shared period pricing with Mr. Brady. Tr. 234:4-8. SA Taylor acknowledged that at the time of the exchange, KFC contract prices already had been finalized and he was not aware of any pricing event or further negotiations taking place. Tr. 234:23-235:6. SA Taylor also testified that nothing in the exchange showed Mr. Grindle's awareness of the conspiracy or his knowledge of the conspiracy's scope or objectives. Tr. 236:5-16.

**C.      The Government Continues to Ignore Foundational Antitrust Principles.**

Beyond failing to articulate—much less prove—the threshold membership element for these gentlemen, SA Taylor's testimony reflects a fundamental misunderstanding of the conspiracy's contours. SA Taylor consistently testified that once the suppliers gathered competitor pricing information, "they then used -- in many instances used that information to formulate their own pricing opinion or their own positions on whatever the pricing event was before reporting that back to the customer." Tr. 46:17-20; *see also* Tr. 14:15-17; 47:21-24. It is not illegal, however, for suppliers to use information learned from their competitors. Tacit collusion, or conscious parallelism—reacting to pricing without an agreement to do anything—does not violate the Sherman Act. *See In Re Text Messaging Antitrust Litig.*, 782 F.3d 867, 871, 879 (7th Cir. 2015); *see also* Final Jury Instructions, *United States v. Lischewski*, No. 18cr203, Dkt. No. 626 at 22 (N.D. Cal. filed Dec. 2, 2019) ("It is not illegal for a competitor to obtain, rely upon, and act on pricing and other information rceived from customers, media, internet sources, industry analysts, brokers, and others involved in the production and sale of [chicken] so long as there is no agreement[.].").

SA Taylor attempted to testify about an alleged "overarching pattern" of behavior, but the conduct he described—"a series of phone calls between competitors, and in those phone calls these competitors received information about their competitors' pricing or their negotiation tactics or

4

whether they were going to give some type of concession to the customer," followed by "report[ing] back to supervision or other individuals in the company, and then subsequently these competitors g[iving] their response to the customer," (Tr. 45:4-20)—is no more indicative of collusion than any other lawful business activity between competitors who also are co-suppliers and occasional customers. *See, e.g.*, *Kleen Prods. LLC v. Ga.-Pac. LLC*, 910 F.3d 927, 938-39 (7th Cir. 2018); *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 801 F.3d 758, 763 (7th Cir. 2015); *United States v. N.L. Indus., Inc.,* No. 89-346, 1990 U.S. Dist. LEXIS 4171, at *17 (E.D. La. Apr. 6, 1990) ("[T]he Court is unwilling to infer the prohibited motive [to join a conspiracy] from a statement which, alone, appears innocuous in light of the industry practice of intense communication of pricing information").

Simply, the government failed to put forth any independent evidence establishing that Scott Brady, Kevin Grindle, and Pete Martin were members of the charged conspiracy as of the dates alleged and thus failed to meet its burden for the admissibility of the proffered Rule 801(d)(2)(E) statements. Therefore, Mr. Brady respectfully requests the Court deny admission of the proffered co-conspirator statements under Rule 801(d)(2)(E) against Mr. Brady.

Respectfully submitted this 13th day of September 2021.

*/s/ Bryan B. Lavine*
Bryan B. Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
bryan.lavine@troutman.com
Attorney for Defendant Scott James Brady

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of September 2021, I electronically filed the foregoing **DEFENDANT SCOTT BRADY'S POST *JAMES* HEARING BRIEF** with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*/s/ Bryan Lavine*
Bryan Lavine