IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  JAYSON JEFFREY PENN,
2.  MIKELL REEVE FRIES,
3.  SCOTT JAMES BRADY,
4.  ROGER BORN AUSTIN,
5.  TIMOTHY R. MULRENIN,
6.  WILLIAM VINCENT KANTOLA,
7.  JIMMIE LEE LITTLE,
8.  WILLIAM WADE LOVETTE,
9.  GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

    Defendants.

## ORDER

This matter comes before the Court on various pretrial motions filed by the parties, specifically Docket Nos. 518, 519, 520, 521, 523, 524, 525, 526, 527, 528, 529, 530, and certain portions of Docket No. 543.

## I. Docket No. 518

Defendants ask the Court for forty-five minutes of attorney conducted voir dire for all defendants. Docket No. 518 at 1-2. The government opposes the request and argues that this would unnecessarily extend jury selection. Docket No. 562 at 2. The defendants' proposal is reasonable. Both sides will be allowed a total of forty-five minutes of voir dire. Accordingly, the Court will grant Docket No. 518.

## II. Docket No. 519

Defendants ask the Court to permit a case-specific jury questionnaire, which they attach to the motion. Docket No. 519 at 1; Docket No. 519-1. The government opposes the use of a case-specific questionnaire. Docket No. 562 at 2. While it may seem like the use of a questionnaire would be more efficient, in the Court's experience it is the opposite. The time it would take for the jurors to fill out the questionnaire, for the Court to copy the completed questionnaires, and for the attorneys to review the questionnaires is considerable and could be better spent asking those questions in the courtroom, where the attorneys would be able to observe the jurors. Accordingly, the Court will deny Docket No. 519.

## III. Docket No. 520

Defendants ask the Court to give the jury a substantive jury instruction at the beginning of trial. Docket No. 520. Defendants argue that, "given the length of the trial and the nature of the charged antitrust offense, which focuses on and requires inferences from facially lawful business conduct, a substantive preliminary instruction is appropriate in this case." *Id.* at 1. Defendants argue that a preliminary instruction will help guide the jurors during the course of the lengthy trial. *Id.* at 1-2. The government opposes the request, arguing that the elements of a Sherman Act violation are straightforward. Docket No. 562 at 7-8. If the Court does grant the request, the government argues that it should be limited to the elements of price fixing and bid rigging. *Id.* at 8. Defendants submitted their proposed preliminary jury instruction. Docket No. 592 at 7-9. The Court agrees that a preliminary jury instruction would help

orient the jury throughout the course of this trial, but will only instruct the jury on the elements of a Sherman Act violation as follows:

> Each defendant is charged in the indictment with a violation of 15 U.S.C. § 1.  This law makes it a crime to restrain trade.  The indictment charges the defendants with conspiring to rig bids and fix prices in the broiler-chicken industry between August 2011 and early 2019.
> To find a defendant guilty of this crime, you must be convinced that the government has proved each of the following elements against him beyond a reasonable doubt:
> *First*: that the charged price-fixing conspiracy existed at or about the time alleged;
> *Second*: that the defendant knowingly—that is, voluntarily and intentionally—became a member of the conspiracy charged in the indictment, knowing of its goal and intending to help accomplish it; and,
> *Third*: that the conspiracy affected interstate commerce.

Accordingly, the Court will grant Docket No. 520 to the extent is seeks a substantive preliminary jury instruction, but will deny to the extent is asks the Court to provide defendants' proposed instruction.

