IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY R. MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

      Defendants.

No. 20-cr-00152-PAB

## DEFENDANTS' JOINT MOTION TO EXCLUDE THE GOVERNMENT'S PROPOSED SUMMARY EXHIBITS

The government seeks to introduce ten "summary" exhibits that contort, misstate, and selectively present information from a handful of documents, some of which are inadmissible. The exhibits do not comply with Federal Rule of Evidence 1006, which allows parties to summarize admissible and voluminous records. Indeed, the government attempts to selectively excerpt small portions of a small set of documents to argue a preferred narrative; it does not summarize voluminous factual information. The exhibits also raise constitutional issues, stifling Defendants' opportunities to confront witnesses. The Court should exclude these "summaries."

## BACKGROUND

In its Omnibus Motion in Limine, the government asked the Court to admit summary exhibits the government intends to introduce "during the direct examination of two law-

enforcement case agents," with one agent speaking to "actions directed toward increasing prices to KFC and other customers" and a second agent discussing unspecified "conspiratorial events." Doc. 542 at 9-11. Defendants opposed the request. Doc. 560 at 10-12; Doc. 564. The Court denied the government's motion without prejudice because it could not assess admissibility without reviewing the exhibits. Doc. 642 at 6. On October 18, 2021, the government submitted a trial brief that included ten "near-final" summary exhibits. Doc. 670 at 1-7; Exs. A1-A10. It also provided Defendants with stamped versions. *See* GX1-1 - GX90-12.

## LEGAL STANDARD

Federal Rule of Evidence 1006 permits the use of summary exhibits "to prove the content of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. Evidence is "voluminous" under Rule 1006 when comprehension would be "difficult" and "inconvenient" absent summarization. *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008); *see Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1335 (10th Cir. 1996) ("eighteen one-page" documents not voluminous); *Griddine v. GP1 KS-SB, Inc.*, 2019 WL 1002049, at *8 (D. Kan. Feb. 28, 2019) (223 pages not necessarily "so voluminous as to require a summary").

Summaries are admissible under Rule 1006 only when the underlying documents are themselves admissible. *United States v. Channon*, 881 F.3d 806, 811 (10th Cir. 2018). Summary exhibits are meant only to reflect the contents of the documents they summarize, not add inferences, interpretations, or argument. *State Office Sys., Inc. v. Olivetti Corp. of Am.*, 762 F.2d 843, 845-46 (10th Cir. 1985) (summaries that go beyond "simple compilation" of records impermissible). Accordingly, summary exhibits must be "accurate and non-prejudicial"; nothing should be "lost in the translation" and information should not be "embellished" or "annotated"

with the proponent's inferences, "whether in the form of labels, captions, highlighting techniques, or otherwise." *United States v. Bray*, 139 F.3d 1104, 1110-11 (6th Cir. 1998).

## ARGUMENT

### I.    The Government's Exhibits Do Not Summarize Admissible Evidence.

As a threshold matter, the government must prove that any materials summarized in a summary exhibit are admissible. *United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012) (error to admit summary evidence without necessary foundation). It has not done so here. The government points to broad categories of documents—emails, text messages, phone bills, PowerPoint presentations, and bids tendered, among other things—and asserts that they are admissible because of the Court's *James* ruling and the business records exception. Doc. 670 at 3-4. The government is wrong.

*First*, the government cannot rest on the Court's preliminary *James* determination, the purpose of which was not to determine admissibility. Although the Court found that certain statements preliminarily satisfied Rule 801(d)(2)(E), *see* Doc. 559 at 20-48, it has not ruled that any of the underlying documents are authentic, much less that each is admissible. The government still must overcome any objections the Defendants may have to the admissibility of the underlying documents, including relevance and undue prejudice. And even if some of the statements from the *James* log are ultimately determined to be admissible, the government's "summaries" erroneously assume the *entire* document from which the statement derives is authenticated and admissible. The government also admits that its summaries include other sources of information containing hearsay that were not previously included in the *James* log and for which there has been no threshold finding of authenticity or satisfaction of any hearsay

exception. *See* Doc. 670 at 3. Defendants will be making objections with respect to certain of these documents pursuant to Rules 401, 403, 404(b), and 802, among others, at the time the government proffers the underlying documents.[1]

*Second*, the government's conclusory assertion that all of the underlying documents satisfy the business records exception is not supported by any proof and conflicts with the Court's orders. *See* Doc. 673. As the Court explained, documents like those submitted as part of the *James* log—including emails produced from chicken suppliers—"bear no indicia of accuracy regarding their content within the meaning of the business rule exception." Doc. 673 at 9-10. This problem is amplified for other types of documents like text messages and handwritten notes, for which the government made no showing.

