IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

    Defendants.

## UNITED STATES' NOTICE REGARDING GX-6086 AND GX-6087

The government intends to introduce exhibits GX-6086 and GX-6087 as sufficiently authenticated under Fed. R. Evid. 901(b)(4). The exhibits comprise hard-copy documents contained within two manila folders—one folder each for GX-6086 and GX-6087. Through the contents of the exhibits and testimony at trial, the government has met its burden to satisfy the low threshold of "provid[ing] a rational basis from which the jury could infer that the document did, in fact, belong to" defendant Blake. *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990).  Defendant Blake is linked to the exhibits in several ways. First, Mr. Gary Weeks' testimony established that

defendant Blake personally gave him the two folders contained in GX-6086 and GX-6087. Second, the contents of the files indicate they belonged to defendant Blake, because he was responsible for the two accounts for which the folders were labeled; he is the only individual who appears as a recipient on all of the four printed emails in GX-6086; the emails were printed from his Microsoft Outlook account; and the names and phone numbers written on the manila folders correspond to defendant Blake's contacts in the industry. Finally, external circumstances indicate the files belong to defendant Blake—that is, even a cursory comparison reveals that the handwriting on the two exhibits is similar to handwriting on other documents readily attributable to defendant Blake.

## BACKGROUND

GX-6086 and GX-6087 are photocopies of manila folders and their contents. The exhibits contain handwritten notations—whether directly on the manila folder, printed documents, or Post-It notes. The manila folder in GX-6086 is labeled "KFC COB Cost Plus 2108 [*sic*]" and the manila folder in GX-6087 is labeled "Popeye's Cost Plus 2018." The documents contained in each folder are consistent with these accounts and time periods. For example, the folder labeled "KFC COB Cost Plus 2108" contains a printed spreadsheet titled "RSCS Feed Flow Thru Calculation" (where RSCS is the buyer for KFC) for the period from December 31, 2017 to January 27, 2018.  The folder labeled "Popeye's Cost Plus 2018" contains a spreadsheet titled "George's Inc. Popeyes Cost Plus Monthly Pricing" for January 2018. GX-6087 at 4.

GX-6086 also contains printed copies of four emails, each of which includes defendant Blake as a recipient. Defendant Blake is the only recipient common to all four emails. *See, e.g.*, GX-6086 at 9, 10, 11, 14-15. The header of each printed email is "Ric Blake." *Id.* The manila folders themselves contain handwritten phone numbers for defendant Bill Kantola (Koch Foods), Mr. Carl Pepper (Tyson), Mr. Dale Kelly (Kelly's Foods), defendant Scott Brady (Claxton), and defendant Roger Austin (Pilgrim's).

Mr. Gary Weeks, a custodian of records for George's, testified on November 16, 2021 that he collected the two folders personally from defendant Ric Blake when he stopped by defendant Blake's office around the time defendant Blake was to retire. R. Tr. Nov. 16, 2021 at 22:23-23:3. Mr. Weeks explained he had no reason to doubt those were defendant Blake's documents, and no reason to believe the documents belonged to anyone else. *Id.* at 23:15-24:1.

## LEGAL STANDARD

"Rule 901 creates a low bar for authentication," *Rippenkroeger v. Stillwater Cent. R.R., Inc.*, 2009 WL 10673104, at *1 (W.D. Okla. Dec. 22, 2009), and "the Court need[s] not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the jury ultimately might do so." *United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006).

The standard for Rule 901(b)(4), in particular, is "not an exacting one." Wright & Miller, 31 FED. PRAC. & PROC. EVID. § 7109 Subdivision (b)(4) (1st ed., Apr. 2021 Update). "With respect to a document attributed to the defendant, the prosecution need only provide a rational basis from which the jury could infer that the document did, in

3

fact, belong to him." *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990).

## DISCUSSION

Federal Rule of Evidence 901(b)(4) permits authentication based on "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."

Accordingly, the Tenth Circuit has held in at least three cases that handwriting identification is not necessary to authenticate handwritten documents, as long as the context, characteristics, and circumstances provide sufficient evidence that the writing is what the proponent claims. In *United States v. Brown*, 255 F. App'x 292, 295 (10th Cir. 2007), for example, the Tenth Circuit rejected the defendant's challenge to the authentication of two unsigned letters as "frivolous," given their contents and the surrounding circumstances:

> Here, the letters contained sufficient specific references to the attempted robbery and the individuals involved that they may be properly authenticated as having been written by Mr. Brown [the defendant]. Both letters refer to the third suspect by monikers known only to Mr. Brown and Curley [the purported recipient of the letter] . . . . Similarly, the second letter again states that the gun was not destroyed . . . . Coupled with these references was Curley's testimony that he believed Mr. Brown authored the letters. See Fed.R.Evid. 901(b)(1). Given the content of the letters and the circumstances surrounding this case, the authentication requirements were clearly satisfied. It would therefore be frivolous to contend that they were not properly admitted.

