# EXHIBIT A

| Log # | GX | Description | Type of document | Date | Declarant(s) | Statement(s) | Bases of 801(d)(2)(E) admissibility | History |
|---|---|---|---|---|---|---|---|---|
| 1-S | 247 | Email chain between Jimmie Little and Dean Bradley on or about 12/23/2013 attaching PDF (PILGRIMS-DOJ-0002258077). | E-mail | 12/23/2013 | Jimmie Little | SK: Hello Don,<br><br>I have attached Church's Chicken new QA Requirements for 2014 for your information.  Please contact me with any questions.<br><br>DA: FYI<br><br>JL: We need to discuss this! | A, L | Little's statement received as party admission. |
| 2-S | 1713 | Email chain between Scott Tucker, Roger Austin, Justin Gay, and Mike Ledford on or about 11/19/2013 (PILGRIMS-0005254544). | E-mail | 11/18/2013 | Roger Austin | [Mr. Ledford's statements admissible for the non-truth purpose of their effect on the recipient.]<br><br>We can talk in the morning after I do some scouting. | A, B, H, I | Defendant Austin's statement admitted only against Austin. |
| 3-S | 6179 | Email chain between Jimmie Little, Thomas Lane, Jason McGuire, and Dean Bradley on or about 10/28/2013 (PILGRIMS-0006841221). | E-mail | 10/28/2013 | Jimmie Little<br>Thomas Lane | JL: Dean attached is our proposed costing for 2014. As previously discussed we would like to keep our current DC's as well as pick up the Caro business. We also have more availability out of Chattanooga with some capital improvements. Tommy and I are available whenever you would like to have a call or I can come to Atlanta and we can get Tommy on a call as he cannot travel due to his recent surgery.<br><br>DB: In looking at your cost plus, you have a $0.0205/lb increase in your cost model for 2014.  I can tell you that I have suppliers already in with decreases in cost for next year.  You have been telling me that you want more business for next year so I'm a little shocked to see this huge increase.  I would politely suggest that you go back and take a long hard look at this.<br><br>JL: ?<br><br>TL: You think he is bluffing?????<br><br>JL: I know 1 who improved wog yield, 1 who increased price, and no clue on 1 | A, B, | Witness was not called. |
| 4-S | 9869 | Emails between Roger Austin and Jayson Penn on or about 1/27/2012 (PILGRIMS-0005827819). | E-mail | 1/27/2012 | Roger Austin<br>Jayson Penn | RA: I received a call from Mike Ledford today that we need to talk about.<br><br> The franchisee that bought the Atlanta market wanted to know what his options were for purchasing chicken. When Steven, who works for Mike, did the comparisons, including direct delivery by other companies and third party distributors we were the highest delivered in price he could get, in some cases quite a bit higher. Mike wanted to let me know that before he shared it with the franchisee. He is going to give them the numbers tomorrow so he wanted to give me a chance to do whatever we wanted to do if anything.<br><br> You and I have discussed what the issue is and that is that our case weights are the highest of anyone in the system by about ½ pound per case.  Mike thinks we need to fix that to be in a more competitive situation across the board. He thinks it is just a matter of time before he gets more calls.<br><br> Here's the math: In the first 4 weeks of this year we have sold on average, system wide, 47,289 cs./week which is at ½ pound per case 23,645 #. At January's price at .9612 that would be  $22,727 per week or $1,181,804 per year. If we don't do anything I think we are in jeopardy of losing that business and we could also begin to get dinged in other places because news travels fast.<br><br>He didn't ask for anything on dark meat where we are 3 pounds per box heavier than most of the competition.   I have confirmed that these numbers are accurate. I also believe they have multiple options cheaper than we are right now.  I have to leave for an appointment in a few minutes but will be available later tonight or in the morning to discuss.   These stores purchase in Atlanta are about 625,000 pounds per month.<br><br>JP: What does the .5 lb represent in c/lb? Dont understand. Did we not negotiate the price and case weights in conjunction with each other?<br><br>RA: About 1 cent per pound. The price is calculated on the margin over feed every month. The case weights can be adjusted every quarter.  Every other supplier is right at the 45.5 case weight and we are at 46. We held our ground there last year which was a very negative battle. Mike didn't have any other options then. Today he does. One thing that is probably pushing this is that Claxton is 2.33 cents cheaper than we are on the price side and a ½ pound per case lighter. That is 3.4 cents per pound. That is a lot of money to a guy that just bought 55 stores. | A, H | New Exhibit |
| 5-S | 9703 | Email chain between Tim Mulrenin, Carl Pepper, Brian Roberts, Mark Milbrodt, and Tim Scheiderer, among others, on or about 8/13/2014 (TY-000128401). | E-mail | 8/13/2014 | Brian Roberts<br>Timothy Mulrenin | BR: I think this is the model you need for comparison. What do you think the possibility is that we can get some level of commitment on what you want to do by the end of the week?<br><br>RE: If I get this right (before I speak to Pete…)<br><br>1.     You want an increase in margin from $0.075/lb to $0.16/lb  PLUS<br>2.     You want to be paid for the 10% target marination pick-up (roughly  another $0.14-$0.15/lb) PLUS<br>3.     You want to take out 48 hr drain weights (worth about $0.036/lb) PLUS<br>4.     You want to take out all upper case weights to the top of the allowable  cut weight range (worth up to another 8.8 or so lbs per case which, round number, on your proposed model @ $0.9881 = $0.14 to $0.15/lb.<br><br>Grand total I come up with a price in period 7 from the current $0.9436 to  somewhere around $1.30 to $1.32/lb if I'm adding it all up correctly.<br><br>You trying to get me fired before I even move here??<br><br>Seriously- recap the "reality" of what you are asking for and tell me where I'm  missing something if I am.  Let's discuss tomorrow.<br><br>BR: Start preparing a response. We can review this afternoon.<br><br>TM: I'm with a customer.  Can you guys get together on this today?  Just work right  from the deck and wordsmith it.<br><br>I'll be available this afternoon.<br><br>*REVISED*<br><br>1.     Margin will increase from $0.075 to $0.160<br><br>a.     Consistent with current average margins for small bird  equivalent/competing sales | A, E, G | Admitted. Roberts and Mulrenin statements as party admissions and remaining statements for their effect on the recipient.<br><br>Not on James Log |

| Log # | GX | Description | Type of document | Date | Declarant(s) | Statement(s) | Bases of 801(d)(2)(E) admissibility | History |
|---|---|---|---|---|---|---|---|---|
