IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **TIMOTHY R. MULRENIN,**
6. WILLIAM VINCENT KANTOLA,
7. **JIMMIE LEE LITTLE,**
8. WILLIAM WADE LOVETTE,
9. **GARY BRIAN ROBERTS,**
10. **RICKIE PATTERSON BLAKE,**

    Defendants.

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION
TO CONDUCT ANOTHER *JAMES* HEARING [ECF No. 999]**

The government respectfully opposes the defendants' motion for another *James* hearing for the purpose of eliciting testimony from Carl Pepper. A *James* proceeding is not a discovery tool, a practice-run at cross-examination, or an impeachment generation device. Rather, it is primarily a means to provide the Court with a factual basis to rule whether a predicate conspiracy existed. The Court has already made–and confirmed– that core ruling. The motion should be denied because the Court has everything at its

disposal to make rulings on the government's supplemental *James* log entries that relate to Mr. Pepper.

*Background*. The Court already convened a *James* hearing in this matter. It was extensive. After a hearing conducted over two days in which SA LaNard Taylor was subject to extensive cross examination, and lengthy pre- and post-hearing briefings, the Court issued a detailed opinion. ECF No. 559. The Court concluded that a price-fixing and bid-rigging conspiracy existed and that each of the ten defendants knowingly participated in that conspiracy. The Court stated that "the government has shown that a conspiracy to rig bids and fix prices for broiler chicken products in the United States did exist and that such conspiracy operated between at least August 2011 and early 2019." ECF 559 at 7.

At the *James* hearing, after defense counsel cross-examined SA Taylor regarding Carl Pepper's participation in the conspiracy,[1] the Court also found that Mr. Pepper was a co-conspirator. *Id.* at 8. The Court reasoned that Mr. Pepper had conducted phone calls with defendants Kantola and Little, two salespeople at chicken suppliers that Mr. Pepper and his company, Tyson Foods, were supposed to be competing with. *Id.* at 16. The Court also supported its finding regarding Mr. Pepper by drawing on reports memorializing interviews with Robert Bryant (who, like Mr. Pepper, did not testify at the *James* hearing). As reflected in the report that the Court cited, Mr. Bryant stated that defendant Austin generally obtained all of his competitive price

---

[1] *See James* Hr'g Tr. Sep. 2, 2021 at 110:4-111:12; *James* Hr'g Tr. Sep. 8, 2021 at 150:11-160:19.

2

information regarding Tyson Foods from Mr. Pepper. *Id.* Finally, the Court determined that Mr. Pepper knowingly joined the conspiracy by at least May 31, 2013.[2]

The *James* hearing, of course, is conducted for purpose of a pretrial ruling regarding the admissibility of statements offered under the exclusion to the rule against hearsay contained in Fed.R.Evid. 801(d)(2)(E). In conducting a *James* hearing, the Court makes its finding by a preponderance of the evidence standard, and the Court is not bound by any rules of evidence (other than privilege). Fed.R.Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175-179 (1987).

The Court has twice now confirmed the fundamental conclusions about the conspiracy's existence and Mr. Pepper participation. *See* ECF No. 559 (*James* ruling); ECF No. 932 (order denying Rule 29 motions). In the Court's Rule 29 opinion, where the Court is bound by the evidence presented at trial, the Court ruled there was sufficient evidence at trial to conclude that the conspiracy existed. *Id.* at 6. The Court explained that, based on the trial testimony of Mr. Bryant alone, the evidence "is sufficient to support a finding beyond a reasonable doubt that a conspiracy existed" and

---

[2] Mr. Pepper was acting in furtherance of the conspiracy as of May 31, 2013, and conspiring with defendants Little and Kantola for the purpose and with the objective of reducing price competition for the sale of chicken products to Church's Chicken. The particular component of price that was the focus of the conspiracy at the time was the price that the customer would be upcharged for frozen chicken. Because those three co-conspirators were actively conspiring, the statements that they made proximate to May 31, 2013, regarding sale of frozen chicken to Church's and the upcharge for that additional service were made during the course and in furtherance of the conspiracy. For that reason and the other reasons stated in the government's brief requesting reconsideration of its *James* rulings for Entries #50, 51, 52, 56, and 57, ECF 941 at 8-10, the Court should find those statements admissible under Fed. R. Evid. 801(d)(2)(E) at the upcoming trial.

that Mr. Pepper's employer, Tyson Foods, was a participant. *Id.* The Court also noted Mr. Bryant's testimony regarding Mr. Pepper's participation in the conspiracy. *Id.* at 13, 18.

