IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

    Defendants.

## ORDER

This matter comes before the Court on Defendant Roberts' Motion in Limine to Exclude Evidence Relating to Tyson Foods' 2015 Pricing for Popeyes Louisiana Kitchen [Docket No. 954], Defendants' Joint Motion *in Limine* to Prohibit Witnesses From Describing Information Sharing as "Wrong," "Immoral" or Otherwise Inappropriate [Docket No. 989], and Defendant William Lovette's Motion *in Limine* to Exclude All Evidence Regarding Sysco Payment Terms [Docket No. 990]. The government filed an omnibus response. Docket No. 1018. The Court additionally heard oral argument on each motion at the February 10, 2022 hearing. *See* Docket No. 1040.

**I. Docket No. 954**

Mr. Roberts asks the Court to exclude evidence relating to Tyson Foods' 2015 pricing for Popeyes Louisiana Kitchen, arguing that evidence related to Tyson's 2015 pricing for Popeye's is extrinsic, unnoticed Rule 404(b) evidence because this episode is not mentioned in the superseding indictment. Docket No. 954 at 1, 4. Specifically, Mr. Roberts argues that the indictment only includes a reference to a "big box" promotion that Popeye's sought in 2015, months after the pricing for the 2015 contract was set. *See id.* at 5. Mr. Roberts additionally claims that the probative value of any evidence related to Tyson's 2015 Popeyes pricing is substantially outweighed by the risk of unfair prejudice. *Id.* at 9-11. The government responds that the evidence is relevant and intrinsic. Docket No. 1018 at 4-6.

The Court has already considered and rejected a similar argument made by Mr. Roberts that evidence presented against him regarding the 2015 Golden Corral negotiations was a constructive amendment because it was not "charged" against him in the indictment. *See* Docket No. 889 at 1-2; Docket No. 932 at 27. For the same reason, the Court finds that the superseding indictment encompasses the 2015 Tyson pricing for Popeyes. *See* Docket No. 932 at 27 (Mr. Roberts "does not cite any caselaw for the proposition that each act alleged in the indictment is a separate charge"). Additionally, in the *James* order, the Court found that Mr. Roberts' email on September 5, 2014 to other Tyson employees attaching an Excel spreadsheet titled Popeyes 2015 Pricing was made during and in furtherance of the conspiracy. *See* Docket No. 559 at 32, Entry 143; *see also* Docket No. 380-4 at 26, Entry 143. The email reads, "Popeyes is done. Here is the agreed upon model for Popeyes. Almost a $.14 increase. Yes,

Brandon, I changed the margin line. And yes it is up from what you gave me." GX-959; see also Docket No. 380-4 at 26, Entry 143. At the first trial, the Court permitted the admission of GX-959 without a sponsoring witness under Fed. R. Evid. 801(d)(2)(E). See Docket No. 1031-1 at 42. The Court has also ruled that this exhibit is admissible at the retrial under Fed. R. Evid. 801(d)(2)(E) pending authentication. Id. Accordingly, the Court rejects Mr. Roberts' argument that the evidence of Tyson's pricing for Popeyes in 2015 is unnoticed Rule 404(b) evidence. See United States v. Irving, 665 F.3d 1184, 1212 (10th Cir. 2011) (evidence is intrinsic to the charged crime and not required to be noticed under Rule 404(b) "when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode" (quoting United States v. Lambert, 995 F.2d 1006, 1007 (10th Cir. 1993)). The Court additionally finds the evidence is relevant and the probative value is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or waste of time. Accordingly, the Court will deny Docket No. 954.

## II.  Docket No. 989

Defendants ask the Court to prohibit witnesses from describing information sharing as "wrong," "immoral," or otherwise improper. Docket No. 989 at 1. Defendants argue that such evidence is inadmissible under Rules 401, 403, 701(b), and 702 because (1) a customer's opinion that sharing prices was wrong does not make it more likely that a defendant violated the Sherman Act; (2) it focuses the jury on customer opinions and distracts the jury from the standards given by the Court; (3) these are not "facts" that lay witnesses are permitted to testify to; and (4) evidence of market effects is

expert testimony and the witnesses have not been qualified as experts.  *Id.* at 4-5.  The government opposes the motion.  Docket No. 1018 at 13-17.

The government argues that "testimony on expectations of confidentiality in the industry helps prove that defendants entered the charged conspiracy knowingly because it gives rise to an inference that they were aware of the wrongful nature of their conduct but did it anyway."  *Id.* at 14.  The government also notes that, though information exchange is not itself illegal, it is illegal if done as a means to accomplish a price fixing conspiracy.  *Id.* at 15.  Defendants filed a similar motion *in limine* before the first trial, which the Court rejected, finding that "whether a witness believes something was 'wrong' or improper may be relevant to the jury's determination of the elements of Count One.  There is little danger of jury confusion given the ability of defendants to explore what a witness had in mind."  Docket No. 604 at 3-4.

