IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> 1.    JAYSON JEFFREY PENN, <br> 2.    MIKELL REEVE FRIES, <br> 3.    SCOTT JAMES BRADY, <br> 4.    ROGER BORN AUSTIN, <br> 5.    TIMOTHY R. MULRENIN, <br> 6.    WILLIAM VINCENT KANTOLA, <br> 7.    JIMMIE LEE LITTLE, <br> 8.    WILLIAM WADE LOVETTE, <br> 9.    GARY BRIAN ROBERTS, and <br> 10.   RICKIE PATTERSON BLAKE, <br><br> Defendants. | Criminal Case No. 20-cr-00152-PAB |

**DEFENDANTS' JOINT MOTION TO EXCLUDE THE GOVERNMENT'S "SUMMARY" EXHIBITS**

Nearly four weeks after the Court's deadline to disclose any new exhibits, the government provided defense counsel with a flash drive containing its "summary" exhibits. The flash drive contained many new and modified exhibits, including (i) previously admitted "summary" exhibits to which the government has added documents it has no good-faith basis to believe are related to the other materials summarized in the exhibit; (ii) material and argumentative alterations to other previously-admitted exhibits; (iii) exhibits the Court previously excluded; and (iv) entirely new summary exhibits, including some that do not appear on any of the government's exhibit lists. The government purported to summarize its changes to the summary charts in a February 13 email, but failed to disclose many of these additions and revisions to Defendants.

1

Defendants reassert for preservation purposes all previous objections to the government's "summary" exhibits. In addition, the Court should exclude the government's revised, new, and previously-excluded "summary" exhibits for the reasons set forth below.

## LEGAL STANDARD

Federal Rule of Evidence 1006 permits the use of summary exhibits "to prove the content of voluminous writings . . . that cannot be conveniently examined in court." For purposes of Rule 1006, underlying evidence is voluminous when it would be "difficult" for the jury to comprehend without summarization. *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008); *United States v. Bray*, 139 F.3d 1104, 1109 (6th Cir. 1998). Rule 1006 summaries must be based on admissible evidence, *United States v. Channon*, 881 F.3d 806, 810 (10th Cir. 2018), and must reflect only contents of the evidence summarized. *State Office Sys., Inc. v. Olivetti Corp. of Am.*, 762 F.2d 843, 845-46 (10th Cir. 1985) (summaries that go beyond "simple compilation" of records impermissible). The summaries should not "embellish[]" or "annotate[]" the evidence summarized, "whether in the form of labels, captions, highlighting techniques, or otherwise." *Bray*, 139 F.3d at 1110.

Federal Rule of Evidence 611(a) permits the introduction of summary evidence otherwise inadmissible under Rule 1006 only when the summary will "aid[] the jury in ascertaining the truth" and its admission will not unduly prejudice the defendant. *United States v. Ray*, 370 F.3d 1039, 1046-47 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1109 (2005) (quotation omitted); *United States v. Renteria*, 720 F.3d 1245, 1253 (10th Cir. 2013).

## ARGUMENT

**I.    THE NEW AND REVISED "SUMMARY" EXHIBITS ARE UNTIMELY.**

Despite the Court's unambiguous order that the government had to provide Defendants with "[a]ny new exhibits" by January 14, 2022, Doc. 925 at 2, the government did not provide its new and revised "summary" exhibits until February 10, 2022, when it handed defense counsel a flash drive at the pretrial conference, which supposedly contained all of the government's exhibits for this trial. Government counsel represented that the "summary" exhibits contained on that flash drive reflected the ones previously admitted with only a handful of minor changes. In reality, the flash drive contained entirely new exhibits,[1] substantially revised exhibits,[2] and exhibits the court previously excluded.[3] Of the 20 "summary" exhibits the government sought to introduce through Rachel Evans at the first trial, only GX 8-1—which was ultimately not admitted—was not modified in any way. Each of the new and revised "summary" exhibits is untimely and should be excluded on that basis alone.

Separately, each of the underlying documents the government tries to "summarize" for the first time was available to the government and in its possession at the first trial. The government offers no explanation for its failure to include these documents in the original

---

[1] The flash drive contained three exhibits that have never appeared on any government exhibit list—the list filed at the end of the first trial or either of the lists filed in advance of the retrial: GX 10-9, GX 90-11, and GX 90-12.

