1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLORADO
2

Criminal Action No. 20-CR-00152-PAB
3

UNITED STATES OF AMERICA,
4

        Plaintiff,
5

vs.
6

JAYSON JEFFREY PENN,
7   MIKELL REEVE FRIES,
    SCOTT JAMES BRADY,
8   ROGER BORN AUSTIN,
    TIMOTHY R. MULRENIN,
9   WILLIAM VINCENT KANTOLA,
    JIMMIE LEE LITTLE,
10  WILLIAM WADE LOVETTE,
    GAR BRIAN ROBERTS,
11  RICKIE PATTERSON BLAKE,

12       Defendants

_____
13

                        REPORTER'S TRANSCRIPT
14                      Trial to Jury, Vol. 26

_____
15

16          Proceedings before the HONORABLE PHILIP A. BRIMMER,

17  Chief Judge, United States District Court for the District of

18  Colorado, commencing at 11:45 a.m., on the 13th day of

19  December, 2021, in Courtroom A201, United States Courthouse,

20  Denver, Colorado.

21

22

23

24   Proceeding Recorded by Mechanical Stenography, Transcription
     Produced via Computer by Janet M. Coppock, 901 19th Street,
25        Room A257, Denver, Colorado, 80294, (303) 335-2106

5149

1                              APPEARANCES

2              Michael Koenig, Carolyn Sweeney, Heather Call and Paul

3      Torzilli, Laura Butte, Jillian Rogowski  and Cecilia Cheng,

4      U.S. Department of Justice, 450 Fifth Street N.W., Washington,

5      DC 20530, appearing for Plaintiff.

6              Anna Tryon Pletcher and Michael Tubach of

7      O'Melveny & Myers, LLP, Two Embarcadero Center, 28th Floor,

8      San Francisco, CA 94111-3823;

9              Brian Quinn of O'Melveny & Myers, LLP, 1625 I Street

10     N.W., Washington, DC 20006, appearing for Defendant Penn.

11             David Beller, Richard Kornfeld and Kelly Page of

12     Recht & Kornfeld, P.C., 1600 Stout Street, Suite 1400, Denver,

13     CO 80202, appearing for Defendant Fries.

14             Bryan B. Lavine of Troutman Pepper Hamilton Sanders,

15     LLP, 600 Peachtree Street NE,  Suite 3000, Atlanta, GA 30308;

16              Laura Kuykendall and Megan Rahman of Troutman Pepper

17     Hamilton Sanders, LLP,  1001 Haxall Point, Richmond VA 23219,

18     appearing for Defendant Brady.

19             Michael Felberg of Reichman, Jorgensen, Lehman,

20     Feldberg, LLP, 750 Third Avenue, 24th Floor, New York, NY

21     10017;

22

23

24

25

1                    APPEARANCES (Continued)

2              Laura F. Carwile of Reichman, Jorgensen, Lehman,

3     Feldberg, LLP, 100 Marine Parkway, Suite 300, Redwood Shores,

4     CA 94065; appearing for Defendant Austin.

5              Elizabeth B. Prewitt of Latham & Watkins, LLP,

6     555 11th Street, N.W., Suite 1000, Washington, DC 20004;

7              Marci Gilligan LaBranche of Stimson, Stancil,

8     LaBranche, Hubbard, LLC, 1652 North Downing Street, Denver, CO

9     80218, appearing for Defendant Mulrenin.

10             James A. Backstrom, Counselor at Law, 1515 Market

11    Street, Suite 1200, Philadelphia, PA 19102-1932;

12             Roxann E. Henry, Attorney at Law, 5410 Wilson Lane,

13    Bethesda, MD 20814, appearing for Defendant Kantola.

14             Mark A. Byrne of Byrne & Nixon, LLP, 888 West Sixth

15    Street, Suite 1100, Los Angeles, CA 90017;

16             Dennis J. Canty, Canty Law Corporation,

17    1990 North California Blvd., 8th Floor, Walnut Creek, CA 94596,

18    appearing for Defendant Little.

