IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>1.　JAYSON JEFFREY PENN,<br>2.　MIKELL REEVE FRIES,<br>3.　SCOTT JAMES BRADY,<br>4.　ROGER BORN AUSTIN,<br>5.　TIMOTHY R. MULRENIN,<br>6.　WILLIAM VINCENT KANTOLA,<br>7.　JIMMIE LEE LITTLE,<br>8.　WILLIAM WADE LOVETTE,<br>9.　GARY BRIAN ROBERTS, and<br>10.　RICKIE PATTERSON BLAKE,<br><br>　　Defendants. | Criminal Case No. 20-cr-00152-PAB |

**DEFENDANTS' JOINT OBJECTIONS TO THE GOVERNMENT'S NOTICE OF EXHIBITS WITHOUT A TESTIFYING WITNESS**

On April 25, 2022, the government filed a Notice of Exhibits Without a Testifying Witness, listing 400 documents the government intends to offer without any sponsoring testimony.[1] Doc. 1269. Defendants respectfully submit these joint objections to those documents. All of Defendants' objections are listed in a chart attached as Exhibit A to this filing. That chart includes (i) a brief description of each exhibit, including its exhibit number; (ii) any objections

---

[1] On May 4, 2022, the government filed an Amended Notice of Exhibits without a Testifying Witness that identified two additional exhibits not included on its April 25, 2022 filing. Doc. 1294. As noted in Exhibit A, Defendants object to these exhibits—which were not disclosed by the April 25, 2022 deadline imposed in the Court's scheduling order (Doc. 1263)—as untimely.

1

Defendants previously raised to an exhibit's admissibility; (iii) the Court's prior rulings, if any, on admissibility, including a citation to the transcript;[2] and (iv) any new objections.

In addition to the objections listed in Exhibit A, Defendants raise several overarching issues here. *First*, Defendants reassert for appellate preservation purposes all prior objections to these un-sponsored documents.[3] *Second*, the sheer number of exhibits the government seeks to introduce without a sponsoring witness undermines Defendants' rights to a fair trial and to confront the evidence against them. *Third*, given the volume of documents and corresponding limiting instructions, there is a dangerous probability that the jury will improperly consider evidence admitted against only one Defendant for all purposes against all Defendants. *Fourth*, the new exhibits the government has added to this list are irrelevant, and in adding them, the government vitiates its oft-repeated commitment to "streamline" its case for the third trial.[4] *Fifth*, Defendants again object to the inclusion of the footers designating the documents as "confidential," which were added for litigation purposes. *Finally*, while the parties are in discussions on an agreement as to the authenticity of a large number of the documents admitted at the first two trials, Defendants note that the documents on the government's notice cannot be admitted before they are properly authenticated for admission at the third trial.

---

[2] All citations to the first trial record are to the official transcript. Because Defendants do not yet have the official transcript from the second trial, all citations to that record are to the unofficial transcripts. Given their draft status, Defendants defer to the Court's recollection if it differs from the drafts in any way.

[3] Defendants also note that the Court has ruled that it will consider their previously stated arguments, objections, and positions as preserved for purposes of the second retrial and for appellate review of the first, second, and third trials. Doc. 1263 at 2-3.

[4] In addition to the objections raised here, Defendants are contemporaneously moving to exclude all of the government's new exhibits in a separate filing.

## ARGUMENT

**I.    Defendants Reassert All Prior Objections.**

Defendants acknowledge that the Court has ruled on the "prior objections" listed in Exhibit A, and that the Court will not reconsider its earlier rulings absent a change in circumstances. For the reasons set forth in separate pretrial motions, Defendants respectfully submit that changed circumstances arising from the first two trials justify reconsideration of several of the Court's earlier rulings. Defendants also reassert all of the prior objections listed in Exhibit A. For example, when noting a prior objection that a document does not satisfy Rule 801(d)(2)(E), Defendants specifically incorporate hearsay objections as well as all objections raised during the *James* hearing and briefing.

