IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN, and
8.   WILLIAM WADE LOVETTE.

Criminal Case No. 20-cr-00152-PAB

**PUBLIC VERSION - REDACTED**

## DEFENDANTS' JOINT OPPOSITION
## TO UNITED STATES' OMNIBUS MOTIONS *IN LIMINE*

The Department of Justice's ("DOJ") Omnibus Motion *In Limine* (Dkt. 1306) contains six requests. The Court should deny all of them for the reasons set forth below.

**I.     The Court Should Not Admit Evidence on What Constituted a "Competitive Bid."**

DOJ's motion to make customers the arbiters of what constitutes a "competitive bid" is a nonstarter. That testimony would be irrelevant, prejudicial, inadmissible under a prior Court order, and improper lay witness opinion testimony under Federal Rules of Evidence 701 and 702.

**A.     Evidence about what constitutes a "competitive bid" is irrelevant, prejudicial, and inadmissible under a prior Court order.**

DOJ seeks to "introduce evidence regarding the competitive bidding process," which it defines as "the requirements underlying a good faith bid" within the understanding of "the customers." Dkt. 1306 at 2-3. In other words, DOJ wants to ask customers whether they thought price sharing by suppliers was wrong or otherwise improper. The Court considered and rejected this argument before the second trial, *see* Dkt. 1069 at 4-6, when it ruled that testimony about conduct that was "contrary to [a customer's] rules or business norms" was "irrelevant to whether any price sharing by the defendants was improper or illegal under the Sherman Act." *See* Dkt.

1

989 at 4-5 (holding that Mr. Olson's testimony—"I think for them to share their information ends up not having as much of a free market"—was irrelevant). DOJ does not identify any changed circumstances that warrant reconsideration of that ruling. Because there are none, the Court should deny DOJ's motion on this basis alone.

The Court should also deny DOJ's motion because customers' expectations for supplier behavior during a bid are still irrelevant. Fed. R. Evid. 401, 402. DOJ argues that because the jury must decide whether Defendants agreed to "eliminate, reduce, or interfere *with competition*," Dkt. 1306 at 1-2 (citing Jury Instruction 21, Dkt. 1232 at 24) (emphasis in original) (quotation omitted), customer testimony about "the competitive bidding process," including about bid confidentiality, is relevant. *Id.* at 2. But whether Defendants abided by customers' expectations of confidentiality—formally expressed or otherwise—is not at issue. As this Court instructed the jury, "[i]t is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices. There may be legitimate reasons that would lead competitors to exchange price information other than fixing prices or rigging bids." Jury Instruction No. 21, Dkt. 1232 at 26. Customer guidelines about confidentiality say nothing about the only issue in this case: whether Defendants knowingly and intentionally entered into the charged price-fixing conspiracy. Jury Instruction No. 17, Dkt. 1232 at 19.

DOJ's cases are inapposite. *United States v. Reicher* addressed a bid rigging conspiracy involving two companies, one of which "could not have performed the contract had it won the bid." 983 F.2d 168, 170 (10th Cir. 1992). The Tenth Circuit held that a conspiracy could exist in that scenario, because the company "held itself out as a competitor for the purposes of rigging"

the "competitive bidding process." *Id.* Likewise, *L-3 Communications Corp. v. Jaxon Engineering & Maintenance, Inc.* held that a customer's decision to engage only a single supplier did not constitute bid rigging. 863 F. Supp. 2d 1066, 1088 (D. Colo. 2012) (defining bid rigging as "an agreement between competitors pursuant to which contract offers are to be submitted to or withheld form [sic] a third party" (quotation omitted)). Neither case addresses whether customers can define competition for purposes of establishing a Sherman Act violation.

Permitting DOJ to elicit this irrelevant testimony will prejudice Defendants and confuse the jury. Fed. R. Evid. 403. It is the Court's job—not the customers'—to guide the jury on the Sherman Act. *United States v. North*, 2007 WL 1630366, at *1 (D. Conn. June 5, 2007) (excluding evidence that "undermine[s] the Court's role as the jury's sole source of law applicable to [the] case" and creates "significant risk that the jury will be misled"). Here, the Court instructed that "[i]t is not unlawful for competitors to meet and exchange information necessary to preparation of a bid." Jury Instruction No. 21, Dkt. 1232 at 26. Customers' testimony that their preferred "bidding practices" preclude *any* information sharing, Dkt. 1306 at 3, is at odds with this instruction and the law. Permitting that testimony risks confusing and misleading the jury about the proper legal standard, and would encourage the jury to assign guilt on an improper basis. The Court should bar it, as it did before.

