IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **WILLIAM WADE LOVETTE,**

    Defendants.

---

**UNITED STATES' MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' NEW EXPERT WITNESSES**

---

Defendants' new expert disclosures are inadequate leaving the government to guess the exact scope of the proffered testimony. Based on what the government is able to discern from the disclosures, the newly-proffered expert testimony is not appropriate for expert testimony under Federal Rule of Evidence 702 and unduly prejudicial under Rule 403. Defendants' additional experts should be excluded. To the extent, however, the Court is inclined to permit Defendants to offer an expert on executive compensation, the two experts are duplicative and Defendants should be limited to one.

On May 11, 2022, Defendants identified two new expert witnesses, Professors Wayne Guay and Robert Daines. (Docket No. 1323 (witness list); Defs.' Disclosure,

attached hereto as Exhibit A.)[1] Both witnesses seek to opine solely on executive compensation.

I. **Defendants Fail to Meet Their Burden to Disclose the "Bases and Reasons" for Their Opinions.**

Defendants must show that their experts' testimony is reliable and admissible. *See Indep. Inst. v. Gessler*, 10-CV-00609-PAB-MEH, 2012 WL 959393, at *2 (D. Colo. Mar. 21, 2012). The only way for the Court to determine whether Defendants have carried their burden is to have Defendants provide disclosures compliant with Rule 16. Defendants' inadequate disclosure, which fails to provide "bases and reasons for [the witnesses'] opinions," has deprived the Court of its gatekeeper function under *Daubert*. Fed. R. Crim. P. 16(b)(1)(C).

Defendants have instead proffered the sort of vague generalities that the Court has ruled inadequate. (*See* Docket No. 649 at 8-9 (requiring Defendants to supplement disclosure).) Vague disclosures like Defendants' fail to show that the proposed testimony is both reliable and relevant, as required under Rule 702. *See United States v. Rodriguez–Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006) ("Under Rule 702, the court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony."); *accord Dodge v. Cotter Corp.*, 328 F.3d 1212, 1229 (10th Cir. 2003).

To start, the bases for Guay's opinions include broad swaths of documents. These include, among other things, "materials pertaining to executive compensation at

---

[1] Pursuant to Fed. R. Crim. P. 49.1(a), the government has redacted the home address in Professor Guay's CV.

Pilgrim's Pride," "publicly-available sources," "third-party reports related to executive compensation and incentives," and "academic and industry literature." (Disclosure at 2-4.) Faced with such a gamut of documents to review, Defendants' disclosure "does not enable the Government to prepare for cross-examination." *United States v. Caputo*, 382 F. Supp. 2d 1045, 1049 (N.D. Ill. 2005) (citing *United States v. Jackson*, 51 F.3d 646, 651 (7th Cir. 1995)) (compelling defendant to disclose more bases and reasons for expert opinions).

Similarly, the disclosures insufficiently and vaguely identify the bases for Daines's opinions for his "evaluation of Pilgrim's Pride executive compensation and compensation process." (Disclosure at 8.) Daines is expected to "provide testimony . . . based on information contained in Pilgrim's Pride's disclosures on executive compensation contained in their annual proxy statements, known as a Schedule 14A filing, as well as in documents produced in this case." (*Id.*) The disclosure fails to identify a realistic set of documents that Daines will rely on. Disclosures must describe the experts' opinions and the bases and reasons for those opinions, Fed. R. Crim. P. 16(b)(1)(C), and must fairly enable the Government to prepare for cross-examination. *See United States v. Yurek*, No. 15-CR-394-WJM, 2017 WL 2930577, at *2 (D. Colo. July 7, 2017). Accordingly, the Court should find that the vague generalities disclosed by Defendants are inadequate.

The Disclosure creates more confusion with the term "relative performance" and its link to executive compensation. Guay's opinion that "relative performance evaluation (RPE) puts executives in direct competition with peer managers" fails to define either

3

"direct competition" or "peer managers." (Disclosure at 4.) Also undefined are the terms "peer firms" or "leading edge of practices." (*Id.* at 5.) Daines invokes similarly vague terminology such as "incentivizing competition" and "peer companies." (*Id.* at 8.) It is unclear to what extent these terms differ from Guay's "peer firms" or "direct competition," for example.

