IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **WILLIAM WADE LOVETTE,**

    Defendants.

---

**UNITED STATES' NOTICE OF INTENT TO OFFER TESTIMONY TO EXPLAIN THE MEANING OF CONVERSATIONS AND USE OF COLLOQUIAL TERMINOLOGY**

---

In this trial, like before, government witnesses will again testify "about [their] understanding of words used in a conversation [they] ha[ve] witnessed." *United States v. Lomas*, 826 F.3d 1097, 1107 (8th Cir. 2016). In the government's view, such testimony is admissible because it is both (1) based on the witness' personal knowledge; and (2) helpful lay opinion under Federal Rule of Evidence 701. *See United States v. Hoffner*, 777 F.2d 1423, 1425 (10th Cir. 1985). Testimony from a person who has first-hand knowledge of a conversation can aid the jury by explaining the meaning of "conversations that are abbreviated, composed of unfinished sentences[,] and punctuated with ambiguous references to events that were clear only to the conversation participants." *United States v. Sneed*, 34 F.3d 1570, 1581 (10th Cir. 1994);

*accord, e.g.*, *Lomas*, 826 F.3d at 1102, 1107 (admitting testimony on overheard conversation).  Here, the proffered testimony would explain the meaning of roughly three types of "ambigu[ity]."

## I. Testimony would provide meaning to conversations that the witness participated in.

To start, government witnesses will explain the meaning of conversations that they personally participated in.  Robert Bryant, for instance, will testify about conversations he had with co-conspirators such as Tim Stiller, Jason McGuire, and Defendant Roger Austin.  The statements themselves from the co-conspirators' mouths are admissible as non-hearsay.  Fed. R. Evid. 801(d)(2)(E).  Robert Bryant heard all these statements.  He has personal knowledge of them.

Precedents thus provide that under Rule 701, Bryant can interpret the statements.  Indeed, this circuit and others all "hold[] that a witness may testify about his subjective interpretation of a conversation in which he is participating." *United States v. Wantuch*, 525 F.3d 505, 515 (7th Cir. 2008) (collecting cases); *accord, e.g.*, *Sneed*, 34 F.3d at 1581 (testimony interpreting conspirator's statements); *United States v. Aiello*, 864 F.2d 257, 262 (2d Cir. 1988) (same); *United States v. Skelly*, 442 F.3d 94, 100 (2d Cir. 2006) (upholding admission of testimony regarding the meaning of conversations where witnesses "had first-hand knowledge of the conversations").  Put simply, "a lay witness' opinion concerning the witness' understanding of the declarant's statements or conduct may be helpful to the jury." *United States v. Simas*, 937 F.2d 459, 465 (9th Cir. 1991).

The Court's evidentiary rulings have largely tracked these precedents. In the second trial, for example, the Court admitted Bryant's testimony on a conversation between Bryant and Stiller. The government asked Bryant: "[W]hat did you understand Mr. Stiller to mean when he told you that he had directed Roger Austin to *tell the competition we were going to hold*?" (3/9/22 Cert. Tr. at 2151:25-2152:2 (emphasis added).) Bryant answered: "That he wanted Roger to tell our competition that we were not going to concede any more on price and that if -- we would rather walk away from the business than concede on price." (*Id.* at 2152:5-7.) Tellingly, the Court overruled Defendants' objection that the government's question "call[ed] for speculation." (*Id.* at 2152:3-4.) So Bryant was allowed to explain a co-conspirator's ambiguous statement that "we were going to hold." (*Id.* at 2151:25-2152:2.)

The logic of these cases, which deal with oral statements, applies equally to written statements. For example, part of GX-1066[1] contains an email exchange between co-conspirators Robert Bryant and Jason McGuire. Bryant wrote to McGuire: "That's good…," to which McGuire replied: "Yep that should help y'all out some." (*Id.* at 1.) Though Mr. Bryant was in an email conversation with a co-conspirator, the government could not ask Bryant: "what did [he] understand that to mean when Mr. McGuire said ['Yep that should help y'all out some.']." (3/8/22 Cert. Tr. at 2072:18–2073:2.)

---

[1] The court has ruled that the entirety of GX-1066 is admissible under Fed. R. Evid. 801(d)(2)(E).

3

The Court instead sustained Defendants' objection to the government's question. (*Id.*)  This ruling initially excluded testimony that, in Bryant's view, McGuire was "help[ing]" Bryant by reassuring him that their co-conspirators were also planning to raise prices on KFC.[2]  (GX 1066 at 1.)  Thanks to this "help," Pilgrim's took an uncompromising negotiating position at a meeting between Pilgrim's employees and KFC the *very next day*.  (*See* 3/8/22 Cert. Tr. at 2073:4–2074:19.)

