IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>1.   JAYSON JEFFREY PENN,<br>2.   MIKELL REEVE FRIES,<br>3.   SCOTT JAMES BRADY,<br>4.   ROGER BORN AUSTIN, and<br>5.   WILLIAM WADE LOVETTE,<br><br>　　　　Defendants. | No. 20-cr-00152-PAB |

**DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S "NOTICE" OF INTENT TO OFFER TESTIMONY TO EXPLAIN THE MEANING OF CONVERSATIONS AND USE OF COLLOQUIAL TERMINOLOGY**

Late on the eve of trial, the government filed a "notice" stating that it intends to elicit various forms of opinion testimony from Robert Bryant, despite several unambiguous rulings prohibiting that very testimony. The government's filing is not a motion and does not ask the Court for any relief—it simply informs the Court that the government "respectfully intends to elicit" previously-excluded testimony. Doc. 1369 at 9. In essence, the government seeks an advisory opinion regarding the admissibility of broad categories of testimony it wishes to elicit from Mr. Bryant. But the government has not yet laid any foundation for this testimony. Its "notice" is therefore not only procedurally improper, but also premature.

Because Mr. Bryant is scheduled to testify on Wednesday, June 8, Defendants submit this opposition to the government's use of a "notice" to sidestep the Court's prior rulings and the limits of the Federal Rules of Evidence. The parties have extensively litigated the parameters of Mr. Bryant's testimony throughout the multiple trials in this case, and the Court has previously

excluded large portions of the testimony the government now intends to elicit at the third trial. If the government had a good faith basis to seek relief from these rulings, it could have filed a motion in limine, raised the issue in its trial brief, or sought reconsideration after the Court issued its rulings months ago. Indeed, all of the information in the government's "notice" has been available to it since before those rulings. The fact remains that this testimony will not help the jury in determining whether Defendants violated Section 1 of the Sherman Act and it unfairly prejudices Defendants. The Court should not permit the government to shift the previously-settled boundaries of Mr. Bryant's permissible testimony through its expository "notice."

## ARGUMENT

### I. Testimony Regarding the Meaning of Unambiguous Conversations Is Unhelpful and Improper.

It is the province of the jury to determine guilt, and any witness opinions that undermine that role must be excluded under Federal Rule of Evidence 701. That is because where a witness "is no better suited than the jury to make the judgment at issue," "opinions which merely tell the jury what result to reach" are not "helpful" to the jury. *United States v. Brooks*, 736 F.3d 921, 931 n.2 (10th Cir. 2013) (quotation omitted); Fed. R. Evid. 701(b) (lay witness testimony must be "helpful" to "determining a fact in issue"); *see United States v. Espino*, 32 F.3d 253, 257 (7th Cir. 1994) ("unfamiliar with the contours of the criminal law," a lay witness "may feel that the legal standard is either higher or lower than it really is.") (quotation omitted). Accordingly, lay testimony about whether a defendant participated "in a conspiracy" should "not be permitted as lay opinion under Rule 701." *Brooks*, 736 F.3d at 931 n.2 (emphasis omitted); *see United States v. Moore*, 651 F.3d 30, 57 (D.C. Cir. 2011) (lay witness cannot express opinions on defendant's culpability).

That rule applies with equal force even when the testimony is styled as being about "the meaning of conversations" in which lay witnesses purportedly participated. *See* Doc. 1369 at 2. While a witness may "clarify conversations that are abbreviated, composed of unfinished sentences and punctuated with ambiguous references to events that were clear only to the conversation participants," *United States v. Sneed*, 34 F.3d 1570, 1581 (10th Cir. 1994), he cannot usurp the jury's function by ascribing legal meaning to previous conversations or by attempting to "clarify" conversations that are not abbreviated, composed of unfinished sentences, or clear only to the conversation's participants.