## IV.  Docket No. 521

Defendant Jayson Penn asks the Court and the government not to refer to this case as *United States v. Penn et al.* in the presence of the jury.  Docket No. 521 at 1, 4.  Believing that the use of his name as shorthand for the case is unfairly prejudicial, Mr. Penn asks the Court to refer to the case by its case number, i.e. "case number 20-152." *Id.* at 2.  Mr. Penn is swimming upstream with his request.  Multidefendant cases are historically referred to by the name of the first defendant.  This occurs in all courts, whether in county courts, state courts, or the U.S. Supreme Court.  Mr. Penn presents no basis to believe that this will prejudice him.  For instance, there is no reason to believe that the jury will not understand that he is simply one of the nine other persons

listed in the caption. Moreover, Mr. Penn does not explain why this supposed prejudice cannot be cured by a simple instruction to the jury. Docket No. 521 will be denied.

## V. Docket No. 523

Mr. Penn, Roger Austin, Jimmie Little, and William Lovette ask the Court to exclude references to or evidence about Pilgrim's Pride's parent company. Docket No. 523. JBS, a Brazilian company, owns Pilgrim's Pride Corporation ("PPC"). *Id.* at 1. JBS was a defendant in civil and criminal proceedings related to allegations of price fixing for pork products. *Id.* at 1-2. These defendants ask the Court to exclude "references to and evidence about JBS, including its nationality, its controversies, or anything else about the company" as irrelevant and unfairly prejudicial. *Id.* at 2. The government opposes the motion in part. Docket No. 565 at 5-6. The government does not intend to introduce evidence about JBS wrongdoing, but argues that evidence regarding Mr. Lovette's executive compensation package may require mentioning JBS. *Id.* at 6. The Court will grant the motion in part. References to and evidence of any wrongdoing by JBS will be excluded as irrelevant and unfairly prejudicial. In regard to Mr. Lovette's compensation package, the government should attempt to avoid references to JBS when presenting such evidence.

## VI. Docket No. 524 and Docket No. 543 motion 6

Mr. Penn and Mr. Lovette ask the Court to exclude "evidence, testimony, or argument regarding their financial circumstances, including personal wealth, compensation, or assets." Docket No. 524 at 1. They argue that information about their financial circumstances is irrelevant and unfairly prejudicial. *Id.* at 1-2. The government opposes the motion, arguing that Mr. Lovette and Mr. Penn's compensation, and certain

other defendants' compensation, was directly linked to corporate profit margins and, as a result, they stood to benefit financially from fixing prices. Docket No. 565 at 4-5. The government states that it does not intend to introduce evidence of Mr. Lovette's and Mr. Penn's "overall net worth, assets or lifestyle, provided they do not open the door to such evidence." *Id.* at 5 n.4. The government also filed a motion in limine asking the Court to admit evidence of defendants' compensation and pay structure. Docket No. 543 at 8. The Court will exclude references to Mr. Penn's and Mr. Lovette's yearly compensation, wealth, or lifestyle. However, evidence of how each would benefit from higher chicken prices is relevant to motive for the alleged price fixing conspiracy and will be admitted. Accordingly, Docket Nos. 524 and 543 motion 6 are granted in part and denied in part.

## VII. Docket No. 525

Defendants ask the Court to allow them ten additional peremptory challenges. Docket No. 525 at 3. The government opposes the request, arguing that the standard number is sufficient. Docket No. 562 at 7. Rule 24 prescribes the number of peremptory challenges, providing that the government has six peremptory challenges and the defendants have ten, with an additional peremptory challenge warranted by the use of two alternate jurors. Fed. R. Crim. P. 24(b)-(c). The Court sees no reason to depart from the standard number of challenges and will deny Docket No. 525.

## VIII. Docket No. 526

Defendants ask the Court to exclude references to or evidence about any theories of liability not charged in the superseding indictment. Docket No. 526.

Defendants argue that the government puts forth one theory of liability – rigging bids and price fixing – and evidence of other theories of liability not charged, but alleged in separate cases, would be irrelevant and unfairly prejudicial. *Id.* at 1-2. These other theories include "no-poach agreements, output reduction agreements, and competitor signaling." *Id.* at 2. The government opposes the motion, arguing that the superseding indictment charges a crime, not legal theories. Docket No. 565 at 4.