*Finally*, the government argues that the documents are admissible because they show "the conspirators' association and knowledge of the means of contacting each other." Doc. 670 at 4. The outdated, out-of-circuit cases on which the government relies are distinguishable. In both, courts found that notations of names, addresses, or phone numbers were not hearsay when offered to show a connection between two individuals. *See United States v. Anello*, 765 F.2d 253, 261 (1st Cir. 1985); *United States v. Ruiz*, 477 F.2d 918, 919 (2d Cir. 1973). Here, the government seeks to admit cherry-picked portions of documents, for the truth of the matter asserted, in order to argue its view of the evidence.

For these reasons alone, the Court should exclude the government's "summary" exhibits.

---

[1] For example, several of the underlying documents are not admissible against Mr. Blake under Rules 401, 402, and 403, in light of the Court's *James* ruling that Mr. Blake did not join the charged conspiracy until October 24, 2016. Doc. 559 at 20. Admitting them at trial based on the same lack of evidence of Mr. Blake's involvement pre-October 2016 would have little probative value and would unduly prejudice Mr. Blake.

The government should not be able to refer to them, or the underlying documents, in its opening statement at trial, as the government has no good-faith basis to assume that this evidence will be admissible. *See* ABA, Criminal Justice Standards for the Prosecution Function 3-6.5 (2017).

## II.    The Government's "Summary" Exhibits Are Impermissible Under Rule 1006.

The government's proposed "summary" exhibits are not proper Rule 1006 exhibits. While there are many documents in the case, the "summary" exhibits do not purport to summarize voluminous information. Many simply characterize a small set of materials plucked from a non-voluminous handful of documents, edited and arranged to advance the government's narrative, and overlaid with additional argumentative graphics. Many also contain misleading titles and headings, and they refer to documents that the government does not have a reasonable basis to believe are admissible, as explained above. The Court should exclude each "summary."

*Exhibit A1* is a table with the names of the Defendants, other individuals, and businesses, along with phone numbers and a "minimum time period" listed for each. The document is not a proper summary exhibit. First, "minimum time period" is a misleading and argumentative heading that implies a broader date range that is not reflected in the underlying documents. Second, several dates provided by the government are not found in the underlying documents. The government, for instance, attributes a phone number to Robert Lewis from 2008 to 2014. Doc. 670-1 at 4. The underlying document reflects Mr. Lewis' association with the number on two dates in 2014 and 2017. GX9150, GX9010.

The government also engages in misleading rounding. The proposed exhibit states Mr. Kantola used a phone number for all of 2009 when in fact the underlying exhibit states he had the number starting on December 29, 2009. *Compare* Doc. 670-1 at 3 *with* GX8041 at 8. The

proposed exhibit also states Tim Stiller continues to use a particular phone number when the underlying user identifying exhibit gives the latest date of 2017. *Compare* Doc. 670-1 at 5 *with* GX8084 at 2. And the proposed exhibit attributes a phone number to Walter Cooper for all of 2014 when the underlying user identifying document actually reflects his connection to the number for less than two weeks. *Compare* Doc. 670-1 at 3 *with* GX4500.

Third, many of the "associated toll exhibits" listed in the proposed exhibit do not include identifying information tying the phone number in the toll record to an individual or company. Rather, the toll records reflect only that a phone number made a call to another phone number on a particular date and time, and lasted for a specified period. *See, e.g.*, GX494. Accordingly, the government cannot "summarize" these exhibits as reflecting any individual's association with a phone number for any period of time. The government also cites toll records of calls outside the period it claims the listed individual is associated with the number, which renders the documents irrelevant, confusing, and improper for summarization under Rule 1006. *See, e.g.*, GX8057. These various misrepresentations, exaggerations, and inaccuracies prejudice Defendants and call into question the veracity of the entire exhibit. The Court should exclude the exhibit. *Bray*, 139 F.3d at 1110-11; *United States v. White*, 737 F.3d 1121, 1135 (7th Cir. 2013).

*Exhibit A2* is a table that purports to demonstrate the government's process for converting times between Coordinated Universal Time (UTC) and Eastern Time (ET). The document is not a summary of anything, and it includes no citation to underlying and admissible documents. Further, the table is inaccurate and misleading. While the table is titled "UTC to Eastern Conversion," it confusingly includes entries showing conversions from Mountain Time (MT) to Eastern Time. *See* Doc. 670-2 at 2. And the government misleadingly alters both time

and dates. *See id.* (converting 6:00 AM MT August 1, 2014 to 8:00 AM ET January 1, 2014).