The Tenth Circuit in *United States v. Reyes*, 798 F.2d 380, 383 (10th Cir. 1986) likewise rejected a defendant's challenge to the admission of handwritten notes by an

4

alleged unknown co-conspirator. The defendant maintained the handwriting in the notes was not his—but, because of the contents of the notes, "[t]he source of the notes[,] and the correspondence of information contained in the notes to members of the conspiracy," the Tenth Circuit held there was "ample foundation for their admissibility." *See also United States v. Savaiano*, 843 F.2d 1280, 1299–300 (10th Cir. 1988) ("The government's Exhibit 9 was properly admitted into evidence even though the handwriting was not identified.").

Based on those precedents, the contents and surrounding circumstances of GX-6086 and GX-6087 make clear that the documents—including any handwritten notations—belong to defendant Blake.

I. **Testimony Indicates the Documents Came from Defendant Blake**

Testimony at trial from both Mr. Gary Weeks and Mr. Brian Coan link the exhibits to defendant Blake. Mr. Weeks testified on November 16, 2021 that he collected the two folders in GX-6086 and GX-6087 directly from defendant Blake. And Mr. Blake did not only personally give him the folders, but he gave them to Mr. Weeks when Mr. Weeks stopped by defendant Blake's office. R. Tr. Nov. 16, 2021 at 22:23-23:3. *See also United States v. Ceballos*, 789 F.3d 607, 618–19 (5th Cir. 2015) (explaining the Fifth Circuit has upheld a finding of authenticity in part because the "items [with handwriting were] seized from [the defendant's] . . . office," which the court characterized as a place of "exclusive possession"). Mr. Weeks said he had no reason to doubt the documents belonged to defendant Blake, and no reason to believe the documents were anyone else's. R. Tr. Nov. 16, 2021 at 23:15-24:1.

5

The organization of the exhibits also mirrors the file-keeping system Mr. Brian Coan attributed to defendant Blake. Mr. Coan testified that he retrieved certain hard-copy documents from a box in a storage facility, which contains George's prior sales files. One of the boxes had writing on it which said "Ric Blake" and, when asked what was inside that box, Mr. Coan described manila folders with customer names on the tabs. GX-6086 and 6087 are organized precisely the same way. R. Tr. Nov. 5, 2021 at 82:18-83:7-15.

## II.     The Contents of the Documents are Attributable to Defendant Blake

Defendant Blake is uniquely linked to the underlying contents of the exhibits. *First*, the contents of the folders relate to accounts managed by defendant Blake. The label and documents indicate the folders relate to two contract negotiations: (1) KFC COB Cost plus 2018 and (2) Popeyes Cost Plus 2018. Defendant Blake was involved in sales for both accounts. James Olson, the CEO of a franchise of KFC, *see* R. Tr. Oct. 27, 2021 at 78:9-80:3, testified that Blake was a long-term chicken supplier working with RSCS and that Blake was the only person at George's with whom he worked. *Id.* at 103:1-15. Mike Ledford of RSCS, KFC's buyer, testified that defendant Blake was his main contact at George's for contract negotiations in 2012 and 2013. R. Tr. Nov. 8 at 196:21-23. As GX-603 shows, defendant Blake was also in charge of negotiations to supply Popeyes in calendar year 2018. And one of the email printouts in GX-6086 itself lists Ric Blake's "key accounts" as "KFC, Popeyes." GX-6086 at 14.

The contents of the handwritten notes further indicate a connection between the person who printed documents and the person who authored the handwritten notations.

On page 9 of GX-6086, for example, a Post-It note is adhered to an email titled "2018 Poultry RFP Results"; the note contains handwriting of what appears to be volume information for various chicken products, three of which are listed in the email. Another set of handwritten notations appears to calculate margins for the stair-stepped price that RSCS proposed. GX-6086 at 11. As another example, on page 14, the handwritten notes include volume information for KFC and Popeyes (accounts defendant Blake manages), as well as other customers.

      Defendant Blake's role at George's thus directly connects him with the hard-copy documents, including handwritten notations, contained in both files. As other courts have confirmed, "in accordance with Rule 901(b)(4), 'the contents of a writing may be used to aid in determining the identity of the declarant,' if, for example, the writing 'deal[s] with a matter . . . particularly within the knowledge of the persons corresponding so that the contents of the [writing] were not a matter of common knowledge.'" *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990) (quoting *United States v. Wilson*, 532 F.2d 641, 644 (8th Cir.), *cert. denied*, 429 U.S. 846 (1976) and 5 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 901(b)(4) [01], at 901–49 (1990)). *Cf. Hardin v. Belmont Textile Mach. Co.*, No. 3:05-CV-492-M, 2010 WL 2293406, at *5 (W.D.N.C. June 7, 2010) (authenticating emails in part because they "discuss 'various identifiable matters' related to Hardin's employment").