| 6-S | 9730 | Email between Walter Cooper and Joe Brink dated on or about 9/22/2014 (POLCHKED0000084141). | E-mail | 9/22/2014 | Walter Cooper | Joe after our last conversation I would like for you to consider the following and let us know your thoughts.<br><br>1. Pricing delivered to Kelly Foods for the Splits $1.07/#.<br><br>2. Case Weights to be determined from the previous Quarters average.<br><br>3. Increase in Volume between 500K to 1M# on the Splits.<br><br>4. Step Pricing in 2014:<br><br>Oct  1   increase   $0.05/#<br><br>Nov  1   increase   $0.05/#<br><br>Dec  1   increase   $0.05/#<br><br>Jan 1, 2015 increase $0.04/#<br><br>Joe please look this over and let us know if there are any questions. I regret that our schedules would not allow us to meet face to face later this week. Take care and I will follow up in a few days. | A, E | Not on James Log |
| 7-S | 9739 | Email chain between Walter Cooper and Joe Brink dated on or about 10/13/2014 (POLCHKED0000133060). | E-mail | 10/13/2014 | Walter Cooper | JB: Walter,  I am still giving oxygen to the folks at Polio Tropical over the increase of ~;0.19 per pound delivered on the chicken. They do not want to start the price increase until next year. Is there any way we stair step the increase starting in January?<br><br>WC: Joe we were able to source Freight Rates lowering the price by a penny. So that would put us at<br><br>$1.06/# delivered.<br><br>Please consider the following:<br><br>December 1 go up a dime<br><br>January 1 go up eight cents<br><br>-or-<br><br>This option I will have to get cleared.<br><br>Do a two year price agreement ending December 2016.<br><br>January 1,2015 do a dime increase<br><br>April 1,2015 do an eight cent increase<br><br>-or-<br><br>Your thoughts?<br><br>We want to get this done as quick as possible so please let me know your thoughts.<br><br>WC: Joe we apologize for any misunderstanding concerning step pricing but please see our email below sent on 10-2-2014 | A, E | Claxton did not produce this document until mid trial.<br><br>Not offered into evidence.<br><br>No previous opportunity to present on James Log. |
| 8-S | 9740 | Email chain between Walter Cooper and Joe Brink dated on or about 9/22/2014 (POLCHKED0000133954). | E-mail | 9/22/2014 | Walter Cooper | [[Joseph Brink's statements for the non-truth purpose of their effect on the recipient]]<br><br>WC: Joe after our last conversation I would like for you to consider the following and let us know your thoughts.<br><br>1. Pricing delivered to Kelly Foods for the Splits $1.07/#.<br><br>2. Case Weights to be determined from the previous Quarters average.<br><br>3. Increase in Volume between 500K to 1M# on the Splits.<br><br>4. Step Pricing in 2014:<br>Oct  1   increase   $0.05/#<br><br>Nov  1   increase   $0.05/#<br><br>Dec  I   increase   $0.05/#<br><br>Jan 1, 2015 increase $0.04/#<br><br>Joe please look this over and let us know if there are any questions. I regret that our schedules would not allow us to meet face to face later this week. Take care and I will follow up in a few days.<br><br>JB: This is a larger increase than Pilgrims. I thought Claxton was going to work with us?  If we are paying these higher prices, we will not pay for more than our spec allows.<br><br>WC: Joe we will not be able to invoice Kelly for anything over the spec range but the weight will run to the high side of the   spec. We do not want to give anyone the impression we will not work with them but the considerations we sent you earlier  were in line with other Brands. Pilgrim should be your lowest cost supplier as they have more pounds to spread their cost  over and more pounds to sale than we do. We have to be very careful, especially in a fixed agreement, who we partner with. We only have so | A, B, E | Norman Fries Company d/b/a Claxton Poultry did not produce this document until mid trial.<br><br>Received into evidence.<br><br>No previous opportunity to present on James Log. |
| 9-S | 1968 | Handwritten notes of Jayson Penn (PILGRIMS-0009771147). | Notes | In or about Feb 2017 | Jayson Penn | "Key Customer Margin" 2.18 → 61<br>Industry Coming off on Price<br>PPC → holding | A, B | Not offered.<br><br>Not on James Log. |
| 10-S | 1966 | Handwritten notes of Jayson Penn (PILGRIMS-0009771048). | Notes | In or about Feb 2017 | Jayson Penn | [Chart of volumes at QSR customer, likely KFC, for Pilgrim's, Koch, George's, Tyson, Mar-Jac, Claxton, and Case for 8 piece COB and dark meat along with market shares.] | A, B | Not offered.<br><br>Not on James Log. |

| Log # | GX | Description | Type of document | Date | Declarant(s) | Statement(s) | Bases of 801(d)(2)(E) admissibility | History |
|---|---|---|---|---|---|---|---|---|
| 11-S | 1967 | Handwritten notes of Jayson Penn (PILGRIMS-0009771049). | Notes | In or about Feb 2017 | Jayson Penn | [Chart of volumes for a QSR customer, for Pilgrim's, Koch, George's, Tyson, Mar-Jac, Claxton, and Case.] | A, B | Not offered. Not on James Log. |
| 12-S | 1969 | Handwritten notes by Bill Lovette dated 2/20/2017 (PILGRIMS-DOJ-0000509907). | Notes | 2/20/2017 | Bill Lovette | KFC 7mm Nat<br>80 loads additional<br>PPC 50<br>TSN 15-20<br>Geo 15-20<br>Koch 15-20<br>Mar-Jac 15-20<br>Case<br>Claxton<br>OKF<br>TOT 185 | A, B | Not offered. Not on James Log. |
| 13-S | 6345 | Handwritten notes by Bill Lovette (PILGRIMS-0009770286). | Notes | 8/4/2014 | Bill Lovette | Costco<br>Perdue<br>  3.8-4.0 Bil Sales<br>Branded CR Lower Margin<br><br>[Chart of volumes at Chick-Fil-A for Pilgrim's, Tyson, Perdue, Wayne Farms, and Claxton, along with market shares.] | A, B | Not offered. Not on James Log. |
| 14-S | 1446 | Email chain between Roger Austin, Jayson Penn, Scott Tucker, and Jason McGuire on or about 11/30/2012 (PILGRIMS-DOJ-0000513769). | E-mail | 11/30/2012 | Scott Tucker Jayson Penn Roger Austin | ST: Jayson,<br>Please see the attached spreadsheet showing the impact of reducing eight piece price and also proposed numbers on the FP wings.<br><br>JP: Do we have TSN price idea?<br><br>RA: I can give you an educated guess. They are currently .0025 below George's. so I would guess they are around .96 flat.  If they came in more aggressively like they did at Church's they could be lower but I don't think they would do that because they have all the direct delivery KFC they want and they were trying to buy into direct delivery to Church's in those same areas. So I don't think they got overly aggressive. | A, B, E, F, G, H, K, P | Not previously a GX. Government offered this exhibit, marked as E-570 as part of Rule 106 ruling. Austin e-mail received with limiting instruction for a party admission.<br><br>Initial e-mail (from Mr. Tucker) was James Log entry 35 (Court ruled the statement was 801(d)(2)(E)). |
| 15-S | 1252 | E-mails between Timothy Mulrenin, Timothy Scheiderer, and Brian Roberts dated 8/19/2014 (TY-001035733). | E-mail | 8/11/2014 | Timothy Mulrenin | TM: Tim, This is really a follow up to my RSCS recap. Can we get together to discuss responses? | A, G, P | Not previously a GX. |