*Discussion*. A *James* proceeding enables the Court to avoid the concern about whether the evidence at the conclusion of the government's case will in fact be sufficient for "showing the existence of a predicate conspiracy." *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994) ("The reason for this preference [for *James* proceedings] is that if the court provisionally admits a statement with the idea that the statement and other evidence will later 'connect up' showing the existence of a predicate conspiracy, there is the risk of undue prejudice if in the end the evidence does not in fact 'connect up.").[3] The "connecting up" concern that animates the Tenth Circuit's preference for a *James* proceeding no longer exists. For purposes of admitting evidence under Rule 801(d)(2)(E), the core conspiracy has been established (and confirmed) through not only the prior 2-day *James* hearing, but also the 25-day trial. The defendants cannot undo that core finding through another *James* hearing. The defendants' motion in effect asks for reconsideration of the core finding that the conspiracy exists. Because their motion provides no changed circumstances relevant to reconsidering whether the conspiracy exists, the Court should deny the motion on that basis alone.

---

[3] The *James* proceeding is not a discovery tool, but rather a way to resolve evidentiary issues ahead of trial to avoid a mistrial at the conclusion of the government's case-in-chief. The moving defendants appear to be seeking nothing more than an opportunity to conduct a pre-trial deposition of Mr. Pepper under the guise of an in-court evidentiary hearing with live testimony from Mr. Pepper.

4

The defendants' quarrel appears to focus on the government's supplemental *James* log, where the government has included several dozen entries of co-conspirator statements drawn from reports of interviews with Mr. Pepper. ECF 941-1. Those entries are similar to ones appearing on the government original *James* log for witnesses that the government intended to call in the initial trial.[4] In short, they are the government's best attempt to identify the potential co-conspirator statements of which the government is presently aware that Mr. Pepper may testify to when the government calls him at trial. The government has presented the Court with a supplemental *James* log to secure pre-trial rulings of admissibility with respect to this expected testimony, which is a submission to the Court's *James* process, rather than a circumvention of it as the moving defendants' brief falsely implies.

The defendants erroneously assert that the government desires to "admit statements to which Carl Pepper will supposedly testify based on nothing other than its written proffer." ECF 999 at 6. The defendants ignore the Court's prior *James* order finding that the conspiracy existed and Mr. Pepper knowingly participated, and the underlying evidence including the testimony of Robert Bryant regarding Mr. Pepper's involvement in the charged conspiracy and the many trial exhibits demonstrating Mr. Pepper's involvement, *see, e. g.*, GX-617.

The moving defendants also take the position that some *James* log entries are "not even close to accurate representations" of what Mr. Pepper stated in his interview

---

[4] The Court ruled in the government's favor on every *James* log entry that was drawn from interview reports. See ECF 559 at 47-48.

5

(even though counsel for the moving defendants were not present at these interviews) and continue to make assertive speculations about what they believe he did say that was not encapsulated in agent summary reports. But the practical effect of the moving defendants' position is to require an evidentiary *James* hearing for any witness that could testify to an oral statement that the government in any case would seek to admit under Rule 801(d)(2)(E). That would turn a *James* proceeding into a shadow trial, which is at odds with the purpose of these proceedings.

Each of Pepper's entries is an appraisal made by the government of expected testimony of Mr. Pepper drawn from the reports of his interviews. If Mr. Pepper does not testify to the statement appearing in a *James* log entry that these defendants claim is "not even close to accurate representations" to what Mr. Pepper said, the testimony simply will not be received into evidence. If Mr. Pepper does testify to the statements, they are in furtherance of the charged conspiracy and should be admitted.

As the defendants repeatedly stated, the *James* hearing needs to mean something. And it does. As relevant here, the Court found the conspiracy's existence and Mr. Pepper's knowing participation. The government supplemented its previous *James* log in part, to account for additional witness testimony it anticipates eliciting in the upcoming trial. The Court can rule on the government's supplemental *James* log by referencing information in the record of the trial and the pre-trial *James* hearing. The moving defendants' request for an evidentiary *James* hearing with testimony from Mr. Pepper should be denied.

Dated: February 7, 2022

Respectfully submitted,

/s/ Michael T. Koenig
MICHAEL KOENIG
HEATHER CALL
PAUL TORZILLI
CAROLYN SWEENEY
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 616-2165
Email: michael.koenig@usdoj.gov
*Attorneys for the United States*