A district court may reconsider its prior rulings in criminal cases.  *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014).  Grounds warranting a motion to reconsider include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."  *Id.* (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

While the Court in its previous order noted that whether a witness believes that something was wrong or improper "may" be relevant, *see* Docket No. 604 at 3, the testimony from witnesses during the first trial shows that it is not relevant.  Mr. Olson's testimony (Oct. 27, 2021, Tr. at 129:3-5) ("I think for them to share their information ends up not having as much of a free market") was irrelevant to whether any price sharing by the defendants was improper or illegal under the Sherman Act, as opposed

4

to being contrary to RSCS's rules or business norms.  The testimony from Mr. Ledford and Ms. Hoyt was similarly irrelevant.  *See* Nov. 8, 2021, Tr. at 2055:23-25 ("I wanted the best price from each of them and a fair price, not folks getting together and talking, deciding what my price should be."); Nov. 17, 2021, Tr. at 3404:23-24 ("If suppliers talked about payment terms with each other, it would put Sysco at a disadvantage of what negotiations we would be able to achieve with suppliers.  It would hinder our ability to get to the best negotiation.").  The testimony from Mr. Lewis was irrelevant for the same reason, but also prejudicial since it described the irrelevant behavior as immoral and "a form of cheating," *see* Nov. 3, 2021, Tr. at 1311:3-4, creating a danger that the jury may equate Mr. Lewis's aversion to price sharing generally with whether price sharing by competitors violates the Sherman Act.

The government's argument that evidence of the defendants believing that price sharing was improper, presumably based on customer expectations about the norms of competitive bidding, "makes it considerably more likely that competition was reduced and hence more likely that the conspiracy existed," Docket No. 1018 at 15, is not persuasive.  As the jury in the first trial was instructed, "[i]t is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices.  There may be legitimate reasons that would lead competitors to exchange price information other than fixing prices or rigging bids."  Docket No. 921 at 23.  None of the witnesses discussed above had personal knowledge about whether any of the defendants had legitimate or illegitimate reasons for sharing information or whether they shared information at all.  Thus, none of the testimony was relevant to the jury's

5

determination. Moreover, the government has provided no evidence linking price sharing in derogation of a supplier's rules with a propensity to violate the Sherman Act. The Court will bar any witness from describing price sharing as wrong, immoral, or otherwise improper.

## III.  Docket No. 990

Mr. Lovette asks the Court to exclude "any evidence, testimony, or argument regarding Sysco payment terms." Docket No. 990 at 1. Mr. Lovette argues that the portions of the superseding indictment relating to Sysco's payment terms are "outlier[s] and unlike the other episodes charged," showing that they are unconnected and any potential relevance is substantially outweighed by the risk of unfair prejudice. *Id.* at 1-2. The government opposes the motion. Docket No. 1018 at 1-4.

Since the filing of Mr. Lovette's motion, the government filed an amended witness list removing Melissa Hoyt, a Sysco employee who testified about the payment terms at the first trial. *See generally* Docket No. 1027; *see also* Docket No. 1041 at 172. Mr. Lovette argued at the February 10, 2022 hearing that, without Ms. Hoyt, the only evidence the government seeks to introduce related to payment terms is GX-803, an email chain between Mr. Lovette and Mr. Grendys of Koch Foods. *See* Docket No. 1041 at 172; GX-803. At the February 10, 2022 hearing, the government stated that, while Ms. Hoyt was not on the government's witness list, the government "does intend to solicit evidence of what payment terms, generally what they are, and to introduce Government Exhibit's 803."[1]  Docket No. 1041 at 175. The government argues fixing

---

[1] At the February 10, 2022 hearing, Mr. Kantola argued that the evidence the Court relied on in the *James* order to find that Mr. Grendys was a co-conspirator had

6

credit terms is price fixing and the evidence is relevant to establish Mr. Lovette's relationship with Mr. Grendys, a Koch executive. Docket No. 1018 at 2-3. The Court agrees with the government that GX-803 shows executives at competing chicken suppliers communicated regarding their approaches to a customer's payment terms. This is relevant to charged conduct and not unfairly prejudicial. The Court will deny the motion.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Roberts' Motion in Limine to Exclude Evidence Relating to Tyson Foods' 2015 Pricing for Popeyes Louisiana Kitchen [Docket No. 954] is **DENIED**. It is further

**ORDERED** that Defendants' Joint Motion *in Limine* to Prohibit Witnesses From Describing Information Sharing as "Wrong," "Immoral" or Otherwise Inappropriate [Docket No. 989] is **GRANTED**. It is further

---

since been negated by an interview of Bruce MacKenzie. Docket No. 1041 at 176. The government argued that the interview of Mr. MacKenzie did not definitively show that Mr. MacKenzie was not a participant in the conspiracy. *Id.* at 177. This provides no basis for a reconsideration of the *James* order.

**ORDERED** that Defendant William Lovette's Motion *in Limine* to Exclude All Evidence Regarding Sysco Payment Terms [Docket No. 990] is **DENIED**.

DATED February 17, 2022.

BY THE COURT:

　s/ Philip A. Brimmer　
PHILIP A. BRIMMER
Chief United States District Judge