[2] As discussed below, the government has revised in an unduly prejudicial manner the color scheme on GX 1-1, 2-1, 3-1, 4-1, 5-1, 7-1, 9-1, 10-1, 10-2, 10-3, 14-1, 14-2, 14-3, 16-1, 17-1, 18-1, 18-3, and 20-1. In addition to this revision and as described below, GX 1-1, 2-1, 3-1, 5-1, 10-1, 10-2, 10-3, 14-1, 14-3, and 17-1 also contain substantive additions to their content.

[3] The Court excluded the graphics contained in GX 9-2, 10-3-1, 10-5, 10-8, 10-10, 10-11, 14-4, 14-5, 14-6, 14-7, 14-8, 14-9, and 16-2 in its October 27, 2021 order granting Defendants' motion to exclude exhibits A5 and A6 to the government's trial brief. *See* Doc. 741 at 6-7.

"summary" exhibits despite numerous revisions throughout the course of the first trial. There is no basis to excuse the government's lack of diligence.

## II. THE COURT PREVIOUSLY EXCLUDED MANY OF THE GOVERNMENT'S PURPORTED "SUMMARY" EXHIBITS.

The government's February 10, 2022, disclosure included "summary" exhibits that directly contravene the Court's prior orders. The Court should once again exclude these exhibits.

***Spider charts.*** At the first trial, the Court ruled that "charts with arrows connecting defendants, phone calls, and excerpts from exhibits" are "not properly considered a summary of voluminous exhibits," but rather are "in the nature of a closing argument graphic." Doc. 741 at 6-7. Nevertheless, the government's purported summary exhibits for use at the retrial include the same types of charts, and in many cases the exact same charts the Court previously excluded: GX 10-5,[4] 10-8, 10-10,[5] 10-11, 14-4, 14-5, 14-6, 14-7, 14-8, 14-9.[6] The Court should exclude each of these exhibits pursuant to its prior ruling.

***Summaries of a small number of communications.*** Similarly, the Court ruled at the first

---

[4] The description of this document on the government's exhibit list is inaccurate. The government describes the exhibit as a "Summary Instant Message Exhibit." In reality, it is a slide containing arrows connecting various Defendants and excerpts of exhibits.

[5] The government has also revised the source exhibits for GX 10-8 and 10-10 to include exhibits that do not corroborate the information purportedly summarized. For example, GX 10-8, which purports to summarize events from August 2014, cites as a source GX 602, which is a March 2015 email unrelated to the subject of GX 10-8. GX 10-10 similarly has been revised to cite GX 2000, an email from December 2014—months after the August 2014 events "summarized" in the graphic.

[6] GX 50-4 was attached as Exhibit A6 to the government's trial brief at the first trial, *see* Doc. 670-6, but was listed as exhibit A9 to the government's Response to Defendant's Joint Motion to Exclude the Government's Proposed Summary Exhibits, *see* Doc. 723-9. While the Court ruled that the summary exhibits contained in Doc. 723-9 were admissible, Doc. 741 at 10, Defendants maintain that the arrows and photos in GX 50-4 involve many of the same elements of argumentation that the Court excluded in connection with the exhibits in Doc. 723-6.

trial that exhibits purporting to "summarize" a single communication or a small number of communications do not reflect the purpose of Rules 611 and 1006, are "argumentative," and are in the nature of a closing argument. Doc. 741 at 6. Accordingly, it excluded all such exhibits. A number of the "summary" exhibits the government intends to use at the retrial once again "summarize" a small number of documents, sometimes just a single document. These exhibits include "summaries" expressly excluded by the Court at the first trial: GX 9-2, 10-3-1, and 16-2. A number of the government's "summary" exhibits that were not admitted at the first trial similarly purport to summarize a single or small number of documents: GX 8-1, 10-9,[7] 10-12, 10-13, 10-14, and 10-15. The Court should exclude each of these exhibits pursuant to its prior ruling.

### III. THE GOVERNMENT'S REVISED HIGHLIGHTING SCHEME IS UNDULY PREJUDICIAL AND CLEARLY SEEKS TO CONVEY ARGUMENTATIVE MEANING TO THE JURY.

At the first trial, the government color-coded the entries in its "summary" exhibits in orange, blue, and green. The government represented that it coded all emails and text messages in green, calls between employees of competing suppliers in orange, and other phone calls in blue in order to "assist the jury and make the charts comprehensible." Doc. 774 at 4; Doc. 722-4. Over Defendants' objections, the Court permitted the government's use of highlighting on the basis that it did not involve the type of "color association" that would be "misleading or argumentative." Trial Tr. 3839:7-17 (Nov. 22, 2021).