19             John Anderson Fagg, Jr. and James McLoughlin of

20    Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700,

21    Charlotte, NC 28202-4003, appearing for Defendant Lovette.

22

23

24

25

1            APPEARANCES (Continued)

2            Craig Allen Gillen and Anthony Charles Lake of

3    Gillen, Withers & Lake, LLC, 400 Galleria Parkway, Suite 1920,

4    Atlanta, GA 30339;

5            Richard L. Tegtmeier of Sherman & Howard, LLC,

6    633 17th Street, Suite 3000, Denver, CO 80202-3622, appearing

7    for Defendant Roberts.

8            Barry J. Pollack of Robbins, Russell, Englert, Orseck

9    & Untereiner, LLP, 2000 K Street N.W., 4th Floor, Washington,

10   DC 20006;

11           Wendy Johnson and Christopher Plumlee of  RMP, LLP,

12   5519 Hackett Road, Suite 300, Springdale, AR 72762, appearing

13   for the Defendant Blake.

14

15                    PROCEEDINGS

16       *THE COURT:*  We are back on the record in 20-CR-152.

17   The defendants and the attorneys are present.  The jury is not.

18   The jury has sent out a question.  Did everyone get a copy of

19   it?  Okay.

20           The question:  Can we get a document camera in the

21   deliberation room?

22           There not really being a delegation principle on

23   questions of this weighty nature, we have assembled everyone.

24   My answer will be:  Yes.  IT will bring one in that will

25   connect to the evidence cart or whatever we call that, I am not

1    quite sure.

2             Anyone have a problem with that?

3             All right.  Well, thank you all for coming.  We will

4    be in recess.  Thank you.

5         (Recess at 11:45 a.m.)

6         (Reconvened at 5:01 p.m.)

7         *THE COURT:*  We are back on the record in 20-CR-152.

8    We have gotten two questions from the jury.  I don't think that

9    there is really time enough to answer these questions today.

10   It's already after 5:00.  My suggestion would be to bring the

11   jury in, dismiss them for the day, and then indicate to them

12   that we'll answer the question tomorrow.  We'll also -- I will

13   have them come back at 8:30 tomorrow and why don't we answer

14   the question at that time unless you want to have them come

15   back at 9:00.

16            What we would do is maybe meet at 8:00, if you'd like,

17   and figure out -- well, actually, I take that back.  We can

18   figure out the answer tonight and then we'll have them come

19   back at 8:30 and I'll supply the answer to them.  We'll see

20   what it involves, but we'll have them come back and be ready to

21   come back in the courtroom at 8:30 if need be, all right?  Does

22   anyone disagree with that?

23            Okay.  Let's bring the jury back in.

24            (Jury present.)

25            *THE COURT:*  All right.  Ladies and gentlemen, you have

1    obviously sent out a couple of questions.  Just so you know

2    procedurally, once we get a question, we round everyone up.

3    And we just have rounded everyone up, so we have not had an

4    opportunity to address any of your questions.  But it's after

5    5:00 already, so what I am going to do is as follows.  I am

6    going to go ahead and dismiss you for the day.  If you could

7    all come back and be available at 8:30.  Now, if you want to

8    come back earlier than that, say at 8:00, and deliberate, as

9    long as you are ready by 8:30 just in case I need to bring you

10   back in, you'll be available to do so, okay?  But we'll work on

11   answers to your questions and supply those to you pretty much

12   the first thing tomorrow morning, all right?

13          Keep the admonitions in mind, ladies and gentlemen,

14   that you've been keeping throughout the particular trial.

15   Don't talk to anyone about the case.  Don't obviously

16   deliberate among yourselves unless all 12 of you are present.

17   And we'll be in communication, then, tomorrow morning.  The

18   jury is excused.  Thank you.

19          (Jury excused.)

20          All right.  Everyone have a copy of the two questions?

21   It looks like it.

22          First of all, on behalf of the United States,

23   suggested responses to each?  Ms. Call?