**II.   The Admission of Hundreds of Documents Without a Testifying Witness Violates Defendants' Confrontation Rights.**

As at the first two trials, the government seeks to introduce over 400 documents without a testifying witness. Hundreds of these documents involve at least one individual who is not a defendant in any criminal proceeding, and for whom the government has made no showing of unavailability to testify at trial. Instead, the government seeks to insulate large portions of its case and a large number of declarants from cross-examination, in violation of Defendants' constitutional rights pursuant to the Fifth and Sixth Amendments.

The common-law tradition of criminal trials enshrined in the Sixth Amendment's Confrontation Clause "is one of live testimony in court subject to adversarial testing." *Crawford v. Washington*, 541 U.S. 36, 43 (2004). For that reason, "the Confrontation Clause imposes a burden on the prosecution to present its witnesses" for examination in court. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). This requirement provides criminal defendants "a

3

procedural . . . guarantee" that the reliability of evidence admitted at trial will "be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61; *see also Hemphill v. New York*, 142 S. Ct. 681,691-92 (2022) (a court's determination "regarding the reliability of evidence is no substitute for the constitutionally prescribed method of assessing reliability'" through cross-examination (quotation omitted)).

The government's trial strategy—introducing hundreds of exhibits into evidence without eliciting any corresponding testimony subject to cross-examination—deprives Defendants of this fundamental right. Regardless of whether the individual exhibits constitute testimonial hearsay, the government's end-run around live testimony denies Defendants their constitutionally-guaranteed opportunity to test this portion of the case "in the crucible of cross-examination." *See Id*. Defendants only recourse is to present their own live witnesses. But Defendants' ability to call witnesses in their defense "is no substitute for the right of confrontation." *Melendez-Diaz*, 557 U.S. at 324. Rather, as the Supreme Court has explained:

> Converting the prosecution's duty under the Confrontation Clause into the defendant's privilege . . . shifts the consequences of adverse-witness no-shows from the [prosecution] to the accused. More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court.

*Id*.; *see also Bullcoming v. New Mexico*, 564 U.S. 647, 663 (2011) ("If a particular guarantee of the Sixth Amendment is violated, no substitute procedure can cure the violation." (quotation omitted)). The Court should not permit the government to undermine Defendants' fair trial and confrontation rights by admitting hundreds of documents without a sponsoring witness.

### III. Limiting Instructions Are Inadequate to Mitigate the Risk of Evidentiary Spillover.

Once again, the government's notice includes scores of exhibits subject to limiting

4

instructions at the first two trials. To the extent the Court again admits the documents over Defendants' objections, Defendants respectfully request that the Court deliver the same limiting instructions for each of these exhibits. In addition to the previously identified exhibits, the government's notice also includes new exhibits that—to the extent they are admissible at all—are admissible against only certain Defendants. Each will require additional limiting instructions, lengthening the already unmanageable list of limiting instructions the jury will be asked to keep straight during a weekslong trial.

Limiting instructions are inadequate to mitigate evidentiary spillover in complex, multidefendant conspiracy cases like this one. It is not always reasonable to assume that a jury "can and will follow the trial judge's instructions to disregard [inadmissible] information." *Bruton v. United States*, 391 U.S. 123, 135 (1968). For example, this presumption is not warranted where admission of a co-defendant's extrajudicial statements creates a serious risk that a defendant will be convicted on the basis of evidence introduced only against his co-defendant. *Id*. For related reasons, the Tenth Circuit has cautioned that "when the government seeks to bring many individuals under the umbrella of a single conspiracy," courts must be "particularly vigilant" of the risk that the jury "will fail to differentiate among particular defendants." *United States v. Evans*, 970 F.2d 663, 674 (10th Cir. 1992). This risk is elevated in long, complex trials, where the jury is expected to remember precise limiting instructions offered at trial "weeks and months down the line" when they begin deliberations. *United States v. Gallo*, 668 F. Supp. 736, 753 (E.D.N.Y. 1987).

Unsurprisingly, this precise issue arose during the last trial: the jury specifically asked for an index of the limiting instructions applicable to each document, indicating the diminishing

5

effectiveness of limiting instructions in keeping the jury from improper consideration of evidence. *See* Doc. 1234 at 8. At the third trial, the jury will again be asked to remember scores of limiting instructions with no list and no marking on the exhibits about the purposes for which, and against whom, they may consider specific evidence. The premise that the jury will be able to apply the limiting instructions to each of the dozens of exhibits subject to such an instruction is pure fiction. Under these circumstances, limiting instructions are inadequate to protect against the serious, highly prejudicial risk that evidence introduced against a single Defendant or for a limited purpose will influence the jury's consideration of other issues or Defendants. Defendants again object to the admission of the exhibits noted in Exhibit A on this basis.