**B.      The Court should not permit DOJ to introduce improper lay witness opinion testimony that turns customers into the arbiters of competition and fair dealing.**

Rules 701 and 702 prohibit customer testimony about "what the competitive bidding standards were, why the system was created that way, and whether Defendants subverted those standards." Dkt. 1306 at 3.

3

*First*, testimony about what "it means to harm 'competition'" or what "[c]onstituted a [c]ompetitive [b]id," Dkt. 1306 at 1-2, even when relevant, should be offered through an expert under Rule 702. DOJ's customer witnesses do not meet Rule 702's requirements, and their testimony from the first two trials does not bear indicia of the impartiality or rigor associated with expert testimony. *See United States v. Medina-Copete*, 757 F.3d 1092, 1101 (10th Cir. 2014) (noting expert testimony's reliability requirement is "to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" (quotation omitted)) (reversing conviction based on expert testimony that should have been excluded). For example, customer testimony that information sharing between competitors precludes the submission of a "competitive bid" ignores that information sharing can *promote* competition, including by enabling suppliers to undercut others' prices. *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) ("The exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive.").

*Second*, the customer witnesses' proposed testimony does not qualify as permissible lay opinion testimony under Rule 701. That rule allows lay opinion testimony only when helpful to determining a fact in issue or to understand other testimony. Fed. R. Evid. 701(b). The customer testimony here would accomplish neither objective. Customer expectations are irrelevant to whether Defendants violated the Sherman Act, *see supra* pp. 1-3, and their testimony will not help the jury to understand other testimony that *is* relevant to that question. Customer opinion testimony on "competitive bidding standards" and "whether Defendants subverted those

4

standards" (Dkt. 1306 at 3) would be especially unreliable and unhelpful here, given that many if not all of DOJ's customer witnesses work for companies embroiled in civil antitrust litigation against chicken suppliers. The Court should continue to bar DOJ from eliciting prejudicial and unreliable lay opinion testimony from customers.

## II.     The Court Should Exclude Testimony Regarding Price-Sharing Prohibitions.

Time and again, the Court has ruled that evidence relating to antitrust training, internal compliance policies, and customers' policies regarding the confidentiality of bid information is irrelevant, prejudicial, and likely to confuse the jury. Dkt. 603 at 7 (excluding "evidence regarding internal compliance policies or codes of conduct since those are not the standards by which the jury will need to assess the charge in this case"); Dkt. 1087 at 3 (finding that "antitrust training and policies are irrelevant," and that any "minimal relevance . . . would be substantially outweighed by the risk of unfair prejudice under Rule 403"); R. Tr. 207:3-16 (Mar. 1, 2022)[1] (excluding GX 9990 and related testimony because "a violation of [customers'] rules of the game" is neither "material to the Sherman Act" nor "relevant to . . . the state of mind to agree among competitors to fix prices"); R. Tr. 250:23–251:22 (Mar. 21, 2022) (excluding testimony of Nick White and GX 9865 because the admission of evidence of Pilgrim's internal compliance policies "run[s] a real risk that the jury might confuse that with the law regarding price-fixing"). Refusing to take "no" for an answer, DOJ seeks reversal of these rulings without identifying any changed circumstances justifying reconsideration. *See* Dkt. 1263 at 2 ("The Court will not

---

[1] Defendants cite to the unofficial, draft transcript of the second trial ("R. Tr.") for the convenience of the Court. Defendants defer to the Court to the extent its recollection differs from what is included in the draft transcript.

reconsider its earlier rulings, absent a change in circumstances warranting reconsideration."). The Court should deny DOJ's motion on that basis alone.