Armed with only this vague information, the government is not adequately able to prepare for cross examination much less raise all potential objections to the testimony. The following objections are based on the information available to the government at this time and the government may make additional arguments as it learns additional information or comes to better understand the proffered testimony.

## II. The Newly-Disclosed Expert Testimony May Not Be Relevant.

As a threshold matter, the Court can consider withholding ruling on the relevance and admissibility of Defendants' proffered experts until after the government rests. Although the parties have filed several motions *in limine* related to financial motivation and compensation evidence, the government has not made final determinations as to exactly which evidence it will seek to admit at trial. The extent to which Defendants' proposed testimony is even necessary or relevant is therefore a determination that the Court can make based on the government's case in chief.

## III. The Proffered Testimony Is Not Appropriate Expert Testimony under Rule 702.

Even if testimony regarding the contours of executive compensation is relevant, the proffered testimony of Defendants' two new experts does not meet the requirements

of Rule 702. Much of their testimony relates to issues for which no expert testimony would be necessary and/or does not go to a "fact at issue."

No expert testimony is needed to introduce the facts of public SEC filings. (Disclosure at 2, 5.) *See Owner-Operator Indep. Drivers Ass'n v. Comerica Bank*, No. 05-CV-0056, 2011 WL 4625359, at *3 (S.D. Ohio Oct. 3, 2011). The Court need not and cannot turn to extrinsic evidence, such as expert reports, to clarify what these publicly-available documents already establish. *Mouldtec, Inc. v. Pagter & Partners Int'l B.V.*, No. 12 C 4249, 2015 WL 5755522, at *5 (N.D. Ill. Sept. 29, 2015), *aff'd*, 667 F. App'x 774 (Fed. Cir. 2016). Publicly-available information does not require the interpretive aid of experts when there are no colorable ambiguities or technical connotations of language. *See, e.g.*, *United States v. Atchison, Topeka, and Santa Fe Ry. Co.*, 725 F.2d 469, 470 (9th Cir. 1980) (excluding expert testimony on unambiguous language in a tariff); *In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1188 (D. Nev. 1999) (disapproving of expert testimony on public securities filings).

The faults with Defendants' proposed topics continue. Both proffered experts also plan to opine that "base salary is the fixed cash component of the compensation package." (Disclosure at 4, 8.) This testimony is inadmissible in at least two respects. To start, it is irrelevant to Defendants' financial motives, which is the only reason compensation could be relevant in the first place. If base salary is a fixed amount of cash, it is unaffected by broiler chicken prices and does not tend to make Defendants' participation in a bid-rigging or price-fixing conspiracy more or less likely. Second, explaining a base salary does not require an expert's "scientific, technical, or other

specialized knowledge." Fed. R. Evid. 702(a). Jurors know what it means to receive a cash salary.

Other proposed areas of testimony also fail to go to a "fact in issue." For example, both proffered experts also plan to opine on "typical" incentive compensation, such as stock options. (Disclosure at 3-4, 8.) But what is typical in the industry has no bearing on *Defendants'* compensation at *Defendants'* employers during the charged conspiracy. So too with opinions on "academic literature and third-party reports." (*Id.* at 4-5.) These opinions are likewise far afield from the specific incentives that Defendants actually encountered.

From what the government can glean from the insufficient disclosures, the testimony Defendants seek to introduce does not need the specialized knowledge of an expert. To the extent that the Court finds any of this testimony is admissible, Defendants could introduce the information through one of the several Pilgrims' employees they noticed on their witness list.

## IV. The Expert Testimony Should Be Excluded under Rule 403.

Guay and Daines's opinions are inadmissible for the additional reason that they risk substantial juror confusion, are overbroad, are cumulative, and should be excluded as unfairly prejudicial.