The Court should permit Mr. Bryant to testify what he understood another person to have said to him.  Such testimony is especially apt where, as here, the Court has held that the statements at issue were made by co-conspirators "during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  The Court should treat written statements similar to the way it has treated oral statements, and permit the testimony.[3]

---

[2] At first, the Court sustained objections to testimony on Bryant's understanding of GX 1066.  (3/8/22 Cert. Tr. at 2069:14–2070:22, 2072:18-2073:21.)  But the Court eventually allowed Bryant to testify to his "understanding as to why [the McGuire-Austin thread in GX 1066] was forwarded to [him]."  (*Id.* at 2071:9-23; *see id.* at 2073:14-25.)

[3] The government intends to offer additional bases of admissibility—and additional foundation—to enable Mr. Bryant to testify to his understanding of what Mr. McGuire wrote to him.  The government also intends to establish additional foundation to elicit Bryant's understanding of the *other* communications within GX-1066.  Those other communications include the emails that McGuire forwarded to Bryant for Bryant's information.  The government anticipates that Bryant would testify how the forwarded emails indeed "helped y'all out some" prior to—and during—Pilgrim's meeting with KFC the next day.

## II. Testimony would explain the meaning of conversations that the witness has first-hand knowledge of.

Government witnesses will also explain conversations that they had first-hand knowledge of, but did not participate in.  These include conversations that witnesses overheard.  For instance, at a customer's office in 2014, Bryant was in a conference room when he overheard Jason McGuire tell Roger Austin to "put this out to the industry."[4]  (3/8/22 Cert. Tr. at 2048:7-2049:15.)  In his instruction, McGuire used "abbreviated" and "ambiguous references."  *Sneed*, 34 F.3d at 1581.  Specifically, the terms "put this out" and "the industry" are ambiguous to the jury.  So an understanding of those terms from someone who was there (such as Bryant) would help the jury "clearly understand[] the witness's testimony or [] determin[e] a fact in issue."  Fed. R. Evid. 701(b).

But when the government asked Bryant "what did [he] understand Mr. McGuire to mean," the Court sustained Defendants' objection.  (3/8/22 Cert. Tr. at 2052:20-2053:19.)  The Court reasoned that McGuire's statement "wasn't said to [Bryant].  It sounded like it was said to somebody else."  (*Id.*)[5]  This ruling—necessarily made

---

[4] The Court has ruled on multiple occasions that this statement was made during the course and in furtherance of the charged conspiracy.  *See, e.g.*, James Log Entries 79-S, and 111-S.

[5] The Court later allowed Bryant to testify that—at least outside the context of McGuire's specific statement to Austin—"industry" described Pilgrim's "competitors."  The government asked Bryant: "In your time in the QSR business and working with those people, did the term 'industry' have a particular meaning?"  (3/8/22 Cert. Tr. at 2053:22-23.)  After Bryant answered yes, the government asked Bryant for "the basis of [his] understanding of the meaning of the term 'industry.'"  Over Defendants' overruled objection, Bryant responded: "Conversations with Tim Stiller, Roger Austin.  You know,

without briefing in the haste of trial—did not have the benefit of key precedents. Courts allow a witness to interpret even the conversations "in which he was not a part." *United States v. Lizardo*, 445 F.3d 73, 83 (1st Cir. 2006).

What's more, such testimony is admissible even if the witness (A) was not a co-conspirator, *see United States v. Lomas*, 826 F.3d 1097, 1102 (8th Cir. 2016); or (B) was never present for the conversation and merely heard a law enforcement recording of it, *see United States v. Saulter*, 60 F.3d 270, 276 (7th Cir. 1995). In *Lomas*, for instance, a teenager overheard her mother and defendant discuss finding a "tool" for a robbery. 826 F.3d at 1102. The teenager testified that, based on her "observations" of defendant, a "tool" was in fact a firearm. *Id.* at 1107. The Eighth Circuit held this testimony admissible under Federal Rule of Evidence 701. Analogously, in *Saulter*, the Seventh Circuit held that "Rule 701 does not require that the [interpreting] witness actually have participated in the recorded conversations." 60 F.3d 270, 276 (7th Cir. 1995). Rather, it was "sufficient that the witness has personal knowledge of the subject discussed and the persons involved." *Id.* And the Ninth Circuit has approved lay testimony from a witness who was *neither* a co-conspirator nor "a participant in the conversations he interpreted." *United States v. Freeman*, 498 F.3d 893, 902, 906 (9th Cir. 2007). In short, even witnesses with attenuated knowledge of a conversation can still testify to its meaning.

---

*in the context of doing business* or the course of doing business, *that term was used to describe competitors*." (*Id.* at 2054:2-4 (emphasis added).)