The government's cases confirm this point. The government selectively quotes *United States v. Wantuch*, 525 F.3d 505 (7th Cir. 2008), for the proposition that "a witness may testify about his subjective interpretation of a conversation in which he is participating," Doc. 1369 at 2, but conveniently leaves out the rest of the quote: "*as long as his opinion is rationally based on his perception and is helpful either to an understanding of his testimony or to the determination of a fact in issue*," *Wantuch*, 525 F.3d at 515. That qualification controls here: Mr. Bryant cannot interpret past conversations where the jury can just as easily conduct that interpretation themselves.

*United States v. Aiello*, 864 F.2d 257, 262 (2d Cir. 1988), *United States v. Skelly*, 442 F.3d 94, 100 (2d Cir. 2006), and *United States v. Simas*, 937 F.2d 459, 465 (9th Cir. 1991), further drive home the point. *See* Doc. 1369 at 2. In each of these cases, the court allowed lay witnesses to explain the meaning of previous conversations because the conversations were otherwise *incomprehensible* to those who were not present. In *Sneed* and *Aeillo*, for example, lay testimony was deemed helpful because the relevant conversations contained confusing

language—"sharp and abbreviated"—on tape recordings. *Aiello*, 864 F.2d at 265 (quotation omitted); *see Sneed*, 34 F.3d at 1583 (finding lay opinion testimony helpful in "light of the complex transactions" referred to on "taped conversations" that were "[un]clear" and "[]ambiguous"). And in *Simas*, the "listener's understanding of the words and innuendo" at issue was "helpful to the jury" because the statements were otherwise "incomprehensible" to the factfinder. *Simas*, 937 F.2d at 465.

None of those cases are anything like the proposed (and previously excluded) testimony here. As the government previews, it intends to offer lay testimony to ascribe legal meaning to previous conversations. Doc. 1369 at 3-4. The government, for instance, claims Mr. Bryant will testify that that when Mr. Stiller told him that he had "directed Roger Austin to tell the competition we were going to hold," it reflected an agreement to fix prices. Doc. 1369 at 3. The government likewise states that Mr. Bryant will testify that when Mr. McGuire responded to an email, "Yep that should help y'all out some," that too reflected a conspiracy. Doc. 1369 at 3-4 & n.2. That is a far cry from allowing a lay witness to fill the gaps of an "abbreviated," "ambiguous," or otherwise confusing exchange. *See Sneed*, 34 F.3d at 1581-82; *Aiello*, 864 F.2d at 265. Mr. Bryant would not simply clarify an incomprehensible term or muddled tape recording for the jury; rather, he would tell the jury that snippets of years-old conversations—which are innocuous on their face—reflected a conspiracy. That is improper.

The Court has previously ruled that this sort of lay testimony is inadmissible. Second Trial Tr. 2073:4-2074:19 (Mar. 8, 2022) (excluding Mr. Bryant's testimony about what he understood Jason McGuire's email to mean). Thus, regardless of whether the previous conversations are "oral" or "written," Doc. 1369 at 3, the same rule applies: lay witnesses cannot

4

offer opinions that effectively "tell the jury what result to reach." *Brooks*, 736 F.3d at 931 n.2 (quotation omitted). That the government contends there may be "other," unexplained "bases of admissibility," Doc. 1369 at 4 n.3, makes no difference. No document, interview summary, or prior testimony reveals any such basis, and government witnesses cannot tell the jury what legal conclusions to reach in the guise of "interpreting" previous conversations. The Court should therefore reject the government's attempt to impede on the jury's factfinding through improper lay testimony.

## II. The Court Should Reaffirm Its Ruling that Mr. Bryant Cannot Explain the Meaning of Terms Used in a Conversation in Which He Did Not Participate.

The government's "notice" states that Mr. Bryant will explain the contents of a single conversation in which he did not participate, in contravention of the Court's prior ruling.[1] Second Trial Tr. 2052:17-2053:19 (Mar. 8, 2022). While the government acknowledges that the Court requires "changed circumstances to obtain reconsideration of a prior ruling," the government identifies none. Doc. 1369 at 7-8 n.6. First, it identifies no changes in law since the Court's ruling. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). All of the cases cited in the government's "notice" were available during the second trial. *See* Doc. 1369 at 5-7. Second, the government identifies no "new evidence previously unavailable" to it, *Servants of Paraclete*, 204 F.3d at 1012 (citation omitted), listing only "new foundation" testimony by Mr. Bryant. *See* Doc. 1369 at 7-8 n.6. The government provides no new recollections by Mr. Bryant;