The Court has issued two orders relevant to this motion: an order on defendants' motions for bills of particulars, Docket No. 257, and an order on defendants' motions to dismiss. Docket No. 553. In its order on defendants' motions for bills of particulars, the Court found that defendants were not entitled to bills of particulars because the superseding indictment stated that defendants had an agreement to suppress and eliminate competition through rigging bids and fixing prices for broiler chicken products. Docket No. 257 at 5. Additionally, in the Court's order denying defendants' motions to dismiss, the Court found the indictment sufficiently specific because it put defendants on fair notice that they were alleged to have conspired to rig bids and fix prices. Docket No. 553 at 5-6.

Rigging bids and fixing prices is the government's theory of the case. For the government to introduce alternative theories of liability would unfairly prejudice defendants since they have not had fair notice of such theories. Accordingly, the Court will grant Docket No. 526.

**IX. Docket No. 527**

Defendants ask the Court to exclude references to or evidence about compliance policies, codes of conduct, or employment decisions. Docket No. 527. Defendants

argue that the evidence is unfairly prejudicial.  *Id.* at 6-7.  The government opposes the motion in part.  Docket No. 565 at 10.  The government argues that it intends to introduce evidence that some defendants received antitrust training from their respective employers and that compliance policies are relevant to establishing the existence of a conspiracy and the knowing participation of the person aware of the conduct or policy.  *Id.*  The government does not oppose the exclusion of employment decisions made after defendants were charged.  *Id.* at 11.  The Court agrees with the government that evidence of antitrust training is relevant, but will grant defendants' motion to exclude evidence regarding internal compliance policies or codes of conduct since those are not standards by which the jury will need to assess the charge in this case.  The Court will therefore grant Docket No. 527 in part and deny it in part.

## X.  Docket No. 528

Defendants ask the Court to exclude evidence of allege losses or harms to end consumers resulting from the charged conspiracy.  Docket No. 528 at 1.  Specifically, defendants ask the Court to exclude evidence regarding "(1) prices paid by end consumers of chicken products, (2) other harm to consumers, and (3) losses to any other downstream, indirect purchasers of chicken products."  *Id.*  Defendants argue that such evidence would be irrelevant and unfairly prejudicial because the government's theory of the case is that bid rigging is a *per se* Sherman Act violation and because references to harm or loss, when they are not elements of the offense, are unfairly prejudicial.  *Id.* at 2-3.  Defendants also argue that the introduction of this evidence would violate Due Process, rights to confrontation, and a fair trial because the government has produced no discovery and has filed no pleadings regarding the

7

alleged loss, precluding defendants from rebutting any allegation of loss. *Id.* at 4-5. The government opposes the motion in part, stating that it does not intend to introduce evidence of harm to end-use consumers, but does intend to introduce evidence that "customers (restaurants, grocery stores, purchasing cooperatives, distributors, etc.) expressed their concerns during negotiations with the defendants that higher prices would lead to higher prices and lower quality for consumers, and that higher prices would harm the customers themselves, but the concerns fell on deaf ears." Docket No. 565 at 1-2. The government also intends to introduce evidence that customers agreed to price increases because they had no choice and that these price increases forced customers to adjust business operations. *Id.* The government "expects to demonstrate the higher prices principally through customer testimony, as well as contracts and electronic communications" and not through expert testimony. *Id.* at 3 n.2.

The Court will deny the motion to the extent it seeks to exclude admission of customer testimony and documents showing pricing information. Customer testimony that suppliers were presenting a "unified front" is relevant to whether there was a conspiracy and is not unfairly prejudicial. Documents reflecting pricing information are admissible for the same reason. Moreover, since the government does not intend to attempt to quantify the losses, defendants' due process and confrontation clause issues are not applicable. Accordingly, the Court will deny Docket No. 528.