    ***Exhibit A3*** contains a table titled "Time Conversions for Emails, Text Messages, and Phone Calls" that purportedly shows the time zone reflected in various exhibits and the government's corresponding conversion to Eastern Time. The document is not a summary of voluminous material but reflects the government's alterations to information contained in underlying documents. It has no place in the jury room. Additionally, the exhibit is plagued with inaccuracies and misrepresentations. The document, for example, changes the date on which communications purportedly were sent, in some instances backdating by a month. *See, e.g.*, Doc. 670-3 at 3 (GX246 altered from January 28, 2014, to December 28, 2013). It also misstates certain conversions—the time listed in GX1440 is purportedly converted "four hours," but the government changes the time from 3 PM UTC to 9 AM ET, a conversion of six hours. *Id.*

    ***Exhibit A4*** is titled "Supplier Discussions" and contains several different tables. The exhibit is not a proper Rule 1006 summary. First, the title of the exhibit, "Supplier Discussions," unnecessarily adds a biased label that is not included in the underlying documents and generally presumes "discussions" not reflected in the underlying documents. Indeed, the exhibit contains communications with non-suppliers, including customers, as well as unsourced information. *See* Doc. 670-4 at 2. Second, the government misrepresents and selectively splices together certain portions of documents to support their preferred narrative. As just one example, the government includes a series of text messages on November 7, 2014, and November 9, 2014. *Id.* at 18-19. Although these communications occurred between different individuals, at different times, with additional communications interspersed throughout, the government presents these cherry-picked snippets as if they form a single, cohesive conversation. *See* GX424, GX448, GX449, GX450,

GX451. Of particular concern, the government includes within this set a single sentence originally buried within a much larger email thread and misleadingly labels the entry as a "text." *See* GX424.

Third, many of the documents the government cites in its purported summaries are irrelevant. As just one example, the government claims Mr. Penn and Mr. Roberts had a phone call on August 15, 2014, *see* Doc. 670-4 at 3, but most of the documents it references as underlying evidence have no connection: GX1144 is an email between RSCS and Tyson employees; GX1062 is an invitation to a meeting of Pilgrim's Pride employees; GX8055 is "wireless subscriber information" from AT&T that contains a listing for Mr. Roberts among other individuals; and GX8024 is a seemingly random excerpt from a phone bill for Mr. Penn. The government's citation to irrelevant material does not render the exhibit a summary of voluminous information. *See also* Doc. 670-4 (citing GX944) (similarly irrelevant document).

Fourth, the proposed exhibit repeatedly omits essential information from the underlying documents, including the duration of phone calls and time zones. One of the documents the government cites in support of an August 15, 2014, phone call between Mr. Penn and Mr. Roberts, for example, makes clear that the call lasted *zero seconds*. GX1231 at 2. By placing this call in the summary exhibit as evidence of "supplier discussions," without including the duration of the "call," the government attempts to mislead the jury into inferring additional significance. The government also points to August 18, 2014, emails and a phone call between Mr. Penn and Jason McGuire, colleagues at Pilgrim's Pride. Doc. 670-4 at 6. But the government provides no time zone information for the communications (even though other entries on the government's table are in Eastern Time) and it presents the sequence of the communications out of order. *See*

*id*. Similar examples abound. *Id*. at 38 (citing GX247); *id*. at 40-42 (citing GX742, GX752-GX758) (similar listings without time zones and clearly not ET). The proposed exhibit also lists the wrong time for GX221, even considering the government's conversions—the face of the document says 2:24 PM UTC, but the chart lists the time as 9:24 PM ET. *Id*. at 38; *see id*. at 40 (GX744) (similar).

And the government cites to GX1547—an internal email from Jayson Penn to Roger Austin, colleagues at Pilgrim's Pride—as evidence of "supplier discussions." *Id*. at 27. While the government lists Mr. Penn's question, "Do we have TSN price idea?" it excludes Mr. Austin's response to that email: "I can give you an educated guess . . ." The email does not reflect supplier discussions of any kind and instead shows a lack of knowledge about competitors' pricing. Exhibit A4 is a misleading, incomplete, and disjointed selection of statements meant to advance the government's narrative. It is not a proper Rule 1006 summary.

*Exhibit A5* purports to reproduce portions of four text message conversations—comprising a total of nine text messages sent on four days that are months apart—depicted with enlarged graphics. The proposed exhibit is not a proper summary exhibit. Indeed, the nine text messages come from a small number of underlying documents; there is no voluminous information being summarized. The purported conversation between Jayson Penn and Jason McGuire in October 2014 and the conversation between Scott Brady and Mikell Fries in March 2013 each contain a single text message. Doc. 670-5 at 5. Even assuming the underlying documents are admissible, there is no need to "summarize" individual texts for the jury.

Separately, while the government cites a handful of documents as "sources" for the "summary" exhibit, many of the documents are irrelevant. The government, for instance, cites to

two pages from Mr. Penn's phone records in 2012 and 2019, even though it purports to "summarize" a single text message from 2014. *See* Doc. 670-5 at 5 (citing GX8024). The random citation of documents does not render the underlying material voluminous or the exhibit proper. Finally, the government's proposed exhibit uses imagery and pictures that are irrelevant to the purported "summary" and argumentatively draw attention to non-voluminous information from a handful of documents.

*Exhibit A6* is a nearly indecipherable mash-up of unrelated and unexplained slides. The exhibit is not a summary and goes well beyond the scope of the underlying documents. For example, the first four slides include an assortment of names and pictures representing various individuals and companies connected by a crisscrossing web of arrows. *See* Doc. 670-6 at 2. There is no logical way to derive meaning from these slides, which clearly do not reflect the underlying documents (none of which include toll records). Indeed, on all four slides the government cites to one email between Jayson Penn and Jason McGuire, colleagues at Pilgrim's Pride, and then a handful of photographs. *Id*. at 2-5 (citing GX1074, GX9235-37, GX9240, GX9242, G9244, GX9245, GX9247, GX9248, GX9251). But Mr. Penn is not named on some of the slides, certain photographs do not appear on every slide, and none of the information is voluminous. The arrows on the slides, moreover, constitute argument, suggesting some kind of connection between particular individuals on a particular day even though none of the cited "sources" reflect any connection. The government's misleading annotations and embellishments have no place in a Rule 1006 exhibit. *Bray*, 139 F.3d at 1110-11.

In the remaining slides, the government takes a similar approach and also cites to "sources" that have nothing to do with the information purportedly being "summarized." *See,*

*e.g.*, Doc. 670-6 at 8 (citing GX1008, GX1055) (documents from years after the purported text message conversation). And the slides include arrows that represent the government's contentions about the flow of information that is not established by the underlying records. It is argument that distorts and mischaracterizes the records. Finally, the last slide claims to summarize Mr. Little's calls with Messrs. Kantola, Pepper, Blake, and Roberts over the charge period. Not only does the slide contain inaccuracies, but the display of Mr. Little's photo in the center, larger than the others, suggests he is the hub of the unspecified communications. This is argument, not a summary of voluminous records.

*Exhibit A7* contains a table titled "RSCS Contract Prices, Initial Bids, and Period Pricing" that purports to show 2014 contract prices, 2014 bid prices, and 2015 contract prices offered by suppliers to RSCS. As with the other proposed exhibits, the document is not proper summary evidence under Rule 1006. First, the proposed exhibit does not merely summarize—it includes the government's analysis regarding the "difference" in bid pricing. Second, the government misleadingly represents some of the underlying documents. For example, the document the government cites to support the margin value it provides for George's August 2014 bid is a slide deck titled "2015 KFC COB Strategy Discussion." *See* Doc. 670-7 at 2 (citing GX1008). But the margin listed by the government is not in this document. Similarly, the document the government cites in support of the August 2014 bid for Pilgrim's Pride is a screenshot of an excel spreadsheet titled "KFC_Pricing_Model" that on its face has no date and does not indicate it was submitted to RSCS. *Id*. (citing GX1105). And the document the government invokes as Tyson's contract is not actually a signed contract. *Id*. (citing GX1129). Third, the proposed exhibit omits important information, including the fact that multiple

suppliers submitted multiple bids with different margins and settled on the final contract price only after lengthy negotiations with the customer. *See, e.g.*, GX1008. Fourth, the proposed exhibit cherry-picks information. The document contains what purport to be prices for only two of the twelve periods in 2014 and juxtaposes those period prices with bids and purported 2015 contract prices, suggesting an apples to oranges comparison between a selected period price under an existing contract with a bid for a different contract or a different year.

*Exhibit A8* contains a table listing eight "appointments" with corresponding "email" recipients. The purported exhibit does not summarize voluminous information and reflects incomplete information meant to argue the government's case. The exhibit is separated into two sets of columns for "appointment" and "email." Doc. 670-8 at 2. However, it does not include information regarding the subject or content of the correspondence or the identity of the sender. The omission of this essential information does not give the full context of the underlying documents. Additionally, the exhibit does not accurately represent the information in the underlying documents. As just one example, the exhibit implies that Roger Austin was the only "required attendee" at a January 27, 2017, appointment, *see* Doc. 670-8 at 2, when the underlying document clearly shows that several others were also "required attendees." GX1946.

*Exhibit A9* contains three graphs showing call totals between Mr. Little and others during an unspecified "Review Period." The call totals are stripped of any additional information, including duration and timestamp. *See* Doc. 670-9. Moreover, the graphs referencing Mr. Little's calls with Mr. Blake are extremely misleading and prejudicial because they refer primarily to calls that took place before October 24, 2016—the earliest date the government has presented any evidence Mr. Blake joined the conspiracy.

***Exhibit A10*** contains a series of pages titled "Hidden Columns in Excel Spreadsheet." Doc. 670-10 at 2-8. As the government openly admits, this is not a summary exhibit. *See* Doc. 670 at 2. The proposed exhibit, which lacks evidentiary foundation, includes a reference to a single document and, instead of summarizing that document, shows the process for hiding columns in Excel, a user-specific process. The government cannot submit its own work product as evidence.

## III.    The Government's "Summary" Exhibits Violate the Confrontation Clause.

Allowing the government to introduce testimonial "summaries" is also highly prejudicial because it violates Defendants' Sixth Amendment rights. The government seeks to introduce argumentative "summaries" of emails, text messages, phone calls, and other documents through witnesses with no personal knowledge of the underlying content and no role in the origination of the documents. That is impermissible.

It is well established that Defendants have a constitutional right to cross-examine the witnesses who testify against them. *See Crawford v. Washington*, 541 U.S. 36, 42 (2004); U.S. Const. amend. VI. Here, the government cannot admit testimonial summary exhibits unless Defendants are "given the opportunity to cross-examine the individuals whose assertions are contained in the summary evidence." Karim Basaria, *Summary Exhibits and the Confrontation Clause: Looking Beyond the Hearsay Rule for Evidentiary Implications of Crawford's Progeny*, 120 J. Crim. L. & Criminology 851, 852 (2013). The government's proposed summary evidence deprives Defendants of that constitutional right.

Most of the "summaries" the government seeks to admit are clearly testimonial as any "reasonable person" would find they were prepared for the "prosecution of a crime" and the

government seeks to admit them to establish the truth of the matter asserted. *United States v. Pablo*, 696 F.3d 1280, 1287 (10th Cir. 2012). Defendants thus have a constitutional right to confront the declarants, and the government's proposed plan plainly violates that right. The Court should reject it.

### IV.     The Government's Proposed Exhibits Are Also Impermissible Under Rule 611(a).

The government mistakenly conflates Rule 1006 and Rule 611(a). *See* Doc. 670 at 5. But Rule 611(a) is entirely distinct and is not a basis for admissibility of exhibits. Rather, Rule 611(a) allows for the use of pedagogical tools—for example, PowerPoint presentations or charts—at trial. *See United States v. Renteria*, 720 F.3d 1245, 1253 (10th Cir. 2013). "Courts usually do not allow such charts to go to the jury room absent consent of the parties." *United States v. Milkiewicz*, 470 F.3d 390, 397 n.14 (1st Cir. 2006); *see* 31 *Federal Practice and Procedure* § 8043, at 524 n.9 (courts usually "do not permit demonstrative evidence in the jury room"). And where there is any question about the admissibility of the information discussed in a demonstrative, Rule 611(a) "in no way" makes it admissible. *Irvin*, 682 F.3d at 1263.

Separately, the Court should not allow the government to present its proposed exhibits as pedagogical tools pursuant to Rule 611(a), which is meant to "(1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." But misleadingly presenting evidence in an argumentative fashion would confuse the jury and unfairly prejudice Defendants. *See supra* at 5-12.

### CONCLUSION

The Court should exclude the government's proposed "summary" exhibits.

Dated: October 22, 2021

Respectfully submitted,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ Elizabeth Prewitt*
Elizabeth B. Prewitt
LATHAM & WATKINS LLP
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

*s/ James A. Backstrom*
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*s/ Mark A. Byrne*
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

*s/ Craig Allen Gillen*
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

*s/ Barry J. Pollack*
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT,
ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated: October 22, 2021

*s/ Michael F. Tubach*

Michael F. Tubach