      *Second*, defendant Blake received all the emails in GX-6086; indeed, he is the only individual who appears as a recipient in all the emails. The header of the printouts also read "Ric Blake," suggesting defendant Blake printed each email in Microsoft

7

Outlook. Several courts have linked emails to defendants on that basis. For example, the court in *United States v. Vaghari*, 2009 WL 2245097, at *9 (E.D. Pa. July 27, 2009), relied in part on how "[t]he emails contain [the defendant's] name and email address in the headers" to identify a document as belonging to the defendant. *See also id.* at *8 ("Other courts have authenticated emails in this manner, relying on the email addresses in the headers" alongside other circumstantial evidence); *Hardin*, 2010 WL 2293406, at *5 (authenticating emails because they "are provided on a printout that is in the familiar Microsoft Outlook format and they provide 'many distinctive characteristics, including . . . the name of the person connected to the address.'") (citation omitted).[1]

    *Third*, the handwritten notations on the manila folders relate to defendant Blake's contacts in the industry. The notations include the names and phone numbers for defendant Kantola (Koch), defendant Brady (Claxton), and defendant Austin (Pilgrim's). The exhibits also include contact information for Mr. Carl Pepper, who was found to be a co-conspirator by the Court's *James* hearing. ECF 559 at 16. The contents of the folders include handwritten notations on competitively sensitive information as well, such as prices from competing suppliers. GX-6086 at 4; GX-6087 at 4. *See Reyes*, 798 F.2d at 383; *United States v. Benavides*, 470 F. App'x 782, 789 (11th Cir. 2012); *United States v. Mokol*, 957 F.2d 1410, 1419 (7th Cir. 1992); *United States v. de Gudino*, 722 F.2d 1351 (7th Cir. 1983).   GX-6086 and GX-6087 therefore clearly belonged to Mr. Blake.

---

[1] Mr. Robert Hood testified at trial that George's emails are stored on Microsoft Exchange servers. *See* R. Tr. Oct. 28, 2021 at 116:1-4.

### III.     The Handwriting is Similar to Other Documents Readily Attributable to Defendant Blake

Finally, the handwriting on the documents are sufficiently similar to handwriting on other documents readily attributable to defendant Blake. For example, page 4 of GX-1730 (GEODOJ_0584947) contains handwritten notes on letterhead stating "From the desk of Ric Blake." *See Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1423 (10th Cir. 1991) (holding that documents prepared on company letterhead and disclosed during discovery support authenticity of such documents); *Lichter v. Bureau of Accts. Control, Inc.*, 2021 WL 1026175, at *5 (S.D.N.Y. Mar. 17, 2021) (documents on letterhead "admissible as the statements of a party opponent"); *United States v. Miller*, 985 F. Supp. 1284, 1285–86 (D. Kan. 1997) (authenticating a phonebook under Fed.R.Evid. 901(b)(4) as the defendant's, in part because it "had the words 'Brian Miller's Phone Book' written inside"). A cursory visual inspection reveals the writing is nearly identical to the handwriting on the folders in GX-6086 and GX-6087. For example, the word "Plus" in GX-1730 (in "Meats Plus") is identical to the word "Plus" on the label of GX-6087 (in Popeyes "Cost Plus"). The handwriting from the two exhibits is also similar to page 22 (GEODOJ_0583083) of GX-9129, which is a Credit Card Authorization form containing handwritten versions of defendant Blake's name, billing address, and signature. When compared with the handwriting on the folders in GX-6068 and GX-6087, it is clear the handwriting matches—the P's and the R's billow, and digits in the zip code in GX-9129 are similar to those in the phone numbers in GX-6067 and GX-6068.

In combination, there is sufficient evidence under Rule 901(b)(4) to support a finding that GX-6086 and GX-6087 belonged to or were authored by defendant Blake.

Dated: November 19, 2021

Respectfully submitted,

*/s/Yixi (Cecilia) Cheng*
YIXI (CECILIA) CHENG
MICHAEL KOENIG
HEATHER CALL
CAROLYN SWEENEY
PAUL TORZILLI
Antitrust Division
U.S. Department of Justice
Washington D.C. 20530
Tel: 202-705-8342
yixi.cheng@usdoj.gov
Attorneys for the United States