| 16-S | 1253 | Email chain between Greg Tench and Robert Lewis on or about 8/14/2014 (MJPoultry-0000077703). | E-mail | 8/14/2014 | Greg Tench | RL: Pete/Greg:<br><br>Thanks for a very productive meeting on August 6. You can see that RSCS has a very different mindset concerning supplier relationships, and is taking a totally different approach to negotiations versus prior years. Going forward, we know that transparency and a sincere willingness to "give and take" will help us form true partnerships. Hopefully, you saw this in action in this preliminary meeting.<br><br>During our discussions, we requested that you provide the following:<br>· Recommended specification to maximize the production and supply of 8-piece COB for KFC<br>· Summary of Mar-Jac's experience with KFC QA to include the impact on cost and supply versus our competitors<br>· Realistic cost model in an abbreviated form to include line items for those components most susceptible to change<br>· Plan for dealing with case billing weights<br>· Information as to how a 12 day shelf life could improve efficiency, supply, etc.<br>· Key points that Mar-Jac would include in a three-year agreement<br>· Number of pounds, or truckloads, of purple and red label product you can supply beginning in 2015, assuming we have agreement on price<br><br>Please provide the information by Tuesday, August 19.<br><br>RL: Greg – After you provide the information requested below, we will be in a position to negotiate our final agreement. As discussed this morning, we would like to do that with you guys in the same room with us. We have slots open the week of August 25 as follows: 25th, 27th and 28th. Please select a date and time and let me know. Thanks, Bob<br><br>GT: Will do<br><br>RL: The 25th is booked, the 26th is open only in the afternoon, the 27th is open all day, and only the afternoon of the 28th is still open. Let me know as soon as you can. Thanks<br><br>GT: Put us down for the 27 th. 11 am | A, F | Not previously a GX. |

| Log # | GX | Description | Type of document | Date | Declarant(s) | Statement(s) | Bases of 801(d)(2)(E) admissibility | History |
|---|---|---|---|---|---|---|---|---|
| 17-S | 1258 | Email chain between Bill Lovette, Jayson Penn, and Chad Baker on or about 8/26/2014 (PENN-0000000212). | E-mail | 8/26/2014 | William Lovette | DB: David,<br><br>On Friday Mike asked that I reach out to you to give you explanation around our cost changes for the back half of the year. Since then we have scheduled a call for Tuesday morning, but wanted to go ahead and forward you some information, and we can discuss any additional questions you may have at that time.<br><br>As you know, we are currently supplying under a 6 month pricing agreement; that provides for the revision of costing for the back half of the year. We provided pricing for the back half of the year to Mike on 8/8, with a requested effective date of 8/22. This pricing reflects increases driven by market cost increases on raw material inputs as well as supply and demand impacts on small bird availability. Some of these influences and cost impacts on the prepared business were discussed during the meeting with Chad Baker on 8/4.<br><br>Since the business was priced last Fall, the whole bird composite cutout has increased by 25c per pound (35%), the wing market has increased 26c (24%), the boneless breast market has increased 54c (40%) and the tender market has increased by 98c (71%). Many of these increases experienced this year have exceeded last years highs and have resulted in higher input costs. The other market dynamic that we have discussed with your team is around the small bird segment of the market and the extremely tight and limited availability of product. Costs have increase 40% on the raw material for the 8pc MRB product; a cost that is reflected in our finished goods. The tight supply and limited availability has driven cost up on the small WOGs and MRB far in excess of anything we expected when the product was priced for the first 6 months.<br><br>The pricing that has been submitted reflects these influences. We understand the impact that this has on the business, and as a long term supplier, we will make adjustments if market dynamics and inputs change. We appreciate the business and the relationship that we have with your team. We are committed to supporting your business in anyway that we can. Please let me know if you have any questions or need additional information.<br><br>CB: I just hung up with David B. As you are aware he has David Hall at 11:30 CST tomorrow. He also said the buyer called and he is not happy. Doesn't matter. We are holding our position and I told David B that I would call David H tomorrow if their call does not go well. I still expect the price increase to be accepted and shipping at the new price with the next set of orders placed.<br><br>WL: We have delivered similar increases now to KFC, Church's, Walmart (93), Sam's Club, etal... There's no backing up here and is not negotiable. The raw price is in place ($1.20) and in order to continue to ship finished product, this increase must be executed. Based on needs in the market, we are analyzing converting a small bird op (most likely Natchitoches) to either Case Ready or large bird debone. In the past 10 years, only one (2011) has occurred where small birds have been competitive. We can no longer serve | A, B, F, G, H, I | Not a GX. |
| 18-S | 1256 | Email chain between Jayson Penn, Roger Austin, and Bill Lovette on or about 9/3/2014 (PILGRIMS-DOJ-0002731134). | E-mail | 9/3/2014 | William Lovette Jayson Penn Roger Austin | JP: I am on the plane too...Roger you can join us.<br><br>RA: I think we will know this week at the latest early next week. I have a call in to Pete to confirm no change and that we need to know how many loads they intend to purchase.<br><br>WL: When will we know our volume for next year? I just booked the plane to go to Natchitoches Sept 29 and we will evaluate converting it to case ready.<br><br>RA: I already made that comment at lunch to them and will make sure they understand it.<br><br>WL: I suggest we do a couple things. One, begin to move some of the product in a different direction whether Popeyes or others and two, let them know that the chickens are moving away and will not be coming back.<br><br>RA: The message I got was that they had booked 60 loads today at a nickel under our offer. I don't believe that. They understand and have no issue with us being the highest price. just not a nickel high. They were calling Tyson this afternoon. I think there are some priced where we are and some in at about 2 1/2 cents less than we are.<br><br>I told them you would be calling Steve and that I would also let you know what was said and would get back with them.<br><br>I am also under the impression they would give us a penny for the rest of the year to offset some of next year but that really does not do much.<br><br>WL: Steve called me back and I delivered the message. He was not happy about it and said we are an "outlier" on the high end and they will have to evaluate implications of our decision. Told him we understand and recognized this in making the decision.<br><br>RA: The message I got was that they had booked 60 loads today at a nickel under our offer. I don't believe that. They understand and have no issue with us being the highest price. just not a nickel high. They were calling Tyson this afternoon. I think there are some priced where we are and some in at about 2 1/2 cents less than we are.<br><br>I told them you would be calling Steve and that I would also let you know what was said and would get back with them. | A, H | Not a GX. |
| 19-S | 6337-6338 | Text message from Jimmie Little to Eric Oare on or about 11/11/2015 (PILGRIMS-DOJ-0000001441). | Texts | 11/11/2015 | Jimmie Little | EO: You wrap up with church's?<br><br>JL: Neither Koch nor us have heard anything today. We are both expecting tomorrow. | A, B, H | Not previously a GX. |
| 20-S | 8098 | William Lovette text message | Texts | 5/14/2014 | William Lovette | Just finished a phone call for the ages... Steve McCormick UFPC... Their ask is 30-40 loads per week above base from now through August. Willing to "invest" whatever necessary to secure supply. Will take frozen & fresh & a diff size in order to have product. Then I had call w Jason, Roger, Matthew etal with follow up tonight. Scheduled for response to Steve tomorrow morning. 2014 Summer Chicken Wars have officially begun. | A, B, F, H | Not previously a GX. |
| 21-S | 9089 | Email chain between Jimmie Little, Jayson Penn, Thomas Lane, Jason McGuire and Dean Bradley on or about 10/31/2013 (PILGRIMS-DOJ-0002730925). | E-mail | 10/31/2013 | Jimmie Little Jayson Penn | JL: Dean attached is our proposed costing for 2014. As previously discussed we would like to keep our current DC's as well as pick up the Caro business. We also have more availability out of Chattanooga with some capital improvements.<br>Tommy and I are available whenever you would like to have a call or I can come to Atlanta and we can get Tommy on a call as he cannot travel due to his recent surgery.<br><br>DB: Jimmie,<br><br>In looking at your cost plus, you have a $0.0205/lb increase in your cost model for 2014. I can tell you that I have suppliers already in with decreases in cost for next year. You have been telling me that you want more business for next year so I'm a little shocked to see this huge increase. I would politely suggest that you go back and take a long hard look at this.<br><br>DB: Do you have any news on this?<br><br>JL: Do you have anytime to discuss this AM?<br><br>JP: Tied up in earnings follow-up calls this am. Can do this afternoon. Suggest asking for details of which line items / details cost differences are taking place with our competitors and then get with McGuire for his input.<br><br>JL: Already reaching out to McGuire. Just wanted you in the loop. Not sure we want to blink just yet! | A, B, | Witness was not called. |

| Log # | GX | Description | Type of document | Date | Declarant(s) | Statement(s) | Bases of 801(d)(2)(E) admissibility | History |
|---|---|---|---|---|---|---|---|---|
| 22-S | 9743 | Email chain between Carl Pepper and Neal Simco dated on or about 9/7/2011 (TY-000000100). | E-mail | 9/7/2011 | Carl Pepper | [[Mr. Simco's statements are not intended assertions and are offered for the purpose of their effect on the recipient]]<br><br>CP: George's is calling Church's today and telling them they are getting out the end of the year. Rick told me he would call me this afternoon and let me know how it went.<br><br>NS: Should we take our price up?   Why are they leaving?<br><br>CP: Rick said everyone saying they are going to go to .28 back. I think George's is getting out because they lost some of the dark meat they were getting from other suppliers. | A, B, H | Not previously a GX. |
| 23-S | N/A | Carl Pepper Interview Report 6/14/2021 | Interview Report | 6/14/2021 (date of interview) | Tim Mulrenin Brian Roberts | Mr. Pepper was asked to obtain competitive information from competitors. | A, B, G | N/A |
| 24-S | N/A | Carl Pepper Interview Report 2/12/2021, at 1, 2. | Interview Report | 2/12/2021 (date of interview) | Carl Pepper | Mr. Pepper told Messers Mulrenin and Roberts about his conversations with competitors regarding the common understanding among those competitors of a substantial price increase to be greater than 10 cents. | A, B, H | N/A |
| 25-S | N/A | Carl Pepper Interview Report 2/12/2021, at 2. | Interview Report | 2/12/2021 (date of interview) | Ric Blake | Ric Blake told Mr. Pepper that he kept a list of prices in a notebook. Mr. Blake often asked Mr. Pepper what Tyson's prices were. Mr. Blake also shared other suppliers prices with Mr. Pepper. Mr. Blake told Mr. Pepper the competitor prices came from Kelly Foods. | A, B, E, F | N/A |
| 26-S | N/A | Carl Pepper Interview Report 2/12/2021, at 2, 3. | Interview Report | 2/12/2021 (date of interview) | Carl Pepper | Mr. Pepper asked Mr. Blake if George's was comfortable with a two-cent promotional discount. | A, B, E, G | N/A |
| 27-S | N/A | Carl Pepper Interview Report 2/12/2021, at 3. | Interview Report | 2/12/2021 (date of interview) | Ric Blake | Mr. Blake would call Mr. Pepper to ask about customer contract pricing, mostly for Popeye's. | A, B, E, F | N/A |
| 28-S | N/A | Carl Pepper Interview Report 2/12/2021, at 3. | Interview Report | 2/12/2021 (date of interview) | Ric Blake | Mr. Blake sought to determine if everyone would increase their prices more than 10 cents for 2015 contracts. | A, B, F | N/A |
| 29-S | N/A | Carl Pepper Interview Report 8/26/2020, at 4. | Interview Report | 8/26/2020 (date of interview) | Ric Blake | During a phone call on or about September 6, 2017 Mr. Blake stated to Mr. Pepper that George's was agreeing to a two-year contract with Popeye's. | A, B, E, F | N/A |
| 30-S | N/A | Carl Pepper Interview Report 8/12/2020 at 2. | Interview Report | 8/12/2020 (date of interview) | Carl Pepper Jimmie Little | During 2014 Messers Pepper and Little spoke on the telephone. They mostly spoke about customers such as KFC, Popeye's, and Chcurch's. Their conversations invcluded discussions about upcoming contracts. | A, B, E, I | N/A |
| 31-S | N/A | Carl Pepper Interview Report 8/12/2020 at 2. | Interview Report | 8/12/2020 (date of interview) | Carl Pepper Timothy Mulrenin | In 2014, Mr. Pepper was asked to find out about price increases. He would report his findings to Mr. Mulrenin who would then tell Mr. Brian Roberts. | A, B, D, G, H | N/A |
| 32-S | N/A | Carl Pepper Interview Report 7/23/2020, at 2. | Interview Report | 7/23/2020 (date of interview) | Brian Roberts and/or Timothy Mulrenin | In the summer of 2014, Mr. Pepper's superiors, Messers Roberts and/or Mulrenin, asked him to obtainted competitive information from Tyson's competitors. | A, B, D, G | N/A |
| 33-S | N/A | Carl Pepper Interview Report 7/21/2020, at 2. | Interview Report | 7/21/2020 (date of interview) | Brian Roberts Carl Pepper | Mr. Roberts instructed Mr. Pepper in 2014 to determine if Tyson's competitors were considering substantial price increases for 2015 contracts. Mr. Pepper contacted Defendants Blake and Little, then reported his findings to Defendant Mulrenin. | A, B, D, E, G, H | N/A |
| 34-S | N/A | Carl Pepper Interview Report 7/17/2020, at 2. | Interview Report | 7/17/2020 (date of interview) | Carl Pepper Ric Blake Jimmie Little | In 2014, Mr. Pepper would call Defendants Little or Blake because Pilgrim's and George's were the largest suppliers to KFC. Defendants Little and Blake would also call Mr. Pepper for competitively sensitive information. Mr. Pepper gave information to them and asked in return to share their respective company's information with him. Mr. Pepper related a conversation with Defendants Little and Blake in which he was asked: Are you doing a substantial increase? and Mr. Pepper replied, Yes. One of them asked if it was more than 10 cents and he said Yes.<br><br>Mr. Pepper reported to Defendant Mulrenin any time he learned competitively sensitive information. | A, B, E, H | N/A |
| 35-S | N/A | Carl Pepper Interview Report 7/17/2020, at 3. | Interview Report | 7/17/2020 (date of interview) | Timothy Mulrenin | Defendant Mulrenin would say to Mr. Pepper, Why don't you call Jimmie Little or Why don't you call Ric Blake, to find information. | A, B, D, E, G | N/A |
| 36-S | N/A | Carl Pepper Interview Report 7/17/2020, at 3, 4. | Interview Report | 7/17/2020 (date of interview) | Carl Pepper Ric Blake | During phone calls on or about August 25 and/or 28, 2014, Mr. Pepper learned competitor information from Defendant Blake regarding KFC, Popeye's and Church's contracts, and reported it to Defendant Mulrenin. | A, B, E | N/A |
| 37-S | N/A | Carl Pepper Interview Report 7/9/2020, at 4. | Interview Report | 7/9/2020 (date of interview) | Carl Pepper Jimmie Little | Mr. Pepper had a conversation in July 2014 with Defendant Little about substantial price increases. Mr. Pepper learned about Tyson's increase from Defendant Roberts. Mr. Pepper believed he asked Pilgrim's if they also were having a price increase. | A, B, E | N/A |
| 38-S | N/A | Carl Pepper Interview Report 7/9/2020, at 4. | Interview Report | 7/9/2020 (date of interview) | Carl Pepper Jimmie Little | On or about August 8, 2014, Mr. Pepper and Defendant Little had one or more phone calls in which they discussed 2015 contracts. | A, B, E | N/A |
| 39-S | N/A | Carl Pepper Interview Report 7/9/2020, at 5. | Interview Report | 7/9/2020 (date of interview) | Timothy Mulrenin | Though he did not recall the time and place, Mr. Pepper recalled Defendant Mulrenin asked him to reach out to competitors and report back about pricing. | A, B, D, E, G | N/A |
| 40-S | N/A | Carl Pepper Interview Report 7/9/2020, at 5. | Interview Report | 7/9/2020 (date of interview) | Carl Pepper Ric Blake Jimmie Little | Mr. Pepper remembered having conversations about price increases with Defendants Blake and Little. The information gleaned from both conversations was reported back to Mr. Pepper's superiors. The conversations occurred before customer, specifically KFC, contracts were final. | A, B, E, H | N/A |
| 41-S | N/A | Carl Pepper Interview Report 11/25/2019, at 5. | Interview Report | 11/25/2019 (date of interview) | Carl Pepper Ric Blake | In approximately September 2017 Mr. Pepper contacted Defendant Blake about the length of the contract. KFC was negotiating a multi-year contract and he wanted a similar plan for Popeye's. Mr. Pepper wanted to get on the same page as Blake. | A, B, E | N/A |
| 42-S | N/A | Carl Pepper Interview Report 11/25/2019, at 6. | Interview Report | 11/25/2019 (date of interview) | Timothy Mulrenin Brian Roberts Carl Pepper Ric Blake Roger Austin Scott Brady | Mr. Pepper was asked by Defendant Mulrenin or Roberts at the conclusion of the meeting to find out competitor numbers. Mr. Pepper stated he called competitors, most likely Defendants Blake, Austin, and Brady and each of their respective companies had a 14-16 cent increase. | A, B, D, E, G, H | N/A |
| 43-S | N/A | Carl Pepper Interview Report 10/4/2019, at 6, 7. | Interview Report | 10/4/2019 (date of interview) | Carl Pepper Ric Blake | Starting in or around 2011, Mr. Pepper began sharing competitive pricing information with Defendant Blake, who contacted Mr. Pepper saying he had other suppliers' prices for KFC and Popeye's. Kelly Foods gave Defendant Blake the prices, but did not have Tyson's prices because the two companies did not do business together. Defendant Blake went on to ask for Tyson's prices; Mr. Pepper supplied them.<br><br>At the onset of the price sharing relationship, Mr. Pepper provided Defendant Blake the true and current prices for Tyson. Over time, Mr. Pepper began giving fake prices. There were times Mr. Pepper would provide prices that were slightly higher or lower than Tyson's actual price. The phone calls were monthly and consisted of sharing prices after they had been submitted to the customer. The phone calls continued during contract negotiation periods. | A, B, C, E | N/A |

| Log # | GX | Description | Type of document | Date | Declarant(s) | Statement(s) | Bases of 801(d)(2)(E) admissibility | History |
|---|---|---|---|---|---|---|---|---|
| 44-S | N/A | Carl Pepper Interview Report 10/4/2019, at 7-8. | Interview Report | 10/4/2019 (date of interview) | Carl Pepper Jimmie Little | Mr. Pepper called Defendant Little to see how much of the savings would be passed on to Boston Market. Mr. Pepper assumed Pilgrim's would pass along $0.0023 in savings to Boston Market. The phone call was helpful because it allowed Tyson to know what Pilgrim's would do. It helped Tyson determine what savings Pilgrim's calculated and planned to pass along to Boston Market. | A, B, D, E | N/A |
| 45-S | N/A | Trial testimony of Mr. Joseph Brink . Brink Tr. T. at 70: 13-24. | Trial testimony | 11/16/2021 (date of testimony) | Jimmie Little | Towards the end of our lunch, the topic of chicken came up for pricing for next year. And Jimmie said: It's going to be 2. I said, 2 cents? He said, No. It will start with a 2. | A, P | Limiting instruction: party admission against Defendant Little. |
| 46-S | N/A | Trial testimony of Mr. Joseph Brink. Brink Tr. T. at 60:25-61:14. | Trial testimony | 11/16/2021 (date of testimony) | Jimmie Little | On September 22, 2014, during a telephone call with Defendant Little: A. We discussed 2015 pricing, that Jimmie presented a 19 cents a pound. And I asked why was this high. I wanted to talk about why so high when the cost of grain was going down. And I was -- I was told we're not doing that this year. That was in the past. Going forward we want the same margins as the large bird plants. There is no discussion and this is the price. | A | Limiting instruction: party admission against Defendant Little. |
| 47-S | N/A | Trial testimony of Mr. Joseph Brink. Brink Tr. T. at 84:22-86:23. | Trial testimony | 11/16/2021 (date of testimony) | Jimmie Little | On or about October 3, 2014, during a telephone call Defendant Little stated to the effect: That the pricing that we have submitted, meaning Pilgrim's, was the final pricing, and we have to secure chicken for both companies. And he gave me our volumes, and the volumes he gave to us that he was going to let me have for the company was less than we had before. | A | Limiting instruction: party admission against Defendant Little. |
| 48-S | N/A | Robert Lewis Interview Report 10/22/2021, at 4. | Interview Report | 10/22/2021 (date of interview) | Roger Austin Bill Kantola Scott Brady | After receiving the 2014 bids for calendar year 2015's supply, Mr. Lewis called each supplier individually and challenged suppliers on their proposals. The general atmosphere as it related to the price increases was take it or leave it. Mr. Lewis remembers Defendants Austin, Kantola, and Roberts each generally having this attitude, while the other suppliers were more congenial, though largely held to their increases. Based on Mr. Lewis' experience, the take it or leave it sentiment was out of character. His previous relationship had been excellent with suppliers, and they were always willing to negotiate. | A | Not elicited. |
| 49-S | N/A | James Olson Interview Report 10/22/2021, at 2 | Interview Report | 10/22/2021 (date of interview) | Brian Roberts | During a meeting with Defendant Roberts in 2014 Mr. Olson told Defendant Roberts that a penny a pound increase would equal a $500,000 increase to HMC. This statement was made because Defendant Roberts was increasing the prices of chicken by 10 cents per pound. The quality distributor for HMC was also in attendance at the meeting and Defendant replied that he could not do anything to lower the price. | A | Testimony elicited |
| 50-S | N/A | Eric Oare Interview Report 1/10/2022, at 2. | Interview Report | 1/10/2022 (date of interview) | William Kantola | When Mr. Oare was working at Marshall Durbin he received a call from Defendant Kantola asking for pricing on splits for El Pollo Loco to compare notes. | A, B | Witness not called. |
| 51-S | N/A | Telly Smith Interview Report 10/20/2021, at 3. | Interview Report | 10/20/2021 (date of interview) | Scott Tucker | Mr. Tucker called Mr. Smith while Smith was in his driveway and told him that he had an hour to accept the price proposed by Pilgrim's Pride. The situation felt like a reversal of the bid process, as if he was competing for the supply rather than Pilgrim's Pride was competing to supply him. This market environment was unusual for the chicken industry. SMITH described TUCKER as being cordial, but having a take-it-or-leave-it attitude. | A | Testimony elicited. |
| 52-S | N/A | Telly Smith Interview 11/7/2021, at 15. | Interview Report | 11/7/2021 (date of interview) | Scott Tucker | Accept our price in one hour. Mr. Tucker said this to Mr. Smith in a phone conversation. In 2014, likely October. Mr. Smith was in his driveway. | A | Testimony elicited. |
| 53-S | N/A | Trial testimony of Mr. James Olson. Olson Tr. T. 84:11-20, 85:1-18. | Trial testimony | 10/27/2021 (date of testimony) | Brian Roberts Ric Blake | Defendants Roberts and Blake each stated that they were unable to help by providing a lower price. | A | Testimony elicited. |
| 54-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 16-18 | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin Scott Tucker | Defendant Austin and Mr. Tucker provided Mr. Bryant with competitor price information to increase prices or limit price decreases to be accomplished together as competitors. | A, B, C, E, F | Testimony elicited. |
| 55-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 18-19, 33-34. | Trial testimony | 11/1/2021 (date of testimony) | Jason McGuire | Jason McGuire instructed Defendant Austin to provide price negotiation and price increase information to Pilgrim's competitors | A, B, E, F, G | Testimony elicited. |
| 56-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021  at 24-26. | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin | In 2017 Mr. Bryant  received a phone call from Roger Austin where he provided competitor pricing to formulate bids in 2017. | A, B, E, F, H | Testimony elicited. |
| 57-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021  at 24-26. | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin | Over the course of the years there were many, many times that Roger Austin called Mr. Bryant and relayed information from various competitors and their position on a whole host of subjects, so it was common place for him to talk to people outside or with competitors and then relay that information back. This included current and future pricing. | A, B, E, F, G, H | Testimony elicited. |
| 58-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021  at 26. | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin | Defendant Austin told Mr. Bryant that he had everyone's pricing dating back to the nineties. | A, B | Testimony elicited. |
| 59-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 30-31. | Trial testimony | 11/1/2021 (date of testimony) | Jimmie Little | In Phone conversations in the 2014-15 timeframe, Defendant Little had conversations with Mr. Bryant in he relayed information from conversations he had with a person at Holmes and a person at Tyson Foods regarding price submissions. | A, B, E | Testimony elicited. |
| 60-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 36-37 | Trial testimony | 11/1/2021 (date of testimony) | Robert Bryant | Robert Bryant instructed Scott Tucker to enter into an agreement with Mar-Jac to raise prices to US Foods. | A, B, E, F, G | Testimony elicited. |
| 61-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 39. | Trial testimony | 11/1/2021 (date of testimony) | Robert Bryant Justin Gay | In telephone conversations, Mr. Bryant permitted Mr. Gay to agree to a discount with Popeye's because the competitors were already aligned that discount. This occurred approximately in 2017. | A, B, G, H | Testimony elicited. |
| 62-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 40:17-25, 41:1-6. | Trial testimony | 11/1/2021 (date of testimony) | Justin Gay | Mr. Gay stated that Pilgrim's competitors had already agreed to a discount for the promotion and we needed to do the same or -- we needed to do the same discount or else it would look bad on us from our customer that we didn't concede a discount for the promotion. | A, B | Testimony elicited. |
| 63-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 41-42. | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin and unnamed coconspirators | The three names of person outside Pilgrim's that Mr. Bryant heard most-often as engaged in price fixing were Defendants Brady and Kantola, and Carl Pepper. | A, C, E | Testimony elicited. |

| Log # | GX | Description | Type of document | Date | Declarant(s) | Statement(s) | Bases of 801(d)(2)(E) admissibility | History |
|---|---|---|---|---|---|---|---|---|
| 64-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021, at 45-47. | Trial testimony | 11/1/2021 (date of testimony) | William Kantola Roger Austin | Defendants Kantola and Austin shared price information to raise prices together and prevent decreases together. | A, B, E | Testimony elicited. |
| 65-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021, at 47-49, 69-70 | Trial testimony | 11/1/2021 (date of testimony) | Scott Brady Roger Austin | Mr. Bryant overheard a conversation between Defendants Austin and Brady, and Defendant Austin relayed inforamtion to Mr. Bryant over the 2014-2017 time period about conversations between those two defendants. The purpose of the conversations was to provide competitive information to raise prices together. | A, B, E, | Testimony elicited. |
| 66-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021, at 73-74. | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin | Defendant Austin told Mr. Bryant about his tracking of current prices. Defendant Austin kept that information to be used when needed, including for contract negotiations. | A, B, E, F | Testimony elicited. |
| 67-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021, at 74-77. | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin Scott Brady unnamed coconspirators | Defendant Austin exchanged future pricing with competitors. Austin also relayed inforamtion to Mr. Bryant. Mr. Bryant overheard a conversation between Defendants Austin and Brady during the KFC bid 2014. Among other things, these defendants discussed Pilgrim's position after submitting the first round bid of a multi-round bid process. | A, B, E, F | Testimony elicited. |
| 68-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021, at 76-79. | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin | Defendant Austin told Mr. Bryant about conversations he had with Carl Pepper. These conversations included sharing price inforamtion for the purpose of raising prices together and/or resisting price decreases together. | A, B, E, F, H | Testimony elicited. |
| 69-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021, at 87-89. | Trial testimony | 11/1/2021 (date of testimony) | Jason McGuire | Mr. McGuire through communications with Mr. Bryant including phone conversations informed Mr. Bryant that during 2014 Pilgrim's competitors were negotiating similarly high prices increases in the 15-to-20 cent range as Pilgrim's. | A, B, H | Testimony elicited. |
| 70-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021, at 95-97. | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin Scott Brady Bill Kantola | Defendant Austin provided on numerous occasions information to Mr. Bryant about his conversations with Defendant Brady of Claxton and Defendant Kantola of Koch.. | A, B, E, H | Testimony elicited. |
| 71-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021, at 101-103. | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin | During a phone call Defendant Austin provided Mr. Bryant with competitor pricing information for Pilgrim's bid to KFC in 2017. | A, B, E, H | Testimony elicited. |
| 72-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 119-121. | Trial testimony | 11/1/2021 (date of testimony) | Timothy Stiller Robert Bryant | In January 2017, Mr. Stiller asked Mr. Bryant if he had pricing information from Defendant Austin. Mr. Bryant had not received anything from Defendant Austin at that point. Mr. Stiller got upset and his words were, You don't know shit. I'll call and get it myself or I'll find out for myself. And then he hung up the phone. Mr. Bryant relayed to Defendant Austin that Mr. Stiller was upset that Mr. Bryant didn't have the pricing information he wanted. And Defendant Austin said that he had a similar call and that he would make some calls and get back to Mr. Bryant. When Defendant Austin called he said, Are you ready? I got it. And then he relayed to pricing and customer names. | A, B, G, H | Testimony elicited. |
| 73-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 122-33. | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin | Defendant Austin provided comeptitor pricing information that Mr. Bryant recorded in his notebook. | A, B, E, F, H | Testimony elicited. |
| 74-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 138. | Trial testimony | 11/1/2021 (date of testimony) | Roger Austin Tim Stiller Robert Bryant | Mr. Bryant called Tim Stiller and gave him the competitor price information so they could have a conversation about the upcoming bid. During a conversation Tim Stiller and Roger Austin (either at the same time or separately) they developed a model that put Pilgrim's second in price. However, before they submitted that bid, and either Tim Stiller or Roger Austin said that they didn't feel like Pilgrim's needed to be more middle of the pack, so they submitted their price third in line. | A, B, E, F, H | Testimony elicited. |
| 75-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 140-142, 144-152. | Trial testimony | 11/1/2021 (date of testimony) | Robert Bryant Timothy Stiller Scott Tucker | In 2017, when Pilgrim's was negotiating a price increase with US Foods. Scott Tucker was instructed to communicate with Mar-Jac, which was Pilgrim's competitor for the business. | A, B, E, G, H | Testimony elicited. |
| 76-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 142 | Trial testimony | 11/1/2021 (date of testimony) | Timothy Stiller Robert Bryant Roger Austin | Defendant Austin and Messers Stiller and Bryant had discussions after the first-round bid to KFC in 2017 to weigh their options. | A | Testimony elicited. |
| 77-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 142-143 | Trial testimony | 11/1/2021 (date of testimony) | Timothy Stiller | Mr. Stiller was upset when relaying a conversation he had with Defendant Austin. A short time ago Stiller instructed Defendant Austin to tell the industry that Pilgrim's was going to hold its price or find a new hunderd-million dollar customer. | A, B, E, F, G, H, J | Testimony elicited. |
| 78-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 at 155-160 | Trial testimony | 11/1/2021 (date of testimony) | Jason McGuire | Jason McGuire told Robert Bryant in 2014 about the plan for price increases to QSRs. Mr. McGuire said he they would blitz the customers. Mr. McGuire asked Mr. Bryant to prepare a slide presentation for the customer blitz. | A, E, F | Testimony elicited. |
| 79-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/1/2021 162-65, 470. | Trial testimony | 11/1/2021 (date of testimony) | Jason McGuire | In 2014, after a customer meeting, there was a conversation in which Defendant Austin and Messers Bryant, Gay, and McGuire were present. McGuire instructed Austin to put this out to the industry, referring to a price increase and Pilgrim's purported justification for the increase. | A, B, D, E, F, G, J, P | Testimony elicited. |
| 80-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/2/2021 197-199. | Trial testimony | 11/2/2021 (date of testimony) | Jason McGuire | Mr. McGuire told Mr. Bryant that a method other than blind bid would be used for KFC. | | Testimony elicited. |
| 81-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/2/2021 at 211-12. | Trial testimony | 11/2/2021 (date of testimony) | Roger Austin | In a meeting with RSCS regarding price negotiations, Defendant Austin said words to the effect that there was no negotiation on the price and he just needed to know how many loads RSCS wanted to buy. | A, F | Testimony elicited. |

| Log # | GX | Description | Type of document | Date | Declarant(s) | Statement(s) | Bases of 801(d)(2)(E) admissibility | History |
|---|---|---|---|---|---|---|---|---|
| 82-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/2/2021 213-215, 399-400:1. | Trial testimony | 11/2/2021 (date of testimony) | Roger Austin | Defendant Austin was on the phone saying something to the effect of: I told them the price is the price. I just need to know how many loads they want at that price. When he hung up the phone, Defendant Austin told Mr. Austin that it was either Defendant Kantola or Defendant Brady. And then it was a very short time later he was on the phone with someone else and basically repeated the same sentence: The price is the price. I just need to know -- I told him the price is the price. I just need to know how many loads they want at that price. Defendant Austin announced to Mr. Bryant who he was on the phone with at that time as well and same thing -- it was Defendant Brady or Kantola. At the conclusion of one of the calls Defendant Austin stated: That was Brady. | A, B, E, G, H | Testimony elicited. |
| 83-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant Tr. T. 11/2/2021 at 217-18. | Trial testimony | 11/2/2021 (date of testimony) | Jason McGuire | Mr. McGuire reassured Mr. Bryant in 2014 that Pilgrim's competitors were going along with the price increase. | A, B, E, F, H | Testimony elicited. |
| 84-S | N/A | Robert Bryant Interview Report 8/11/2021 | Interview Report | 8/11/2021 (date of interview) | Roger Austin | BRYANT heard AUSTIN say he would call KANTOLA and BRADY to see what their companies were doing numerous times. | A, B | Testimony elicited. |
| 85-S | N/A | Recording of interview with Peter Suerken (FBI-DOJ026-002-00000001, at 10:30-12:03, 37:20-38:15) | Interview Recording | 3/24/2021 (date of interview) | Roger Austin | In a meeting approximately in the fall of 2014 during contract negotiations, Pilgrim's Pride was blunt, saying they were to increase their price. It was going to be big. They told Mr. Suerken all the reasons why there's nothing Mr. Suerken could do about it.<br><br>Defendant Austin also told Mr. Suerken the identities of all the suppliers that were meeting with Mr. Suerken or his colleagues around the same time. Defendant Austin also hinted that the industry is small and [at this time or on another occasion] indicated that he knew which suppliers have available loads of chicken supply and which ones do not. | A, B, E | Witness was not called. |
| 86-S | N/A | Recording of interview with Peter Suerken (FBI-DOJ026-002-00000001, at 28:19-28:45). | Interview Recording | 3/24/2021 (date of interview) | Mikell Fries | During contract negotiations in 2014, Defendant Fries indicated to Mr. Suerken that he did not want Claxton to be highest priced and did not want to be lowest priced. | A | Witness was not called. |
| 87-S | N/A | Recording of interview with Peter Suerken (FBI-DOJ026-002-00000001, at 28:59-32:02). | Interview Recording | 3/24/2021 (date of interview) | Roger Austin | In a meeting in 2014 regarding contract negotiations that occurred at a barbeque restaurant, Defendant Austin stated that RSCS could not take chicken volume (i.e., loads) away from Pilgrim's Pride. | A, B | Witness was not called. |
| 88-S | N/A | Recording of interview with Peter Suerken (FBI-DOJ026-002-00000001, at 32:03-32:58). | Interview Recording | 3/24/2021 (date of interview) | William Lovette | In a phone call between Defendant Lovette, Mr. Steve McCormick, and Mr. Suerken, Lovete stated every reason in the world for the price increase which he was sticking with. Lovette also stated words to the effect of: you don't have the loads and you're buying my hundred trucks. | A | Witness was not called. |
| 89-S | N/A | Recording of interview with Peter Suerken (FBI-DOJ026-002-00000001, at 33:58-34:30). | Interview Recording | 3/24/2021 (date of interview) | William Lovette | At a meeting in Colorado, Defendant Lovette stated that he planned to take away the Moorefield, Kentucky plant from RSCS and service Chick-Fil-A instead because Chick-Fil-A would pay higher prices. Lovette added that his investors love to hear stories on public calls about how Chick-Fil-A is growing their business, paying large margins, and is a great partner. Lovette responded to Mr. Suerken by saying the 20 loads that Mr. Suerken stated he planned to switch to another supplier were immaterial to Lovette. | A | Witness was not called. |
| 90-S | 9870 | Emails between Roger Austin and Jayson Penn on or about 1/27/2012 (PILGRIMS-0005827827). | E-mail | 1/27/2012 | Roger Austin Jayson Penn | RA: Left you a voice mail. I have about 30 minutes to get the answer to them or it will be too late. Thanks!<br><br>JP: You own this business . What do you do?  I am on a conf call - on going.<br><br>RA: I do own it and I think we have to do this to protect our market share. I think going backwards in volume would be playing into our competitors hands. I will protect our margin going forward and will watch closely what is happening as the year progresses. If we can inch it back up in coming quarters I will. Maybe we can make this up with additional tender business and bites. I do not anticipate having to  address the dark meat weights but it is a possibility.<br><br>With your support that is what I am going to do.<br><br>JP: What weight are you thinking about?<br><br>RA: I spoke with the two distributors in Atlanta that are bidding this and it looks like we have no choice but to go to 45.5. That still puts us higher but only slightly. I was thinking 45.6 before I heard what they had to say but I think it puts us too far out.. I also think we need to throw in that we will look at 2 day per week delivery if that is what he wants and it would be cheaper. | A, H | New Exhibit |