The government's revised "summary" exhibits drop all artifice about the purpose of and

---

[7] GX 10-9 is particularly problematic because the single exhibit it summarizes, GX 1036-2, was not admitted at the first trial because there was no evidentiary basis suggesting that Mr. Penn ever unhid or saw the hidden columns in the excel. Trial Tr. 4177:4-4179:24 (Nov. 24, 2021).

5

argumentative intent behind its highlighting.[8] As shown below, the government now highlights all purportedly conspiratorial communications—regardless of the method of communication or whether the communication is between colleagues at the same company or another supplier—in colors commonly associated with warnings, errors, danger, or other wrongdoing:

Previously admitted GX 20-1.    GX 20-1 as revised.

Previously admitted GX 18-3.    GX 18-3 as revised.

While the government no doubt will offer artful descriptions for the specific hues, the

---

[8] The government revised the color scheme on all previously-admitted exhibits. GX 8-1, which the government withdrew at the first trial, Trial Tr. 3837:14 (Nov. 22, 2021), retains the same color scheme as at the first trial.

unmistakable meaning behind the use of red-hued highlighting is that those communications are unlawful.[9] Indeed, the only communications that are not highlighted in some shade of red or orange are emails and phone calls with customers, which appear in blue. The government's approach is argumentative and misleading, and involves the type of "highlighting techniques" that go well beyond the accurate and non-prejudicial summaries required under Rules 611 and 1006. *Bray*, 139 F.3d at 1110 (summary exhibits should not be "embellished" or "annotated" with the proponent's inferences "whether in the form of labels, captions, highlighting techniques, or otherwise"); *see also State Office Sys.*, 762 F.2d at 845-46 (summaries that go beyond "simple compilation" of records impermissible"). Using similar shades of warning colors will not aid the jury in any non-prejudicial manner. The summary exhibits should be excluded for this reason as well. *See Renteria*, 720 F.3d at 1253 (summary evidence inadmissible under Rule 611(a) where summary does not aid jury "in ascertaining the truth" and results in prejudice to defendant (quotation omitted)).

### IV. THE GOVERNMENT'S MODIFICATIONS TO PREVIOUSLY-ADMITTED "SUMMARY" EXHIBITS LACK GOOD FAITH OR ARE INAPPROPRIATE.

Contrary to the government's representation that it made only minor changes to previously-admitted exhibits, several exhibits contain entirely new and undisclosed documents or revisions that are either inappropriate or for which the government lacks any good faith basis. Ex. A (government email purporting to provide "a list of changes contained in the summary exhibits provided on flash drives in court on the morning of 2/10/2022, as compared to those

---

[9] At the first trial, the government expressly denied that any entries in its previously admitted summary charts shaded were red. *See* Doc. 774 at 4 (describing the color as "orange (not red)"). The government has now shaded the vast majority of purportedly conspiratorial communications in an unmistakably red color.

admitted in *U.S. v. Penn* last November.").

      **GX 14-1**. The government revised GX 14-1—a "summary" of activity in 2012 related to negotiations with KFC—to add excerpts from GX-3037, a 2012 email chain in which Brenda Ray wrote to colleagues at Pilgrim's Pride, "I received a call today from a friendly competitor telling me it's all over the market that Pilgrim's is taking contract pricing up. They thanked us for taking the lead and told me that contrary to what we might hear regarding their company, they are following as are others." Mr. Penn forwards the email to Jason McGuire, writing, "FYI. Do not fwd. not exactly a legal conversation." The government did not disclose this substantive addition to GX 14-1. Government counsel's email incorrectly stated that the government only revised the "summary" to "[a]dd[] phone calls on 10/8/2012." Ex. A.

      The government's failure to disclose this revision is particularly problematic because it lacks any good faith basis to group GX 3037 with documents about KFC negotiations. The emails from GX 3037, which are dated August 31, 2012 and September 1, 2012, predate the next entry in the chart by nearly a month. The participants on that email chain appear nowhere else in the chart, which primarily summarizes communications between individuals at companies other than Pilgrim's. And, as Brenda Ray, who worked in an entirely different business unit than the one responsible for sales to quick service restaurants like KFC, testified at the first trial, GX-3037 has nothing to do with KFC, which is the subject of all of the other communications summarized in GX 14-1. Ms. Ray testified that the email referred to a call she received from Greg Nelson at George's, and that the phrase "Pilgrim's had taken up contract pricing" related to "[t]he northeast hallal market." Trial Tr. 4348:9-20 (Dec. 6, 2021). Ms. Ray went on to explain that the conversation was not part of an agreement to fix prices or rig bids and that she

8

considered the conversation with Mr. Nelson appropriate "market intelligence." Trial Tr. 4349:4-21 (Dec. 6, 2021).

The government's addition of the document, notwithstanding Ms. Ray's testimony, highlights the argumentative, cherry-picked, and misleading approach the government has taken with its "summary" exhibits. The government's inclusion of GX 3037 in GX 14-1 is confusing, prejudicial, and argumentative. The revised GX 14-1 should be excluded. *See Bray*, 139 F. 3d at 1110 ("elements of argumentation" improper in Rule 1006 summary charts); *Ray*, 370 F.3d at 1046-47 (summary materials should "aid[] the jury in ascertaining the truth" and minimize jury confusion).

***GX 10-1***. The government revised GX 10-1 in a variety of ways, only some of which it disclosed to Defendants. The government disclosed that it added calls on August 7 and 11, 2014, and entries for GX-1135, GX-9703, and GX-1175. Ex. A. However, the government did not disclose that the additional calls on August 7, 2014 between Jimmie Little and Bill Kantola came from an exhibit not included on the previously admitted chart and not disclosed as an addition to GX 10-1 (GX-9645); nor did it disclose the addition of an excerpt from an August 14, 2014, email between Roger Austin and Jimmie Little in which Mr. Austin writes, "I would hesitate to give any numbers until w[e] have this KFC deal ironed out." (GX 559). Aside from failing to disclose these additions, the addition of GX 9703 inaccurately lists a response to an email as coming *before* the initial email was sent. GX 10-1 also includes an entry for a call on August 18, 2014 between Jimmie Little and Roger Austin that has been expanded to fill half the page.

***GX 10-3, 2-1, and 3-1.*** The government revised GX 10-3 to add an entry for GX-1256, an email chain between Bill Lovette, Jayson Penn, and Roger Austin that was neither admitted

9

nor on the government's exhibit list at the first trial. The Court recently denied the government's motion to add GX-1256 to its supplemental *James* log because the documents were available to the government at the time of the *James* hearing, but the government offered no information on why it did not identify the document earlier. Doc. 1050 at 6-7 (denying motion as to entry 18-S). Similarly, GX 2-1 has been revised to include an email from Jimmie Little to Dean Bradley (GX 247), which the Court declined to permit the government to add to its supplemental *James* log for the same reason. Doc. 1050 at 7. GX 2-1 has also been revised to include an exchange between Carl Pepper and Dean Bradley (GX 230, GX 232, GX 234) that was not admitted at the first trial and did not appear on the government's *James* log. Doc. 380-4. Finally, the government revised GX 3-1 to add an entry for GX 330, an April 1, 2014 email chain between Searcy Wildes and Kevin Ilardi at Perdue. Although the Court ruled this document preliminarily admissible under Rule 801(d)(2)(E), Doc. 559 at 27, Defendants have raised additional objections to the document's admissibility at retrial. *See* Doc. 945-1.

In short, these exhibits contain evidence not admitted at the first trial, some of which the Court has expressly declined to rule admissible under Rule 801(d)(2)(E). Accordingly, the government has not met its burden of showing that the materials summarized in these exhibits are admissible. *See United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012) (proponent of summary materials must establish that the materials summarized are admissible).[10]

**GX 14-3.** The government revised GX 14-3 to add (1) an excerpt from GX-1446, a

---

[10] Defendants' records indicate that GX 1404, which was added to GX 14-3 as discussed below, was also not admitted at the first trial. For the avoidance of doubt, Defendants object to the addition of any evidence not admitted at the first trial on the basis that the government has not demonstrated this evidence is admissible. *See Irvin*, 682 F.3d at 1262.

November 29, 2012, email from Jayson Penn to Roger Austin, in which Mr. Penn writes "Do we have TSN price idea?"; (2) an entry for GX-1403 and GX-1404, a December 3, 2012, email with Claxton COB pricing from Scott Brady to Mark Oeschli and Mike Ledford at RSCS; and (3) GX-1722, a January 29, 2013, email chain between Roger Austin and Jayson Penn regarding dark meat pricing. In addition to lacking justification for inserting documents in the government's possession at the first trial, Doc. 1050 at 6-7, these additions are misleading and argumentative.

      The excerpt of GX-1446 misleadingly omits Mr. Austin's response, in which he indicates that he can only give an "educated guess" as to Tyson's pricing. This selective excerpting violates Rule 1006's requirement that a summary exhibit "summarize[] the information contained in the underlying documents accurately, correctly, and in a nonmisleading manner." *Bray*, 139 F.3d at 1110; *see also Flemister v. United States*, 260 F.2d 513, 517 (5th Cir. 1958) (once a party undertakes summarizing a select set of documents, "it cannot include only items against the interest of the accused"). Indeed, at the first trial the Court ruled under the rule of completeness that defense exhibit E-570, which is the same as GX 1446 and includes Mr. Austin's response, must in fairness be considered alongside Mr. Penn's question. As the Court has already recognized, the omission of this necessary context is prejudicial to Defendants and is likely to confuse the jury. *See Ray*, 370 F.3d at 1046-47 (summary materials should "aid[] the jury in ascertaining the truth" and minimize jury confusion).

      The addition of GX-1722 is argumentative because the exhibit is entirely unrelated to the other materials "summarized" in the chart. The other entries are all dated between November 28 and December 3, 2012. GX-1722, however, is dated nearly two months after the preceding entry

11

in the chart (GX-1403 and GX-1404) and clearly is not connected in any way to the preceding entries. The email references Case, a company not referenced in any other entries on the chart. Moreover, the face of the email exchange demonstrates not only that Mr. Austin did not know the final bid submissions for other companies, but also that any information he may have received would have been shared *after* bids were submitted. The government's attempt to shoehorn GX-1722 into a chart "summarizing" unrelated communications from nearly two months prior amounts to improper argument that exceeds the bounds of permissible uses of summary evidence. *See Bray*, 139 F.3d at 1110.

***Limiting instructions***. The government revised GX 7-1 and GX 20-1 to remove limiting instructions included on the previously admitted versions of these exhibits. The government neither disclosed these revisions to Defendants nor offered any justification for the removal of these instructions.

***GX 1-1, 2-1, 3-1, 5-1, 10-2, 14-1, 17-1.*** The government revised each of these exhibits to add entries for exhibits known to and in the possession of the government at the first trial.[11] The government offers no justifications for its failure to include these exhibits on the prior versions of these summary charts. The Court should exclude the revised charts on that basis. Doc. 1050 at 6-7.

## V.    THE COURT SHOULD EXCLUDE ALL "SUMMARY" EXHIBITS NOT YET PRODUCED TO DEFENDANTS.

In addition to the "summary" exhibits discussed above, there are dozens of "summary"

---

[11] Particularly problematic, the government revised GX 17-1 to add an entry for GX 1713, an exhibit the Court specifically ruled had to be removed from the same chart at the first trial. *See* Trial Tr. 4014:17-4020:4 (Nov. 23, 2021).

exhibits on the government's exhibit list that the government has not produced to Defendants.[12] Because the deadline to disclose new exhibits has long since passed, the Court should exclude each of these undisclosed exhibits.

**CONCLUSION**

For these reasons, the Court should exclude the government's new and revised "summary" exhibits. Defendants also respectfully request that the Court not permit further revisions to the government's summary exhibits.[13]

Dated: February 18, 2022

Respectfully submitted,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

[12] These are: GX 4-2, 4-3, 5-2, 6-1, 7-2, 8-2, 9-3, 9-4, 18-4, 18-5, 18-6, 18-7, 18-8, 18-8, 18-10, 30-1, 30-2, 30-3, 40-1, 40-2, 40-3, 60-1, 60-2, 60-3, 60-4, 60-5, 60-6, 60-7, 60-8, 60-9, 70-1, 90-1, 90-2, 90-3, 90-4, 90-5, 90-6, 90-7, 90-8, and 90-9.

[13] To the extent the government continues to revise its summary exhibits, Defendants reserve their rights to challenge future versions as untimely or substantively altered.

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ James A. Backstrom*
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*s/ Craig Allen Gillen*
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

*s/ Elizabeth Prewitt*
Elizabeth B. Prewitt
LATHAM & WATKINS LLP-DC
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

*s/ Mark A. Byrne*
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

*s/ Barry J. Pollack*
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT,
ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

<u>*s/ Michael F. Tubach*</u>
Michael F. Tubach