24          *MS. CALL:*  Yes, Your Honor.  Regarding the first

25   question, the government has no opposition to providing a

1    transcript of Mr. Bryant's testimony.

2           Regarding the second, it would be the government's

3    position that perhaps a colloquy may be in order, but perhaps a

4    modified Allen charge would be appropriate here.  And if Your

5    Honor agrees, we would suggest the Circuit pattern Instruction

6    1.42.

7           *THE COURT:*  Okay, thank you.

8           Mr. Beller or anyone who has some input?

9           Mr. Beller, go ahead.

10          *MR. BELLER:*  Thank you, Your Honor.  I believe that

11   the answer to jury instruction No. 1 is no.  Your Honor, I

12   believe that the jury should be recalling and relying on their

13   own memory of Mr. Bryant's testimony.  I do not believe that

14   it's appropriate to provide a transcript nor am I aware off the

15   top of my head of any precedent to allow for a transcript to be

16   given in this circumstance.  And that unduly and unnecessarily

17   emphasizes certain testimony over another.

18          As to jury instruction No. 2, Your Honor, and

19   certainly being very aware of the dictates of Allen and a

20   modified Allen instruction being given, we are asking the Court

21   to consider directing the jury to jury Instruction No. 3, which

22   is the burden and reasonable doubt instruction.

23          *THE COURT:*  Okay.  Thank you, Mr. Beller.

24          Mr. McLoughlin?

25          *MR. McLOUGHLIN:*  Your Honor, as the Court is well

1  aware of the reluctance and caution with which the 10th Circuit

2  treats Allen charges, so on behalf of Mr. Lovette, we would

3  reiterate what Mr. Beller has noted, but also further note that

4  in Instruction 40, your instruction, in fact, follows the 10th

5  Circuit guidance which gives them an Allen charge in the third

6  and fourth paragraphs there, so they have already had that

7  initial instruction.  I don't think at this point as early as

8  it is it's even necessary to refer them to that.

9          A simple statement of please continue to deliberate,

10  this has been a complex case, might be enough further

11  emphasizing as Mr. Beller indicated the issue of the

12  presumption of innocence because, of course, the 10th Circuit's

13  cases all focus on the issue of coercion.  They all focus on

14  the issue of protecting the defendants' rights.  So if you look

15  at the totality of those, including *Arney* and some others, we

16  would think again it is premature at this point, particularly

17  where they have been given -- Your Honor has already followed

18  the 10th Circuit guidance and given that instruction.

19          *THE COURT:*  All right.  Thank you.

20          Anyone else?

21          First of all, in terms of Mr. Bryant's testimony, I

22  instructed them in the initial instructions that transcripts of

23  testimony would not be available.  Moreover, traditionally as

24  Mr. Beller indicates, it would not be appropriate to give them

25  a transcript of one witness' testimony.  Everyone would have to

1    agree to that were we to do that.

2         But the problem is that now you are on a slippery

3    slope.  Maybe it's just Mr. Bryant's testimony, but maybe all

4    of the sudden we are starting to supply all sorts of people's

5    testimony being used by the jury as a way to resolve some

6    differences among them.  So I think that the appropriate answer

7    back to them would be to remind them of the instruction that

8    took place I believe on day two, on October 25th, that they

9    would not have testimony, transcripts of testimony available to

10   them.

11        A couple of thoughts on the response to the second

12   one.  As Mr. McLoughlin appropriately points out, Instruction

13   No. 40 has incorporated portions of the Allen instruction

14   already.  And Mr. McLoughlin is also correct that the way the

15   second question is worded, it doesn't exactly indicate that

16   they're at an impasse; but on the other hand, they wrote a

17   question, so it's close and it may even be such a thing.  So

18   one option is that we could say something to the effect that

19   they have not indicated that they are at an impasse yet and

20   therefore I could say that, you know, I suggest that they

21   re-read instruction No. 40.

22        We may quite quickly get another note that says that,

23   well, we weren't clear, but we really are at an impasse.  And

24   then the question would be what to do at that time.  In 10th

25   Circuit Pattern Instruction 1.42, which is the modified Allen

1    instruction, of course, some of that has been incorporated into

2    Instruction 40 already, but there is some additional language

3    in it, namely in the first two paragraphs that I think

4    especially in this case would probably be of some utility.  And

5    that could -- and do people have copies of that?  I can read it

6    if you don't have them.  Let me go ahead and read that to you.

7         It starts out this way:  Members of the jury, I am

8    going to ask that you return to the jury room and deliberate

9    further.  I realize that you are having some difficulty

10   reaching a unanimous agreement, but that is not unusual.

11   Sometimes, after further discussion, jurors are able to work

12   out their differences and agree.

13        New paragraph.  This is an important case.  If you

14   should fail to agree upon a verdict, the case is left open and

15   must be tried again.  Obviously, another trial would require

16   the parties to make another large investment of time and

17   effort, and there is no reason to believe that the case can be

18   tried again by either side better or more exhaustively than it

19   has been tried before you.

20        And then it goes into some other paragraphs, including

21   the one about, I remind you that the defendant is presumed

22   innocent.

23        So what I would suggest to you is that overnight why

24   don't you take a look at that instruction and think about it.

25   I think that -- see, here is another thought, too, and that is

1    they've only really deliberated for a day.  It's not uncommon

2    for jurors, you know, they are kind of at an impasse.  They are

3    having a hard time.  They go home.  They sleep on it.  The next

4    day people come in with different perspectives and their

5    differences get resolved.  So that dynamic may argue in favor

6    of doing what I suggested earlier is to say it doesn't look

7    like you're really at an impasse yet.  I suggest that you take

8    a look at Instruction No. 40.  And I would just supply that to

9    them when they come in at 8:30 and then we just wait.

10          And then if they really are at an impasse, then we

11   could talk about whether to give the modified Allen instruction

12   as I mentioned to you, which as I said before, I think that it

13   could have some helpful information to them if, in fact, they

14   are at an impasse.

15          Any thoughts on that suggestion?

16          Mr. Pollack, go ahead.

17          *MR. POLLACK:*  Yes, Your Honor.  I would be reluctant

18   to say to them you haven't indicated you're at an impasse yet

19   because that almost invites them to say --

20          *THE COURT:*  We are at an impasse.

21          *MR. POLLACK:*  Oh, those are the magic words we are

22   supposed to say.  So I wouldn't characterize what they have

23   said one way or the other.  I think I would just say keep

24   working.  Refer them to the instructions as a whole.  If you

25   are going to refer them to a particular instruction, I agree

1   that 40 would be the appropriate one, but I think it's

2   premature to go beyond that.  I think if they really are at an

3   impasse, they will come back and tell us that without our

4   saying something that suggests to them that that's going to be

5   the next step.

6           *THE COURT:*  Thank you, Mr. Pollack.

7           Additional thoughts, Mr. McLoughlin?

8           Mr. Feldberg?

9           *MR. FELDBERG:*  I echo Mr. Pollack's comment, but would

10   add that perhaps Your Honor would consider, since they asked

11   for some guidance, the guidance is in the jury instructions.

12   And they have a copy of the jury instructions with them and

13   they could refer to that.

14           *THE COURT:*  Right.  So in other words, the suggestion

15   would be that for the guidance you suggest that they take the

16   time to re-read the instructions or --

17           *MR. FELDBERG:*  Not necessarily singling out

18   Instruction 40, but certainly including --

19           *THE COURT:*  The instructions as a whole, yeah.

20           Mr. McLoughlin?

21           *MR. McLOUGHLIN:*  Your Honor, Mr. Feldberg was going to

22   part of where we were going too, which is Instruction 40, if

23   compelled to refer them to 40, also refer them to 3 because as

24   you know, the 10th Circuit guidance is really focused on this

25   coercion issue and reconciling that with the presumption of

1   innocence.

2          The last thing I would say is just taking one case,

3   *Arney* does talk about this issue of triggering it only once the

4   Court has some confidence that there is an impasse.  And Your

5   Honor indicated the text of the note itself indicates that they

6   are making headway, so it does seem a little premature.

7          *THE COURT:*  Anything from the government on the second

8   question?

9          *MS. CALL:*  Not on the second, Your Honor, but just to

10  be heard briefly on the first question.

11         *THE COURT:*  Sure, go ahead.

12         *MS. CALL:*  We may revisit this in the morning because

13  we do want to look into the law on this, but I believe there is

14  10th Circuit precedent in reading portions of transcripts,

15  testimony to the jury if that's what they are seeking here,

16  which it sounds like they are seeking here to be refreshed on

17  some of Mr. Bryant's testimony.

18         *THE COURT:*  Yeah, if you look up cases overnight, I

19  would be open to looking at that.  I still probably won't

20  because, once again, it would tend to -- even though they have

21  asked for it, it would -- it tends to emphasize a given part of

22  the case.  So it's different when, for instance, they've

23  watched a video or something and because of the nature of it, a

24  video, they can't watch it back in the jury deliberation room.

25  Of course, now most courts provide those materials and videos

1    to the jury, but there was a time it didn't.  But then they

2    would come back into the courthouse and perhaps watch it, but

3    that was because of the nature of the medium.

4              MS. CALL:  The government will look into that.

5              MR. McLOUGHLIN:  On that issue, Your Honor, we will

6    also look at some cases, but just would note for the record

7    that it is a perilous exercise when you have a witness like

8    Mr. Bryant who testified on direct and cross-examination for a

9    lengthy period of time.  If -- you know, the cases, and there

10   are a few other circuits I am familiar with, if you read a

11   particular portion of a transcript, it is because there is a

12   more particularized question from the jury about it.

13             Here where you have just this request for the entire

14   transcript of his testimony, then the Court again with the cast

15   of thousands on this side of the bench has to engage in a

16   dialogue of some kind with the jury to identify, well, what is

17   the particular portion?  And there are sections of the

18   cross-examination that also have to be read if they want a

19   portion of the direct.  And how do you do, oh, this relates to

20   this issue and this relates to that issue.  And it is an easy

21   rabbit hole to jump into and very difficult to get out of.  So

22   we would, particularly in a case of this complexity, number of

23   witnesses and Mr. Bryant's duration, suggest that it is a

24   fraught exercise once one goes down that road.

25             THE COURT:  Thank you, Mr. McLoughlin.

1          Mr. Pollack?

2          *MR. POLLACK:*  Thank you, Your Honor.

3          I just wanted to make one additional point.  We don't

4    have certified transcripts at this point of all of the

5    testimony.  So if you give them Bryant or some portion of

6    Bryant, then they come back next and they say we would like to

7    hear Mr. Smith, and we have to say we don't have a transcript

8    of Mr. Smith.  And it would be terribly prejudicial, I think,

9    for them to want two different witnesses, but only get one of

10   them.

11         *THE COURT:*  Yeah.  That's a logistical problem, I

12   think, as well.

13         *MR. POLLACK:*  Thank you, Your Honor.

14         *THE COURT:*  Why don't we do this.  Let's reconvene

15   tomorrow at 8:00 a.m.  That will give people an opportunity to

16   do some research.  If you have additional research, file it

17   before midnight so that we have it well in advance of getting

18   in tomorrow and I will have an opportunity to review it.  And

19   then we will figure out exactly how to respond to both of those

20   questions, all right?

21         Anything else before we recess?

22         All right.  The Court will be in recess until

23   8:00 a.m. tomorrow.

24      (Recess at 5:20 p.m.)

25                         REPORTER'S CERTIFICATE

1        I certify that the foregoing is a correct transcript from

2   the record of proceedings in the above-entitled matter.  Dated

3   at Denver, Colorado, this 21st day of February, 2022.

4

5                                  S/Janet M. Coppock___

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25