**IV.     The New Exhibits on the Government's Notice Are Irrelevant and Belie the Government's Assurances That It Will "Streamline" the Third Trial.**

Many, if not all, of the newest additions to the government's exhibit list are wholly unrelated to the conduct charged in the superseding indictment. For example, a number of them describe Pilgrim's' compensation plans, internal budgeting, inventory management, and production strategies. They are irrelevant and inadmissible for the reasons identified in Exhibit A, and as described in Defendants' pre-trial motions specific to these exhibits. In particular, exhibits relating to Pilgrim's' corporate culture and budgeting strategies (GX 10057, 10581, 10605, 10616) have nothing to do with rigging bids and fixing prices, and, in the case of GX 10605, predate the charged conspiracy period. Fed. R. Evid. 402; *see also, e.g.*, First Trial Tr. at 3935:11-3937:4 (Nov. 23, 2021) (granting Doc. 850 and excluding GX 9057, an email from December 2011, on the basis that it was irrelevant to the bid rigging and price fixing scheme charged in the superseding indictment). Similarly, exhibits relating to Pilgrim's' production volume strategy (GX 10602, 10603, 10604) should be excluded under Fed. R. Evid. 402 as

6

irrelevant to the conduct charged in the indictment. Indeed, the admission of these irrelevant communications would violate the Court's prior order excluding alternative theories of liability—including an "output reduction" theory—because the superseding indictment alleges only bid rigging and price fixing. Doc. 603 at 6.

The government's addition of these documents to its exhibit list also contradicts its prior representations about "streamlin[ing]" its case. *See* Doc. 1238 at 2, Hearing Tr. at 10:18-11:1 (Apr. 14, 2022). Instead of focusing on evidence relating to the conduct charged in the superseding indictment, the government instead appears to be seeking out unrelated documents that it did not seek to introduce at either of the first two trials. The Court should not permit the government to throw new, irrelevant evidence at the wall in this third trial in the hopes that something will stick.

## V. Defendants Object To The Inclusion Of Footers Designating the Documents "Confidential."

A large number of the government's exhibits, including those not listed on its notice, contain footers designating the documents "confidential" that were added during document production for litigation purposes. During the second trial, the Court ruled that the government should endeavor to redact these footers before the exhibits were submitted to the jury. Second Trial Tr. 62:14-22 (Feb. 28, 2022). Despite the fact that the request came just a week into the second trial, the government responded that it would be too "onerous" to complete the redactions by the end of trial.[5] Doc. 1112 at 1. Now, weeks before trial is set to start, Defendants respectfully request that to the extent the exhibits are not excluded by the Court, the government

---

[5] Nevertheless, the government ultimately redacted the footers before the exhibits were submitted to the jury at the end of the second trial.

redact these footers from the affected exhibits before they are entered into evidence.

## VI. The Exhibits Cannot Be Admitted Before They Are Authenticated.

Finally, as noted in Exhibit A, Defendants object to the admission of many exhibits identified in the government's notice on the basis that they have not been authenticated for admission at the third trial. *See United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991) ("Authentication is a prerequisite to the admission of evidence." (citing Fed. R. Evid.901(a)). The parties are working toward stipulations that would resolve Defendants' authentication objections to a substantial number of exhibits on the government's notice.[6] Absent that agreement, Defendants object to the admission of exhibits that have not been authenticated.

## CONCLUSION

For the foregoing reasons, the Court should deny—or at the very least defer a ruling on—the government's request to admit the hundreds of documents without a sponsoring witness.

Dated:  May 9, 2022                                   Respectfully submitted,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

---

[6] For example, Defendants expect to reach an agreement with the government regarding the authenticity of toll records and other categories of documents, and are in discussions with the government regarding other evidentiary stipulations, such as Fed. R. Evid. 803(6) business records foundation, which may render some objections identified in Exhibit A moot.

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Michael F. Tubach*
Michael F. Tubach