On the merits, the Court already rejected DOJ's argument that evidence of training materials, internal compliance policies, and similar evidence is relevant to rebut Defendants' evidence about price sharing in the industry. R. Tr. 250:23–251:22 (Mar. 21, 2022) ("[T]he government's argument that there is this atmosphere or a story that is completely unrebutted is really not true."). Then and now, DOJ mischaracterizes Defendants' evidence and the purposes for which they introduced it. Defendants introduced evidence of price sharing in the industry to show the absence of an illegal price-fixing agreement, and to rebut DOJ's key argument: that the jury should infer that Defendants fixed prices because they shared pricing information. Professor Snyder explained that price sharing was commonplace because of certain systemic features of the broiler chicken industry. R. Tr. 15:16-16:4 (Mar. 21, 2022). As a result, one cannot infer from price sharing alone that the charged conspiracy existed. This is not an "everybody was doing it defense." Dkt. 1306 at 5. Just the opposite: it is a "no one was fixing prices" defense. This is no basis to permit DOJ to usher in irrelevant and highly prejudicial evidence through the back door.

As the Court repeatedly concluded, corporate compliance policies and customers' confidentiality policies are irrelevant to whether Defendants violated the Sherman Act, and are likely to mislead the jury as to the standards it must apply. *See, e.g.*, *Tanberg v. Sholtis*, 401 F.3d 1151, 1163-64 (10th Cir. 2005) (affirming exclusion of company policy as irrelevant and likely to confuse the jury about law governing its deliberations); *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, 2020 WL 5106851, at *14 (N.D. Cal. Aug. 31, 2020) (evidence that parties "violated a compliance policy" by exchanging information "does not show an explicit agreement" to fix

prices under antitrust law); *North*, 2007 WL 1630366, at *1 (excluding antitrust compliance policy). Admitting policies containing a substantive discussion of the antitrust laws (e.g., GX 9865) would compound the problem. The unidentified authors of these policies can have no role in instructing the jury on the law and evidentiary standards; that is the Court's exclusive province. *United States v. Kearn*, 863 F.3d 1299, 1308 (10th Cir. 2017) (affirming exclusion of evidence that would "interfere[ ] with the function of the judge in instructing the jury on the law." (quotation omitted)); *Herrera-Amaya v. Arizona*, 2017 WL 11595813, at *9 (D. Ariz. Sept. 19, 2017) (excluding case law training videos, recognizing that it is "the Court's role to instruct the jury as to the law, and the video pose[d] a danger of usurping that role"). The Court properly excluded this evidence before, and should do so again.

Finally, to the extent DOJ suggests that former Pilgrim's General Counsel Nicholas White's testimony is appropriate to rebut Professor Snyder's, its argument is meritless. Putting aside privilege problems, see Dkt. 1049, Mr. White is not an economist. He could only offer an opinion that information exchange among chicken suppliers is wrong or violates company policy. The Court already rejected that type of evidence. *See supra* pp. 1-3. DOJ had the opportunity to rebut Professor Snyder's testimony at the second trial through its own expert, Professor Frank Wolak. It chose not to call him. That strategic decision does not justify the admission of evidence the Court has repeatedly excluded as irrelevant and unfairly prejudicial.

### III.   The Court Should Deny DOJ's Request to Reconsider the Court's Ruling Admitting Evidence that Customers Shared Pricing Information with Each Other.

At the outset, the Court should deny the motion to reconsider its ruling admitting evidence that customers shared pricing information with each other, because DOJ does not identify a single exhibit or piece of witness testimony that it seeks to exclude. The Court has

denied multiple motions *in limine* when it could not assess an argument out of context. *See* Dkt.
1087 at 5 ("reserv[ing] ruling on the individual exhibits until they are presented at trial and the
Court can evaluate them in context"). Regardless, this category of evidence is admissible.

**A.      No "clarification" of the Court's previous ruling is necessary.**

In a bit of misdirection, DOJ purports to seek "clarification" of a ruling admitting
evidence that customers shared *cost* information. DOJ claims that the Court did not rule that
evidence of customers sharing *pricing* information is admissible. Dkt. 1306 at 6. In fact, the
Court did exactly that, admitting pricing evidence over DOJ's objection. The Court allowed
testimony about two customers, KFC and Popeye's, sharing *price* information:

> Q. Mr. Pepper, do you have an understanding or belief as to whether ***Mr. Kronauge [the
> buyer for Popeyes] found out about this pricing to KFC*** because he learned about it
> from KFC?
> A. I had a belief, but I didn't know for sure.  That was my belief.
> Q. What it in fact your belief?
> A. That was my belief.
>
> […]
>
> Q. Now, ***Mr. Kronauge, he was using this knowledge of the KFC discount*** that he referred
> to, brand X, ***to place pressure on Tyson for a reduction***, correct?
> MS. SWEENEY:  Objection, basis.
> THE COURT:  Overruled.
> A. Repeat.
> BY MS. PREWITT:
> Q. I will repeat the question.  In fact, here in this e-mail, ***Mr. Kronauge is using his
> knowledge about a lower price offered to KFC to pressure suppliers***, including
> Tyson to lower the price, correct?
> MS. SWEENEY:  Objection as to relevance in prior order.
> THE COURT:  Overruled.
> A. Yes, ma'am.

R. Tr. 41:4-8; 41:11-25 (Mar. 7, 2022) (emphasis added). DOJ articulates no ground for
reconsideration, and therefore, the Court should deny its motion.

**B.      Evidence that customers shared pricing information with each other is relevant.**

Evidence that customers shared pricing information with each other is relevant, notwithstanding DOJ's bald assertion to the contrary. Dkt. 1306 at 7. First, DOJ's case rests almost entirely on the inference that competitor information exchange is evidence of fixing prices. Evidence that competitors in the chicken industry (here, customers) shared pricing information, but did not fix prices, directly refutes that inference. Second, this evidence undercuts testimony—which DOJ touted in evidence in both trials—that customers did not want pricing information to be shared. Finally, this evidence undermines the assumption that a supplier in possession of competitor pricing information must have obtained it from another supplier. The Court found unpersuasive DOJ's similar motion *in limine* prior to the first trial. Defendants sought to admit "evidence that customers routinely shared pricing information with suppliers, and, in certain circumstances, instructed suppliers to align prices" based on that information. Dkt. 642 at 7. Rejecting DOJ's relevancy challenge, the Court ruled that such evidence is "relevant to whether defendants had an agreement to fix prices." *Id*.

**1.      Evidence that customers shared pricing information with each other is not unfairly prejudicial.**

Without any basis, DOJ argues that admitting evidence of customers sharing prices would cause unfair prejudice and confusion because the jury "would . . . evaluate whether customers also fixed prices." Dkt. 1306 at 7. The Court should reject the argument for at least four reasons. First, the argument is based upon the false premise that information sharing conclusively proves a Sherman Act violation. As the Court instructed, information sharing without agreement does not violate the Sherman Act. Jury Instruction No. 21, Dkt. 1232. Second, Defendants have never

implied that customers engaged in price-fixing, and do not intend to do so in the third trial. DOJ cites to no instance in which any defendant "invited" the jury to question whether customers committed crimes. Dkt. 1306 at 6-7. The Court rejected DOJ's similar assertion in its motion *in limine* to exclude evidence of "complicity by customers," a ruling the DOJ does not ask the Court to reconsider. Dkt. 642 at 6. Third, the evidence cannot unfairly prejudice the customers, who are not parties to this action. *See, e.g.*, *United States v. Ballou*, 59 F. Supp. 3d 1038, 1069 (D.N.M. 2014); *Rivera v. Rivera*, 262 F. Supp. 2d 1217, 1225 (D. Kan. 2003). Finally, the probative value of this evidence substantially outweighs any conceivable prejudice. That is precisely why DOJ wants to exclude this evidence: it undercuts its narrative that the only reason to share prices is to fix prices.

### 2. DOJ's jury nullification concern is baseless.

DOJ's next argument—that evidence of customers sharing pricing risks jury nullification—is baseless. Nothing from the prior trials suggests that this evidence would result in jury nullification. The only basis for this argument is DOJ's unfounded assumption that Defendants will argue that customers were fixing prices. Moreover, DOJ misunderstands jury nullification. It has nothing to do with "confusion," but rather a "jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." *United States v. Baker*, 342 F. Supp. 3d 1189, 1206 (D.N.M. 2018) (quoting Black's Law Dictionary (9th ed. 2009)).[2]

---

[2] DOJ's citation to *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) is misplaced. Dkt. 1306 at 7. Thomas addressed the propriety of dismissing a juror "who disregards the court's instructions," not the intersection of evidence and jury nullification. *Thomas*, 116 F.3d at 614.

IV.   **The Court Should Deny DOJ's Motion to Exclude Evidence of Carl Pepper's Invocation of the Fifth Amendment.**

The Court did not commit "clear error" when it allowed Defendants to cross-examine Carl Pepper regarding his invocation of the Fifth Amendment in response to Defendants' *James* hearing subpoena (Dkt. 1306 at 8), and the Court should not preemptively preclude all questions on this subject prior to Mr. Pepper taking the stand. Contrary to DOJ's suggestion, there is no Tenth Circuit case that (1) categorically precludes a party from asking a witness about a prior refusal to testify, or (2) stands for the proposition that such a refusal always is irrelevant.

The Sixth Amendment Confrontation Clause guarantees a criminal defendant the right to cross-examine witnesses against him. *United States v. Nunez*, 668 F.2d 1116, 1121 (10th Cir. 1981). "Where the witness which the defendant seeks to cross-examine is the chief Government witness, providing the crucial link in the prosecution's case, the importance of full cross-examination is necessarily increased." *Id.* Accordingly, if considerations regarding the witness's invocation of his Fifth Amendment privilege "preclude[] inquiry into the details of his direct testimony," defendants face "a substantial danger of prejudice because the defense is deprived of the right to test [its] truth." *Id.* at 1122 (quotation omitted). In determining whether the testimony of a witness who invokes the Fifth Amendment *may be used*, the Tenth Circuit draws an important distinction between whether the questioner is (1) inquiring into collateral matters bearing only on the witness's credibility, or (2) inquiring into matters about which the witness testified on direct. *Id.* In the latter situation, a defendant is entitled to confrontation or, absent that, the striking of the witness's testimony in whole or in part. *Id. United States v. Larranaga*,

787 F.2d 489, 499 (10th Cir. 1986),[3] cited by DOJ and relied upon by the Court during the previous trial when issuing a curative instruction, is not to the contrary.[4]

Mr. Pepper is the linchpin of DOJ's circumstantial case that price increases negotiated with KFC for 2015-17 and a two-penny discount solicited by Popeyes in 2015 were the result of a criminal conspiracy. He is the sole witness who purports to have personally *entered into an agreement* to fix prices and rig bids with certain current and former Defendants. DOJ will argue and elicit testimony that Mr. Pepper is telling the truth because he signed a non-prosecution agreement. The circumstances that gave rise to that agreement—including the denial of the immunity opportunity before the *James* hearing, Mr. Pepper's refusal to cooperate with Defendants and to testify at that proceeding, and Mr. Pepper's later testimony that notwithstanding DOJ's immunity whiplash, he has never lied and "always [is] competing" (R. Tr. at 262:24–263:2, 265:3-21, 266:21–267:4 (Mar. 3, 2022); *Id.* at 145:5 (Mar. 3, 2022))—are highly relevant to proving, at the very minimum, Mr. Pepper's bias. But under Tenth Circuit precedent, neither Defendants nor the Court can assess the appropriateness of specific cross-

---

[3] Although *Larranaga* remains good law, Defendants have not identified any other case in the Tenth Circuit or elsewhere that cites it for the broad proposition that a jury cannot draw *any* inferences from a witness's decision to invoke the Fifth Amendment or that a prior invocation always lacks legitimate probative value. Further, the cases *Larranaga* relies upon in support of its inadmissibility ruling merely hold that a jury may not infer a criminal *defendant*'s or testifying witness's *guilt for the crime being prosecuted* based on his or her refusal to answer questions. *See United States v. McClure*, 734 F.2d 484, 491 (10th Cir. 1984); *United States v. Hart*, 729 F.2d 662, 670 (10th Cir. 1984).

[4] *United States v. Karoly*, 2009 WL 2004657 (E.D. Pa. July 1, 2009), also cited by DOJ, stands for yet another unremarkable and inapplicable proposition: a witness should not be placed on the stand for the purpose of having him or her exercise the Fifth Amendment privilege before the jury.

examination questions regarding Mr. Pepper's invocation of the Fifth Amendment in a pre-trial vacuum.

Even so, Mr. Pepper and DOJ's treatment of him present special circumstances that shift the balance in favor of admissibility. Mr. Pepper is not a criminal defendant in this case, nor is he subject to prosecution for the underlying indicted conduct. Defendants are not laying blame upon Mr. Pepper, and any reference to the Fifth Amendment will not result in an improper conviction. The sacrosanct Fifth Amendment principles are marginally relevant here, and do not trump Defendants' rights to put Mr. Pepper's conduct before the jury for impeachment purposes. *See Hemphill v. New York*, 142 S. Ct. 681, 690-91 (2022). Indeed, the Supreme Court has "explicitly rejected the contention that the possibility of impeachment by prior silence is an impermissible burden upon the exercise of Fifth Amendment rights." *Jenkins v. Anderson*, 447 U.S. 231, 236-37 (1980) (citing *Raffel v. United States*, 271 U.S. 494 (1926)) (credibility of testimony impeached with prior silence since witness was a non-defendant and the Fifth Amendment privilege did not relate to the crime being prosecuted); *see also, e.g.*, *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976) ("[I]n proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause."). Defendants are entitled to have the jury consider Mr. Pepper's prior refusal to testify, and the Court should not prevent Defendants from confronting him with that fact.





14





████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

## VI.  GX 1700 and 1713 Should Remain Inadmissible Under Rule 801(d)(2)(E).

DOJ asks the Court "to reconsider its rulings regarding GX-1700 and GX-1713," Dkt.

1306 at 11, but neglects to mention that this is the second motion for reconsideration of these

same exhibits. As with the first, DOJ does not point to any changed circumstance justifying

reconsideration. Dkt. 1263 at 2. Rather, DOJ argues that "[t]here are good reasons for the Court

to reconsider its prior ruling," including (1) that these two statements are "clearly coconspirator

statements"; (2) the Court admitted other, similar statements;[7] and (3) its summary exhibits

would be "substantially more helpful" if they include these statements, which provide "the

missing piece of the puzzle[.]" Dkt. 1306 at 13-14. To begin, DOJ's framing of its summary

exhibits underscores that they are pure argument, and should be excluded per Defendants' third

motion *in limine*, filed at Dkt. 1304. And none of DOJ's stated reasons for reconsideration could

qualify as a change in circumstance. What DOJ is really saying is that the Court wrongly decided

this issue, erred again in not reconsidering its ruling, and would really help DOJ's case if it

would only provide a different ruling. The Court's first impulse was the correct one.

*GX 1700.* The Court twice rejected DOJ's attempts to convert Mr. Brady's statement in

GX 1700 into an admissible co-conspirator statement, and it should do so again. Dkt. 559 at 26;

---

[7] To the extent DOJ argues that the Court admitted "statements of this type" under Rule
801(d)(2)(E), DOJ's one example (GX-224) was quite clearly included on the original *James* log.
Dkt. 1306 at 14 (listing GX-224 as "James Log Entry 78", appearing to reference Dkt. 358-2, the
original *James* log).

Dkt. 1050 at 9-10. DOJ identified GX 1700 on its original *James* Log (Entry Number 73), and argued that Mr. Brady's statement furthered the charged conspiracy. *See* Dkt. No. 358-2. The Court disagreed, finding that DOJ "fail[ed] to show that this statement was in furtherance of the conspiracy." Dkt. 559 at 26. Before the second trial, DOJ sought reconsideration of that ruling and argued that "changed circumstances"—"Brady's calls with competitors, and the trial testimony of Michael Ledford"—justified reconsideration. Dkt. 941 at 13-14. The Court disagreed again, and denied the motion. *See* Dkt. 1050 at 9-10 ("The government d[id] not show how any of the evidence presented at trial was previously unavailable to it[.]").

DOJ is back for a third bite at the apple, but once again cannot cite to any new circumstances justifying reconsideration. It points to the same "circumstances" the Court already rejected: calls with competitors. *Compare* Dkt. 941 at 13-14 (referencing Mr. Brady's calls with alleged co-conspirators Mr. Mulrenin, Mr. Little, Mr. Kantola, and Mr. Gay), *with* Dkt. 1306 at 11-12 (referencing Mr. Brady's calls with alleged co-conspirators Mr. Mulrenin, Mr. Little, and Mr. Kantola). DOJ knew about all of the cited calls and communications in advance of the initial *James* hearing. If anything, the only true changed circumstance—Mr. Finch's testimony during the second trial, in which he contradicted DOJ's assertion that Mr. Brady's calls on November 1, 2013 related to the KFC contract negotiations— weighs against reconsideration. *See generally* R. Tr. 21-39 (Mar. 17. 2022) (discussing Claxton's attempt to purchase CFA product from Tim Mulrenin and Justin Gay on November 1 and referencing GX 17).

**GX 1713.** DOJ did not include Mr. Austin's statement in GX 1713 in its original *James* log. Dkt. 358-2. In the first trial, the Court ruled that it would not be admitted under Rule 801(d)(2)(E) "given the fact that [it] was not on the *James* log," even though it "could have,

should have been on the *James* log." Tr. 2711:25–2712:8 (Nov. 12, 2021); *see also id. at* 2707:14–2710:2; Dkt. 558 at 2. The Court instead admitted it under Rule 801(d)(2)(A) against Mr. Austin only. Tr. 2712:9-18 (Nov. 12, 2021). DOJ thereafter attempted to include the statement on its summary exhibit, a modification that the Court rejected due to its ruling that statements admissible against only one defendant could not be included on those summary exhibits. Tr. 4014:13–4020:6 (Nov. 23, 2021).

In the second trial, DOJ included GX 1713 on its supplemental *James* log and admitted its failure to include it on the original *James* log. Dkt. 941 at 7 (conceding that GX 1713 was one of the documents that "did not make the [original] *James* Log"). After DOJ asked the Court to "take up fully the merits of whether [it] contain[ed] statements admissible under Rule 801(d)(2)(E)," *id.*, the Court found that "there [was] no indication that [it was] unavailable at the time of the *James* log submission" and "no reason to reconsider [the] prior ruling," and denied DOJ's motion as it related to GX 1713, among other statements. Dkt. 1050 at 7. At trial, DOJ only offered GX 1713 against Mr. Austin. R. Tr. 260:22–261:2 (Mar. 8, 2022); *see also* R. Tr. 8:1-13 (Mar. 14, 2022).

On the eve of the third trial, DOJ now asks the Court to reconsider its two prior rulings on GX 1713.[8] Dkt. 1306 at 11-14. As the Court made abundantly clear, "the *James* hearing had to mean something." Tr. 1798:3-18 (Nov. 5, 2021) ("[A]ccording to 10th Circuit preferred practice, we went ahead and had a hearing. So if this wasn't listed as a co-conspirator statement

---

[8] While Defendants do not suggest that the appearance of GX 1713 on DOJ's most recent supplemental *James* log would have changed its position, Defendants note that DOJ did not even include GX 1713 on that supplemental *James* log. Dkt. 1272.

for the Court's consideration, then I am going to consider it [to] not fall within that particular ruling and not consider it under that exception."). As DOJ prepares to try this case for a third time, it cannot evade the requirements of a *James* hearing by dint of having failed to convict a single defendant in two previous trials.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny DOJ's omnibus motions *in limine*.

Dated:  May 12, 2022                                                 Respectfully submitted,

*s/ John A. Fagg, Jr.*                                              *s/ Michael F. Tubach*
John A. Fagg, Jr.                                                    Michael F. Tubach
MOORE & VAN ALLEN PLLC                                O'MELVENY & MYERS LLP
Attorney for William Wade Lovette                   Attorney for Jayson Jeffrey Penn
100 North Tryon Street, Suite 4700                 Two Embarcadero Center, 28th Floor
Charlotte, NC 28202                                      San Francisco, California 94111-3823
(704) 331-3622                                              (415) 984-8700
johnfagg@mvalaw.com                                   mtubach@omm.com


*s/ Richard K. Kornfeld*                                    *s/ Michael S. Feldberg*
Richard K. Kornfeld                                        Michael S. Feldberg
RECHT KORNFELD, P.C.                                 REICHMAN JORGENSEN LEHMAN &
Attorney for Mikell Reeve Fries                       FELDBERG LLP
1600 Stout Street, Suite 1400                         Attorney for Roger Born Austin
Denver, CO 80202                                          750 Third Avenue, Suite 2400
(303) 573-1900                                              New York, NY 10017
                                                                    (212) 381-1965
rick@rklawpc.com                                         mfeldberg@reichmanjorgensen.com


*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Laura Carwile*
Laura Carwile