### A. The proffered testimony risks substantial confusion.

Defendants' new experts propose testifying to a variety of vague and overbroad new topics and are likely to create substantial juror confusion.

*First*, the proffered evidence is not equally applicable to all Defendants. Pilgrim's and Claxton are two very differently situated companies with different compensation plans. One is a small privately-held company; the other is part of a publicly-traded corporation. The expert evidence is not relevant as to Defendants Brady and Fries. Nor are all the individuals at Pilgrim's similarly situated in terms of compensation. Defendant Austin is not an executive and had a different compensation and incentive plan.[2] There were even differences as to Defendants Penn and Lovette. Any testimony will have to be appropriately cabined to explain which Defendant it relates to, an issue that will require complicated parsing by the jury.

*Second*, Guay's proposed opinion testimony on "recent trends" is irrelevant and overbroad. Defendants are individuals who were compensated by two different companies. It is irrelevant to learn how other large corporations compensate executives or what trends are developing in the industry. Furthermore, unfair prejudice results because the jury may compare the relative virtues (or vices) of compensation across companies. If Guay implies that other executives receive sweeter pay packages than Defendants, for instance, that perceived inequity could improperly sway the jury. "Trial courts have the duty to forestall or prevent such" deviations from the case at hand. *United States v. Thomas*, 116 F.3d 606, 616 (2d Cir. 1997) (analyzing jury nullification).

---

[2] In fact, Defendant Austin's counsel made this very argument during his closing argument. (*See* 2/24/22 R. Tr. at 5:1-7 ("There will be no evidence that Roger Austin had anything to gain from a conspiracy to agree to fix prices or rig bids. He had no motive. There will be no evidence that he had Pilgrim's stock options or that higher prices would result in a bid payday.").)

*Third*, testimony about corporate governance is confusing and unclear, irrelevant norm evidence, and threatens to depart from the facts of this case. The anticipated testimony of Guay and Daines, which tries to impute company reputation to individual Defendants, would be highly prejudicial to the government's case. It would focus the trial on Pilgrim's and Claxton brands rather than Defendants' conduct, contravening the Court's rulings that have excluded evidence on industry norms and the companies' internal compliance. (*See, e.g.*, Docket Nos. 1087 (excluding compliance evidence), 1069 (excluding evidence that customers thought price fixing was wrongful).)

And *lastly*, Guay and Daines's proffered "response" to "any testimony, analysis, or evidence offered by the Government" is breathtakingly over-inclusive. (Disclosure at 4, 9.) Under this disclosure, Guay and Daines could testify on anything in the government's case. This would go far beyond the limited purpose of calling these expert witnesses, let alone any expert witness. This overbroad disclosure also opens the door to improper legal testimony or interpretation of the law by Daines, a law professor who claims expertise in "[l]aw and [b]usiness" and "[l]aw and [e]conomics." (*Id.* at 6.)

### B.   Defendants' new proffered expert opinions are cumulative.

Guay and Daines proffer nearly identical expert opinions. Even if their testimony was relevant, having two experts is duplicative. Defendants should not waste the Court and the jury's time with duplicative testimony. They should be limited to one expert.

"Under Rule 403, 'multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative. It also raises the unfair possibility that jurors will resolve competing expert testimony by "counting heads" rather than

evaluating the quality and credibility of the testimony.'" *Williams v. Mary Diane Schwarz, P.A.*, No. 15-CV-1691, 2018 WL 2463391, at *4 (N.D. Ill. June 1, 2018) (quoting *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14-CV-1748, 2018 WL 1316724, at *3 (N.D. Ill. Mar. 14, 2018)). Defendants' expert disclosure makes this redundancy clear. By the verbatim terms of that disclosure, the witnesses' proffered opinions are nearly identical. Specifically, Defendants provide the following carbon-copy headers for each witnesses' opinion testimony in their Disclosure:

| Prof. Wayne Guay: Opinions for "Expected Testimony" | Prof. Robert M. Daines: Opinions for "Expected Testimony" |
|---|---|
| "Typical Components of Corporate Executive Compensation & Associated Incentives" (p. 3) | "Typical Components of Corporate Executive Compensation & Associated Incentives" (p. 8) |
| "Evaluation of Pilgrim's Pride Senior Executive Compensation and Compensation Process" (p. 4) | "Evaluation of Pilgrim's Pride Senior Executive Compensation and Compensation Process" (p. 8) |
| "Response to the Government's Evidence" (p. 5) | "Response to the Government's Evidence" (p. 9) |
| "Recent Trends in Executive Compensation Components and Structure Among Large Public Corporations" (p. 4) | [No fourth topic header for Daines.] |

Thus, all but Guay's proffered testimony on "recent trends" is facially redundant by its very title. And even a cursory review of the "recent trends" about which Guay proposes to testify reveals that this category of testimony is duplicative of Daines' other noticed

9

topics. Again, this redundancy is apparent from a side-by-side comparison of the witness's proffered disclosure:

| Guay: Opinion on "relative performance metrics" (p. 4) | Daines: Opinion on "relative performance metrics" (p. 8) |
|---|---|
| "Professor Guay is expected to testify on the use of *relative performance metrics* in determining *variable* executive compensation." | "Professor Daines is expected to testify about the use of *relative performance metrics* (measured against *peer* companies, for example) to determine incentive or *variable* components of executive compensation." |
| "He is expected to testify that the prevalence of *relative performance* evaluation ('RPE') in executive pay has grown substantially in recent years and that RPE puts executives in direct competition with *peer* managers, thereby *incentivizing competition*." | "Professor Daines also is expected to testify regarding the impact *relative performance* metrics may have on *incentivizing competition* both generally and at Pilgrim's Pride during the relevant period." |

(Disclosure at 4, 8 (emphasis added).)

Even if Guay and Daines were relevant witnesses, two experts is prejudicially cumulative.

**V.      Professor Daines' Testimony Risks Incurable Error.**

Daines is a law professor who could incurably confuse the jury on applicable law. Under Tenth Circuit precedent, "a special rule" applies "to lawyers serving as expert witnesses." *Kirzhner v. Silverstein*, No. 09-CV-02858-RBJ-BNB, 2012 WL 385458, at *3 (D. Colo. Feb. 7, 2012) (citing *Specht v. Jensen*, 853 F.2d 805, 808–09 (10th Cir. 1988) (en banc)). "[E]ven the most explicitly limiting jury instructions will not prevent a finding

of prejudice" if a lawyer testifies on issues of law reserved for the jury or the Court. *Id.* at 816 (Seymour, J., dissenting) (analyzing impact of the *Specht* decision).

The risk that Daines will offer legal opinions, even inadvertently, is too grave to allow his testimony here. Both Defendants' Disclosure and Daines's curriculum vitae suggest that he will offer legal opinions. To start, the Disclosure stresses Daines's expertise in the "law" nearly two dozen times. (Disclosure at 6–7.) Indeed, Defendants start his qualifications with the boast that he "is the Pritzker Professor of Law and Business and Associate Dean at Stanford Law School." (*Id.* at 6.) Daines's CV underscores these risks. It highlights, among other things, that Daines is the current or former "Chair of the Corporate and Securities Law section of the American Law and Economics Association" and "Chair of the Law and Economics Section of the Association of American Law Schools." (Disclosure, Appendix B.) It further lists "Corporate Law" as the top item in Daines's "Teaching" achievements—in non-alphabetical order above other classes such as "Corporate Governance." (*Id.*) All told, it is Professor Daines's very stature in the law that makes him an especially prejudicial witness here.

## CONCLUSION

For the reasons stated, the Court should exclude the proffered expert opinions of Wayne Guay and Robert Daines.

Dated: May 18, 2022                Respectfully submitted,

/s/ Matthew Chou
KEVIN B. HART
LESLIE A. WULFF
PAUL J. TORZILLI
DANIEL A. LOVELAND, JR.
KAITLYN E. BARRY
MATTHEW CHOU
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 598-8242
Email: matthew.chou@usdoj.gov
*Attorneys for the United States*