Bryant's testimony is more plainly admissible than the testimony in *Lizardo*, *Lomas*, *Saulter*, and *Freeman*. Bryant was a co-conspirator with McGuire, Austin, and others—and spoke regularly with them to further the bid rigging conspiracy. (*See, e.g.*, 3/8/22 Cert. Tr. at 2076:21 (describing "internal conversations with Roger Austin and Jason McGuire").) He also contemporaneously witnessed the 2014 meeting where McGuire and Austin discussed "put[ting] this [*i.e.*, price increases] out to the industry." (*Id.* at 2052:17–21.) And, over several years as a co-conspirator, Bryant deepened his "personal knowledge of the subject[s] discussed and the persons involved." *Saulter*, 60 F.3d at 276.

So, in this trial, the Court should allow witnesses to explain the meaning of conversations that they had first-hand knowledge of. For example, when the government asks Bryant what he understood McGuire's directive to "put this out to the industry" to mean, the Court should permit him to explain both McGuire's vague co-conspirator statement as a whole and its two constituent parts: "put this out" and "industry".[6] Without context from Bryant, the terms "put this out" and "industry" are vague.

---

[6] The government recognizes that the Court requires changed circumstances to obtain reconsideration of a prior ruling, though the government believes this issue does not qualify as reconsideration. Rather, the government believes that it can provide additional foundation to enable Mr. Bryant to testify to his understanding based on personal knowledge. *See* Fed. R. Evid. 701. This foundation would include the fact that Bryant had heard co-conspirators, including declarant McGuire, use the word "industry" many times prior to the occasion that he would be asked to testify about. And as detailed above in note 5, the Court *has* allowed Bryant to testify that—at least outside the context of McGuire's statement to Austin—"industry" described Pilgrim's

### III. Testimony would explain that conspirators "manipulated" the bidding process.

After laying foundation, the government also intends to elicit Bryant's testimony regarding conspirators' actions to fix prices and rig bids during the conspiracy. Bryant may use the term "manipulated" to describe what happened during bids that were part of the conspiracy. Specifically, the government anticipates that Bryant may use the term "manipulate" to describe the purpose of the conspirators' bid rigging conversations. As Bryant has explained in prior trials, conspirators shared their bids and bid strategy with each other so that, together, they could impose price increases on customers (or resist price decreases). Bryant's description for all this may include the term "manipulation." The government expects that during Bryant's direct examination, he may use the term "manipulation" in its colloquial sense to summarize the nature and purpose of certain types of communications that occurred during the conspiracy.

This is appropriate. "The term 'manipulation,' when used in the ordinary, nonlegal sense that the Government describes, is not unfairly prejudicial." *United States v. Coscia*, No. 14-CR-551, 2015 WL 6153602, at *3 (N.D. Ill. Oct. 19, 2015). To the contrary, it accurately describes the conduct of Defendants' and co-conspirators such as Bryant. Many courts—including the Supreme Court and the Tenth Circuit—have called price fixing and bid rigging "manipulation." *See, e.g.*, *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940) (affirming Sherman Act conviction

---

"competitors." (3/8/22 Cert. Tr. at 2053:22-2054:4.) Thus, in the government's view, admitting testimony on the meaning of "industry" would not require the Court to reconsider rulings. But if reconsideration is in fact required, the government respectfully submits that new foundation and clear precedents warrant reconsideration.

because defendant's conduct was "a species of price-fixing or manipulation"); *United States v. Reicher*, 983 F.2d 168, 172 (10th Cir. 1992) (same because defendant "manipulate[d] the bidding"); *United States v. Consol. Packaging Corp.*, 575 F.2d 117, 128 (7th Cir. 1978) (same because conspirators did not "mere[ly] exchange [] price information," but rather intended "to make more profit by price manipulation than could be anticipated from legitimate bidding").  Bryant's anticipated testimony is thus accurate, supported by precedent, and non-prejudicial.  Accordingly, the Court should not bar him from using the term "manipulate" or "manipulation" in circumstances where he believes it describes the conduct he observed and/or participated in.

## CONCLUSION

In this trial, the government respectfully intends to elicit testimony from witnesses "about [their] understanding of words used in a conversation [they] ha[ve] witnessed." *Lomas*, 826 F.3d at 1107.

Dated: June 5, 2022        Respectfully submitted,

/s/ Matthew Chou
KEVIN B. HART
LESLIE A. WULFF
PAUL J. TORZILLI
DANIEL A. LOVELAND, JR.
MATTHEW CHOU
AIDAN D. MCCARTHY
KAITLYN E. BARRY
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 598-8242
Email: matthew.chou@usdoj.gov
*Attorneys for the United States*