---

[1] The government lists only one conversation between Mr. McGuire and Mr. Austin about which it seeks to elicit Mr. Bryant's opinion. Doc. 1369 at 5-8. Defendants reserve the right to object and respond if the government later seeks to elicit improper opinion testimony about the meaning of other conversations.

instead, it dresses up the same testimony that this Court previously held insufficient. These failures alone justify excluding the proposed testimony.[2]

Federal Rule of Evidence 701 also prohibits Mr. Bryant's testimony. Lay opinion testimony must be "rationally based on the witness's perception." Fed. R. Evid. 701(a); *see also United States v. Robertson*, 2020 WL 6706868, at *2 (D.N.M. Nov. 13, 2020) (prohibiting the government from eliciting lay opinion testimony under Rule 701 absent "proper foundation"). Further, such testimony must be "helpful" to the jury. Fed. R. Evid. 701(b). Mr. Bryant's proposed opinion testimony is neither.

The government contends that Mr. Bryant's familiarity with Mr. McGuire and Mr. Austin allows him to opine on the meaning of terms used in a conversation between the two. Doc. 1369 at 5-7. The government is wrong. It must show more than Mr. Bryant's familiarity with the speakers. Rather, it must show Mr. Bryant's familiarity with the terms as used by the speakers, a foundation it has failed to establish.[3] Without this foundation, this situation is nothing like those in the government's cases. For example, in *United States v. Lomas*, 826 F.3d 1097 (8th Cir. 2016), a witness's lay opinion testimony was informed by the witness's "direct observations and perceptions" of a declarant. *Id.* at 1107. These first-hand observations allowed that witness to opine that a declarant's use of the word "tool" referred to a gun. *Id.* Here, on the other hand, Mr.

---

[2] Nowhere does the government argue that this Court's prior ruling constituted clear error, meaning the government has forfeited the argument. *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with legal authority or argument." (quotation omitted)).

[3] Accordingly, Mr. Bryant's own understanding of the term "industry" (Doc. 1369 at 7-8 n.6) says nothing about whether there is sufficient foundation for Mr. Bryant to opine about what *Mr. McGuire or Mr. Austin* meant by the term.

Bryant has no similar observations or perceptions that would help him interpret Mr. McGuire's direction to "put this out to the industry."[4] Instead, as the Court found, Mr. Bryant's opinion rests on speculation. Second Trial Tr. 2052:20-2053:1 (Mar. 8, 2022) (sustaining defendants' objection because the government's request that Mr. Bryant explain the meaning of "put this out to the industry" called for "speculation"); *see also United States v. Vann*, 776 F.3d 746, 759 (10th Cir. 2015) (commenting that the Tenth Circuit has "held that it was inappropriate to admit speculative, meandering testimony" about the meaning of defendants' actions). And lay witness opinion testimony that rests on speculation is not "helpful" to the jury, meaning it must be excluded. Fed. R. Evid. 701(b); *United States v. Williamson*, 656 F. App'x 175, 187 (6th Cir. 2016) (noting that testimony that "speculate[s]" about the meaning of conversations is "not helpful to the jury" under Rule 701(b)).

The Court should once again exclude Mr. Bryant's proposed opinion testimony about the meaning of a conversation in which he was not involved.[5]

---

[4] Mr. Bryant has failed to articulate the factual basis for his understanding of Mr. McGuire's instruction to Mr. Austin. Instead, the government relies upon Mr. Bryant's vague testimony that the basis for his understanding of the word "industry" was "[c]onversations with Tim Stiller, Roger Austin. You know, in the context of doing business or in the course of doing business, that term was used to describe competitors." Second Trial Tr. 2054:2-4 (Mar. 8, 2022). Such vague testimony, even when based on personal observation, is insufficient under Rule 701(a). *See United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007).

[5] While the government correctly notes that a witness can interpret "conversations 'in which he was not a part,'" Doc. 1369 at 6 (quoting *United States v. Lizardo*, 445 F.3d 73, 83 (1st Cir. 2006)), this point is inapposite: The Court barred Mr. Bryant from explaining his understanding of Mr. McGuire's statement because the statement was not directed to Mr. Bryant. Second Trial Tr. 2053:10-20 (Mar. 8, 2022). Because Mr. McGuire did not direct Mr. Bryant to do anything, there was no way to verify whether Mr. Bryant's understanding matched Mr. McGuire's.

7

### III. Testimony Regarding "Manipulation" of the Bidding Process is Inadmissible.

The government "notice" also states that the government intends to elicit testimony from Mr. Bryant that the "purpose of the conspirators' bid rigging conversations" was to "manipulate" the bidding process. Doc. 1369 at 8-9. The Court should reject this attempt to circumvent its prior ruling, which barred Mr. Bryant from using terms that constitute after-the-fact characterizations of past conduct.

The government contends that Mr. Bryant's anticipated testimony is appropriate because he will use the term "manipulate" "in [an] ordinary, nonlegal sense." *Id*. (quoting *United States v. Coscia*, 2015 WL 6153602, at *3 (N.D. Ill. Oct. 19, 2015)). But this assertion is contradicted by the substance of the government's "notice." The filing makes clear that the government will seek to elicit the term "manipulate" as shorthand for an agreement to fix prices and rig bids. *See* Doc. 1369 at 8-9 (citing cases that it contends equate the term "manipulation" with price fixing and bid rigging); *see also id.* at 8 (contending that Bryant "may use the term 'manipulate'" to explain that "conspirators shared their bids and bid strategy with each other so that, together, they could impose price increases on customers (or resist price decreases)"). Used in this manner, the term manipulate does not have an "ordinary, nonlegal" meaning. Instead, it improperly characterizes the underlying facts by employing terms with "a separate, distinct, and special legal meaning." *See Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411 (8th Cir. 1987). This amounts to improper opinion testimony that "in essence tell[s] the factfinder what result to reach." *Id.*; *see Brooks*, 736 F.3d at 931 n.2 (testimony that conduct was participation "in a conspiracy" should "not be permitted as lay opinion under Rule 701" (emphasis omitted)).

The Court has already precluded Mr. Bryant from offering substantially identical testimony. Before Mr. Bryant took the stand at the second trial, the Court precluded him from using the phrase "price-fixing" to characterize the conduct about which he would testify because this "after-the-fact characterization" of past conduct would be "more confusing than helpful" to the jury. Second Trial Tr. 1936:5-21 (Mar. 8, 2022) ("[Bryant] is just now using some definition that he didn't before and calling it [price-fixing] now. So that after-the-fact characterization I don't think – that's something that he – it's not part of his fact testimony. It's just something that he is just using that particular terminology to describe what he did, but I think that that's more confusing than helpful.").[6] Specifically, the Court found that because Mr. Bryant had not previously used the phrase "price-fixing" to characterize his conduct, his use of the phrase in testimony "could be infected by legal opinions" regarding the ultimate issue. *Id*. at 1934:23-1935:10. The Court limited Mr. Bryant's testimony to "facts, what he did during that period of time," and ruled that it was for the jury to "compare [this testimony] to the elements and see whether the government has satisfied its burden of proof." *Id*. at 1936:23-1937:3.

The government neither acknowledges this ruling nor argues for reconsideration. But this ruling applies equally to Mr. Bryant's anticipated testimony regarding "manipulation" of the bidding process. As discussed above, the government's notice equates the term "manipulate" with price fixing and bid rigging. *See* Doc. 1369 at 8 ("Many courts—including the Supreme Court and the Tenth Circuit—have called price fixing and bid rigging 'manipulation.'"). And as with the phrase "price-fixing," there is no indication that the term "manipulate" describes Mr.

---

[6] In so ruling, the Court reversed its earlier denial of Defendants' motion to prohibit the use of the phrase price-fixing during witness examinations. *See* Doc. 1000; Pretrial Hearing Tr. 1873:3-23 (Feb. 10, 2022).

9

Bryant's understanding at the time of the alleged conduct, that he ever used the term during the period at issue or in any of his scores of interviews with the government through the first two trials, or that Mr. Bryant's use of the term is free from "infect[ion] by legal opinions" such as those cited by the government. *See* Second Trial Tr. 1934:23-1935:10; 1936:5-8 (Mar. 8, 2022) (use of the term price-fixing improper because "if [Mr. Bryant] didn't think of those terms before, then his testimony is not a description of what he was thinking at the time, which arguably it should be"). To the contrary, the government's notice makes clear that the term is meant to describe Mr. Bryant's current beliefs regarding past conduct. Doc. 1369 at 9 (arguing that "the Court should not bar [Mr. Bryant] from using the term 'manipulate' or 'manipulation' in circumstances where he *believes* it describes the conduct he observed and/or participated in" (emphasis added)). The Court's prior ruling plainly prohibits Mr. Bryant from offering after-the-fact characterizations of past conduct, whether he uses the phrase "price fixing and bid rigging" or an equally confusing and unhelpful term like "manipulation." As at the second trial, this legal conclusion regarding the ultimate issue must be left for the jury. Second Trial Tr. 1936:23-1937:3 (Mar. 8, 2022).

Moreover, the use of an inflammatory term like "manipulate" to describe Defendants' alleged conduct is unfairly prejudicial and has no probative value. Fed. R. Evid. 403. Courts have repeatedly precluded parties from using inflammatory terms when their use is unnecessary to prove the point at issue. *See, e.g.*, *MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 570 (S.D.N.Y. 2017) (granting motion to preclude "derogatory or inflammatory language" that is "unnecessary to prove the claims at issue"); *Aristocrat Leisure Ltd. v. Deutsche Banc Tr. Co. Am.*, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009) (same);

10

*see also Riggs v. Deutsche Banc Alex. Brown Inc.*, 2005 WL 8175065, at *1 (D.N.J. Sept. 6, 2005) ("the use of the term 'manipulate' carries a pejorative connotation"). Use of the ambiguous and inflammatory term "manipulate" as shorthand for "actions to fix prices and rig bids during the conspiracy" (Doc. 1369 at 8) constitutes improper opinion about the ultimate issue before the jury, provides the jury no helpful information, and would result in unfair prejudice to Defendants.

Finally, to the extent Mr. Bryant's proposed testimony could have some nonlegal meaning for the term "manipulate"—despite the unambiguous explanation in the government's "notice"—such testimony is likely irrelevant and would violate the Court's repeated rulings excluding testimony regarding customers' expectations of confidentiality. The government contends that Mr. Bryant's testimony "would explain that conspirators 'manipulated' the bidding process." Doc. 1369 at 8. In this context, the government's mention of "the bidding process" seems to be a reference to customers' rules or norms governing the confidentiality of information during the bidding process. But the Court has repeatedly ruled that evidence relating to customers' rules, norms, and expectations about information sharing between suppliers is "irrelevant to whether any price sharing by the defendants was improper or illegal under the Sherman Act." Doc. 1069 at 4-5; *see also, e.g.*, Doc. 1354 at 1-3 (reaffirming ruling that "evidence that defendants believed price sharing was improper, presumably based on customer expectations about the norms of competitive bidding" is irrelevant). Therefore, to the extent the government intends to elicit testimony that Defendants "manipulated" the bidding process by

sharing pricing information in violation of customers' rules governing the bidding process, such testimony is inadmissible under the Court's prior rulings.[7]

## CONCLUSION

The government's "notice" is procedurally improper and does not seek relief from the Court. To the extent it calls for an advisory opinion, that request should be rejected. In any event and for the reasons discussed above, Defendants respectfully submit that the testimony described in the government's "notice" is inadmissible. The Court should exclude it.

Dated:  June 7, 2022

Respectfully submitted,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

---

[7] The government does not seek reconsideration of these prior rulings, nor has it attempted to demonstrate changed circumstances that would justify reconsideration.

...

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

Dated: June 7, 2022

*s/ Michael F. Tubach*

Michael F. Tubach