## XI. Docket No. 529

Defendants ask the Court not to send the superseding indictment to the jury. Docket No. 529 at 1. Defendants argue that the superseding indictment is made up of "argumentative narrative allegations" and providing it to the jury will be unfairly

prejudicial. *Id.* Additionally, defendants argue that the government may not actually introduce evidence about each allegation in the superseding indictment and providing the superseding indictment to the jury in that situation would preclude defendants from rebutting unsupported allegations. *Id.* at 4. The government opposes the motion and argues that providing the superseding indictment to the jury will allow the jury to distill the evidence as they deliberate. Docket No. 562 at 8-9. The Court agrees with defendants. There is no reason to provide the indictment to the jury, but there is a reason not to, namely, the danger of unfair prejudice given the argumentative nature of the indictment. The Court will therefore grant Docket No. 529.

## XII. Docket Nos. 530 and Docket No. 543 motion 8

Defendants ask the Court to exclude references to and evidence about other criminal cases and civil suits that have been brought regarding the broiler chicken industry. Docket No. 530 at 1-2.[1]

Defendants argue that, if defendants attack the credibility of Robbie Bryant, an employee immunized from prosecution under PPC's plea agreement, the government should be able to introduce only a redacted version of the plea agreement that excludes facts. The government argues that, if defendants attempt to impeach Mr. Bryant with the plea agreement, the government should be permitted to introduce the plea agreement to demonstrate that Mr. Bryant has an obligation to tell the truth and his protection under the plea agreement does not depend on the outcome of the trial.

---

[1] The government filed its own motion in limine asking the Court to admit PPC's plea agreement if defendants call into question the credibility of Mr. Bryant on cross-examination. Docket No. 543 at 11.

Docket No. 543 at 11.  The Court rules that, if defendants impeach Mr. Bryant based on him having an immunity agreement, the government may introduce that page of the plea agreement conditioning immunity on Mr. Bryant telling the truth.

Additionally, defendants ask the Court to exclude references to other unresolved criminal and civil proceedings and civil settlements.  Docket No. 530 at 8-10.  The government states that it does not intend to introduce "evidence or argument of settlements reached in any price-fixing case involving the broiler chicken industry," but may seek to introduce "evidence that the defendants and their co-conspirators continued to participate in the charged conspiracy, or undertook obstructive acts, after becoming aware of related civil and criminal proceedings."  Docket No. 565 at 7.  The government's response does not indicate why performing these acts after becoming aware of other proceedings is relevant, and the Court will exclude any reference to them.  Accordingly, the Court will grant Docket No. 530, except that the government may introduce the relevant page or pages of PPC's plea agreement if defendants attempt to impeach Mr. Bryant's testimony with the fact that he is receiving immunity.  The Court will deny Docket No. 543 motion 8, except for the exception just noted.

### XIII. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Docket No. 518 is **GRANTED**.  It is further

**ORDERED** that Docket No. 519 is **DENIED**.  It is further

**ORDERED** that Docket No. 520 is **GRANTED in part** and **DENIED in part**.  It is further

ORDERED that Docket No. 521 is **DENIED**.  It is further

ORDERED that Docket No. 523 is **GRANTED in part**.  It is further

ORDERED that Docket Nos. 524 and 543 motion 6 are **GRANTED in part** and **DENIED in part**.  It is further

ORDERED that Docket No. 525 is **DENIED**.  It is further

ORDERED that Docket No. 526 is **GRANTED**.  It is further

ORDERED that Docket No. 527 is **GRANTED in part** and **DENIED in part**.  It is further

ORDERED that Docket No. 528 is **DENIED**.  It is further

ORDERED that Docket No. 529 is **GRANTED**.  It is further

ORDERED that Docket No. 530 is **GRANTED** and Docket No. 543 motion 8 is **DENIED**, except that the government may introduce the relevant page or pages of PPC's plea agreement if defendants attempt to impeach Mr. Bryant's testimony with the fact that he is receiving immunity.

DATED October 7, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge