IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN, and
5.    WILLIAM WADE LOVETTE,

Defendants.

No. 20-cr-00152-PAB

## DEFENDANTS' MOTION TO EXCLUDE PURPORTED "REBUTTAL" TESTIMONY OF REBECCA NELSON AND ACCOMPANYING EXHIBITS

Before a single Defendant put on any evidence in a defense case, the government filed a "notice" stating that it is entitled to call Rebecca Nelson, a Tactical Specialist for the FBI, in its rebuttal case. Doc. 1397. Although the Court previously excluded Ms. Nelson's testimony, the government now identifies a purportedly new basis for her in "rebuttal": the "Defense" "placed the timing and number of calls squarely before the jury" through Mr. Brady's reserved opening statement, in which Mr. Brady's counsel acknowledged that Mr. Brady regularly spoke with competitors by phone. *Id*. at 6.

The Court should deny the government's latest shadow motion and again exclude Ms. Nelson's testimony. *First*, there is nothing to rebut—Mr. Brady's opening statement was not inconsistent with Ms. Nelson's proposed testimony. *Second*, the Court afforded the government every opportunity to introduce in its case-in-chief the evidence it now seeks to present in "rebuttal," but the government declined. A rebuttal case is not a do-over. *Third*, Ms. Nelson is an undisclosed expert witness, the late disclosure of whom the government cannot cure with an

untimely "notice." *Finally*, permitting the government to call Ms. Nelson as a "rebuttal" witness would prejudice all of the Defendants, but particularly Messrs. Austin, Fries, Penn, and Lovette—a group that the government lumps together with Mr. Brady as "The Defense," but had no role in allegedly opening the door to Ms. Nelson's testimony. The Court's initial ruling excluding Ms. Nelson was correct, and it should now exclude her purported "rebuttal" testimony and accompanying exhibits.

## BACKGROUND

The government first identified Ms. Nelson as a potential witness on October 6, 2021, months after the May 14, 2021, deadline to disclose expert witnesses. Doc. 590 at 1. Three days before the first trial, the government produced 306 records to Defendants, ninety of which it described as "[p]hone record analyses prepared by Rebecca Nelson." Ex. A (Oct. 19, 2021, Production Letter). In an October 23, 2021, email to the government, Defendants objected to the late disclosure of the records, noted and objected to the government's failure to timely disclose Ms. Nelson as an expert witness, and requested clarification from the government on whether and how it intended to use any of the late-disclosed material with Ms. Nelson at trial. Ex. B.

The government never responded to Defendants, but informed the Court on November 12, 2021, that it no longer intended to call Ms. Nelson. Tr. 2865:14-15 (Nov. 12, 2021). The government did not seek to admit any of the exhibits for which it identified Ms. Nelson as the sponsoring witness. *Compare* Doc. 593 (government exhibit list from first trial), *with* Ex. C (list of government exhibits admitted in first trial). And it subsequently omitted Ms. Nelson from the witness lists it filed during the second trial and in advance of the third trial. Docs. 936, 1027, 1094, 1110, 1121, 1200, 1271, 1348, 1358.

On June 5, 2022, the day before jury selection began for this trial, the government emailed defense counsel regarding a "Demonstrative and production." Ex. D. In its email, the government indicated that it intended to use an undisclosed trial exhibit (GX 63) as a demonstrative with Rachel Evans, the DOJ paralegal through whom the government has admitted "summary" exhibits. *Id.* GX 63 purports to summarize calls between phone numbers associated with Mr. Austin and Mr. Brady during the years 2011-2018. Defense counsel requested and the Court agreed to take up GX 63 before the start of Ms. Evans's testimony on June 8, 2022. Tr. 149:11-152:11 (June 7, 2022).

The parties delivered opening statements on June 7, 2022. In its opening statement, the government asserted that Messrs. Austin and Brady "were the foot soldiers on the front lines of the conspiracy." Tr. 56:14-15 (June 7, 2022). It further contended that the "[e]vidence against [Messrs. Austin and Brady] can be seen by phone calls between the conspirators during key times of the bidding process," and encouraged the jury to "look to the number of calls, look to the timing of calls, look who called. . . . to see the defendants' crime." Tr. 56:18-19, 58:12-15 (June 7, 2022). Counsel for Mr. Fries noted in his opening that "[e]very morning Mr. Brady picks up the phone and calls customers and other suppliers to help sell all of the chicken that the plant produces that day." Tr. 102:14-20 (June 7, 2022). Counsel for Mr. Fries went on to explain that

> [i]n the chicken industry, just like in any other supply chain, suppliers talk, and they talk a lot. They talk about product specs. They talk about supply. They talk about covering loads for each other when one of them is short. They talk about quality assurance. They talk about customers. And they talk about prices. Discussions are year round. . . . They talk on Christmas. They talk on holidays, on Thanksgiving. They talk on weekends, Saturdays, Sundays. They even talk to each other during negotiations with customers.

Tr. 99:13-100:4 (June 7, 2022).[1]

On the following morning and immediately before the parties and the Court were to discuss the government's use of GX 63 with Ms. Evans, the government abruptly altered course. In an early morning email to defense counsel, the government indicated that it no longer intended to use GX 63 as a demonstrative with Ms. Evans but reserved the right to ask Ms. Evans to testify generally about "the patterns she saw in her analysis" of call data. Ex. D. The government indicated that it would instead call Ms. Nelson to testify about a spreadsheet—enclosed with the email—that contained an analysis of phone calls between numbers associated with Mr. Austin and Mr. Brady. *Id*. Later that morning, the government filed a revised witness list identifying Ms. Nelson as a witness. Doc. 1376.

At argument later that day, the government asked the Court to permit it to "substitute in Rebecca Nelson from the FBI" to testify about "a call-frequency analysis" that she performed by compiling and parsing call data for Messrs. Austin and Brady. Tr. 293:12-13, 294:1-4 (June 8, 2022). The government represented that Ms. Nelson would provide "the same testimony that Ms. Evans would have testified to with regard to [Government] Exhibit 63"—that is, the patterns she saw when analyzing call data—but purportedly in a "more easily explainable and more easily verifiable" way. Tr. 294:16-24 (June 8, 2022). The government acknowledged its failure to timely disclose Ms. Nelson's work by the deadline to submit summary exhibits and indicated that it would only "prepare some sort of chart or graph" to use as a demonstrative if Ms. Nelson were to testify. Tr. 295:2-8 (June 8, 2022). Defendants objected to the admission of Ms. Nelson's

---

[1] Counsel for Mr. Austin similarly explained in opening that "there were good business reasons the suppliers communicated with each other." Tr. 87:25-88:7 (June 7, 2022).

4

testimony and analysis. Tr. 296:20-304:8 (June 8, 2022). The Court excluded Ms. Nelson because of the "considerable prejudice" attendant to the government's late disclosure and the difficulty in quickly reconstructing her analysis and reasoning. Tr. 308:16-309:20 (June 8, 2022). Based on that ruling, Defendants had no need to study Ms. Nelson's analysis any further.

The Court did, however, rule that the government *could* use GX 63 as a demonstrative and question Ms. Evans about it so long as the government made her available for a more fulsome cross examination via VTC before the close of its case-in-chief. Tr. 310:23-311:15 (June 8, 2022). The government did not want to avail itself of that option and proposed an alternative—that it dispense with the obligation to recall Ms. Evans by asking her general questions about the frequency of phone calls between Messrs. Austin and Brady without referencing GX 63—and the Court agreed over Defendants' objections. Tr. 331:9-336:15 (June 8, 2022). The government subsequently asked Ms. Evans general questions about the frequency of calls between Mr. Brady and Mr. Austin until the Court sustained a foundation objection based upon her lack of understanding of the software used to perform her analysis. Tr. 343:6-352:3 (June 8, 2022). The Court invited the government to lay additional foundation, but the government declined and abandoned that line of questioning. Tr. 352:2-9 (June 8, 2022).

After the government rested on June 15, 2022, counsel for Mr. Brady, Mr. Lavine, delivered an opening statement on Mr. Brady's behalf. Tr. 1423:18-1434:23 (June 15, 2022). Mr. Lavine noted that Mr. Brady "talk[ed] on the phone with competitors a lot" and acknowledged that the jury "will see charts the government has with Scott's phone calls" showing that he "is on the phone all the time with competitors, customers, distributors." Tr. 1427:14-18 (June 15, 2022). This statement in Mr. Brady's reserved opening properly referred to summary charts the

jury had already seen during the government's case-in-chief. Mr. Lavine also conceded that suppliers spoke to one another during the bidding process. Tr. 1430:5-11 (June 15, 2022) (Claxton's 2014 bid to KFC did not change "despite those telephone calls between suppliers on the prosecutor's charts").

After Mr. Brady's opening but before any Defendant put on any evidence as part of a defense case, the government filed a "notice" that it would call Ms. Nelson to testify in a rebuttal case. Doc. 1397. As with its previous "notices," the government did not move for any relief.

## ARGUMENT

### I.    Ms. Nelson's Proposed Testimony Is Not Proper Rebuttal Evidence.

Rebuttal evidence must "disprove or contradict the evidence to which it is contrasted," it does not encompass all "evidence an aggrieved litigant may wish to admit in response to a topic introduced by his opponent." *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) (quotation omitted). There must, instead, "be a nexus between the purported rebuttal evidence and the evidence that the purported rebuttal evidence seeks to rebut." *Id*. (quotation omitted).

Here, Ms. Nelson's proposed "rebuttal" testimony and accompanying exhibits do not rebut anything, much less *evidence* that any Defendant introduced (or will introduce) during a defense case. In fact, no Defendant intends to introduce evidence about the frequency of phone calls between Mr. Brady and anyone else. The government nevertheless claims that "Defendants" have argued Mr. Brady "is 'on the phone all the time with competitors' because 'he is a salesman doing his job'—not a conspirator reaching 'any understanding or agreement with competitors.'" Doc. 1397 at 6-7. Notwithstanding the fact that the government spliced these statements together (and only Mr. Brady's counsel made them during his opening statement), it

intends to have Ms. Nelson testify about a "pattern of calls" between Mr. Brady and Mr. Austin that purportedly "would spike shortly before and during confidential bid negotiations." *Id*. at 6. The Court should preclude such testimony.

Proposed "rebuttal" testimony about Mr. Brady's telephone calls with a single employee of one supplier in no way "'disprove[s] or contradict[s]' the evidence to which it is contrasted." *Tanberg*, 401 F.3d at 1166 (quotation omitted). Mr. Lavine repeatedly *acknowledged* that Mr. Brady regularly spoke with competitors throughout the industry. *See, e.g.*, Tr. 1425:7-9 (June 15, 2022) ("I am not standing here today trying to convince you that you have to like the fact that these individual suppliers talk to each other."); Tr. 1424:17 (June 15, 2022) (noting that "these men [Defendants] communicated about prices"); Tr. 1427:14-17 (June 15, 2022) ("Scott talks on the phone with competitors a lot. You will see the charts the government has with Scott's phone calls. He is on the phone all the time with competitors, customers, distributors."); Tr. 1433:5-7 (June 15, 2022) ("[Y]ou will hear a lot [] about chicken suppliers exchanging pricing information as if there is something wrong with that."). In particular, Mr. Lavine emphasized that suppliers communicated *during* bid negotiations, exactly the point that the government seeks to elicit from Ms. Nelson. Tr. 1424:13-14 (June 15, 2022) (acknowledging that "suppliers shar[ed] pricing information during negotiations"); Tr. 1424:20-22 (June 15, 2022) (recognizing that Defendants "discuss[ed] pricing with each other during . . . what the prosecution argues is a blind-bidding process"); Tr. 1433:21-24 (June 15, 2022) (arguing that "[t]he agreement the government has the burden to prove is an agreement to fix prices and rig bids, not an agreement to exchange pricing, not an agreement to confer during the blind-bid process").

The government does not and cannot explain how Ms. Nelson's testimony and exhibits

would contradict or refute Mr. Brady's opening statement, because Mr. Brady's opening statement is entirely consistent with Ms. Nelson's proposed testimony and exhibits. Mr. Lavine never suggested that Mr. Brady and Mr. Austin did not speak by phone, that they did not exchange information during negotiations, or that they spoke less frequently during the bid process. In fact, Mr. Lavine never addressed the frequency or timing of calls between Mr. Austin and Mr. Brady at all. And there is no inconsistency between Mr. Lavine's argument that Mr. Brady "is on the phone all the time with competitors" and Ms. Nelson's data purportedly showing "spikes" in calls between Mr. Brady and Mr. Austin during months in which suppliers negotiated with buyers. Mr. Austin is but a single employee of one "competitor," and Ms. Nelson's proposed testimony and data—which is limited to the interactions between Mr. Brady and Mr. Austin—does not and cannot address or refute Mr. Lavine's general point about Mr. Brady's communications with competitors. There is nothing for Ms. Nelson to rebut.

## II.    The Government Cannot Use A "Rebuttal' Case To Resuscitate Arguments And Evidence It Abandoned During Its Case-In-Chief.

Rebuttal evidence may address "new evidence or theories proffered in the defendant's case-in-chief." *Bell v. AT&T*, 946 F.2d 1507, 1512 (10th Cir. 1991). But "[w]hen plaintiffs . . . seek to rebut defense theories which they knew about or reasonably could have anticipated, the district court is within its discretion in disallowing rebuttal testimony." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1224 (10th Cir. 2000). There is no question that the government reasonably could have anticipated the comments made by Mr. Brady's counsel during his reserved opening statement. Indeed, the government itself injected Mr. Brady's telephone activity into the case during its own opening statement and when it repeatedly attempted to designate witnesses to testify about the frequency of Mr. Brady's communications with Mr. Austin. Counsel for Mr.

8

Fries also discussed Mr. Brady's telephone activity during Mr. Fries' opening. A rebuttal case is not a do-over. The Court should exclude Ms. Nelson's testimony and proposed exhibits as outside the scope of proper rebuttal.

Courts in the Tenth Circuit can and do reject rebuttal evidence aimed at defense theories that the prosecuting party knew about or could have readily anticipated during its case-in-chief. *See Koch*, 203 F.3d at 1224; *United States v. Ganadonegro*, 2011 WL 3948759, at *1 (D.N.M. Aug. 26, 2011) ("[I]f [the United States] could not anticipate the testimony, then the testimony is rebuttal, but if it could anticipate the testimony, it has to bring out the testimony in its case-in-chief and not use a rebuttal witness to have the last word before the jury."); *United States v. Rodella*, 2014 WL 6634310, at *32 (D.N.M. Nov. 19, 2014) (refusing to permit government to introduce rebuttal expert testimony where it could "anticipate the [defense] testimony, and, thus, [the expert's] testimony would not be true rebuttal testimony").

Here, there can be no dispute that the government (i) understood the Court would not allow it to "save" evidence for rebuttal, (ii) injected the issue of competitor phone calls into the case as early as opening, (iii) readily anticipated defense theories about those phone calls and heard an opening address Mr. Brady's telephone activity at the start of the case, (iv) sought and received the Court's permission to introduce evidence addressing those theories and arguments during its case-in-chief; and (v) unilaterally abandoned its efforts to introduce that evidence.

As early as the pre-trial conference, the Court put the government on notice that it would not look favorably upon any effort to sandbag Defendants by adducing evidence in rebuttal that it could introduce in its case-in-chief. Pretrial Hr'g Tr. 109:24-110:10 (May 25, 2022). Then, once trial began but before any Defendant addressed the jury, the government stated in its

opening statement that "[e]vidence against [Mr. Austin and Mr. Brady] can be seen by phone calls between the conspirators during key times of the bidding process," and encouraged the jury to "look to the number of calls, look to the timing of calls, look who called. . . . to see the defendants' crime." Tr. 56:18-19, 58:12-15 (June 7, 2022). The government subsequently sat through Mr. Fries's opening statement, in which counsel noted that Mr. Brady and other suppliers talked constantly about prices and other topics, including during negotiations with customers. The government then sought and received the Court's permission to introduce evidence of the frequency and timing of calls between Mr. Austin and Mr. Brady in two different ways. And having chosen one of those two avenues, the government decided to abandon the line of questioning designed to elicit that information after the Court sustained a run-of-the-mill foundation objection.

The Court should not permit the government another bite at the apple. It warned the government in advance about sandbagging and afforded the government every opportunity to introduce in its case-in-chief the very same evidence it seeks to introduce in rebuttal. Ms. Nelson's testimony and accompanying exhibits therefore "would not be true rebuttal testimony," and they should be excluded on that basis alone. *See Rodella*, 2014 WL 6634310, at *32.

## III.    Ms. Nelson Is An Untimely Disclosed Expert Witness.

In any event, the government's failure timely to disclose Ms. Nelson's expert testimony and analysis precludes their introduction at trial. "Testimony becomes 'expert testimony' when it addresses topics that are 'beyond the realm of common experience and require the special skill and knowledge of an expert witness.'" *United States v. Starks*, 34 F.4th 1142, 1170 (10th Cir. 2022) (alteration and quotation omitted) (reversing conviction where district court improperly

admitted expert testimony that was not disclosed in compliance with Rule 16); *see also* Tr. 304:19-305:5 (June 8, 2022) (noting that the test for expert testimony "is whether [the analysis is] beyond the ken of an ordinary juror"). The government asserts that Ms. Nelson simply "counted the number of calls between Defendants Austin and Brady" and "ensured that she did not count any call more than once." Doc. 1397 at 7. That description ignores the complex and discretionary process of identifying and deduplicating calls in AT&T and Verizon phone records that Ms. Nelson must have undertaken as part of her call-frequency analysis.

Ingesting, deduplicating, and analyzing phone records is a multi-step process that requires the exercise of expert judgment and data analysis. From what Defendants can gather, this process requires at a minimum that the expert (i) ingest and convert the PDF phone records into a useable format; (ii) vet the work product for errors resulting from the conversion process (e.g., "5" being converted to "$" or "S"); (iii) standardize the underlying data, which AT&T and Verizon log differently;[2] and (iv) exercise judgment to develop and apply criteria for identifying likely duplicates based on the underlying data; and (v) operate software to conduct data analysis. The fact that Ms. Nelson attended government interviews with AT&T and Verizon analysts— ostensibly to learn the nuances of the ways each company records underlying data—illustrates that this process extended far beyond simple counting by a layperson. *See* Ex. E (government interview with AT&T analyst); Ex. F (government interview with Verizon analyst). The government's motion repeatedly acknowledges as much. *See* Doc. 1397 at 4 (noting that "the

---

[2] For example, Defendants understand that AT&T records list call time zones, whereas Verizon records do not include time zones and therefore require interpretation; AT&T records include seconds in timestamps whereas Verizon's do not; and Verizon records round calls to the nearest minute, while AT&T's do not.

exact number of calls was not obvious from the face of the Defendants' call records" and describing "nuances in how AT&T responds to subpoenas"). To understand the degree of discretion Ms. Nelson exercised in conducting her analysis, the Court need look no further than the DOJ's charts: Ms. Nelson's conclusions about the total number of calls between Mr. Brady and Mr. Austin have changed in almost every new production provided to defense counsel. In short, this process involved precisely the type of analysis that the Court concluded "is expert testimony" because it "would go beyond what an ordinary juror . . . could be able to do." Tr. 305:1-2 (June 8, 2022).

Just as important, Ms. Nelson's testimony is intended to convey the *patterns* she interpreted in otherwise incomprehensible telephone data,[3] which is quintessential expert opinion. *See, e.g.*, *Grayson v. Horton,* 2021 WL 5094805, at *4 (6th Cir. May 3, 2021) (expert testimony that co-defendants' phone records "showed 'an increased pattern of interaction' between their phones before and after" charged offense); *United States v. Lewis*, 447 F. App'x 310, 318 (3d Cir. 2011) (expert testimony "about the pattern of phone calls between [defendant] and his alleged co-conspirators"); *United States v. Johnson*, 587 F.3d 625, 636 (4th Cir. 2009) (expert testimony regarding "odd conversational patterns").

For its part, the government offers no justification for its failure timely to disclose Ms. Nelson or her expert analysis. It has been on notice that Defendants object to Ms. Nelson's call analysis as expert opinion since October 2021. *See* Ex. B (Defendants' Oct. 23, 2021, email). It withdrew Ms. Nelson from its witness list during the first trial following that objection and did

---

[3] Ms. Nelson's testimony would in substance be "the same testimony that Ms. Evans would have testified to with regard to [Government] Exhibit 63." Tr. 294:16-24 (June 8, 2022).

not identify her as a witness again until June 8, 2022, after it had started its case-in-chief in the third trial and well after the applicable May 2, 2022, and May 16, 2022, deadlines for expert and rebuttal expert disclosures. *See* Doc. 1376; Doc. 46 (rebuttal expert disclosures due one week after deadline for pretrial motions). The Court acknowledged that "[c]ommon sense" indicates the government's withdrawal of Ms. Nelson after Defendants' objection "suggests that the government thought she was an expert" too. Tr. 305:6-7, 309:1-3 (June 8, 2022). And while the government asserts in a footnote that its "notice" satisfies expert disclosure obligations under Rule 16, Doc. 1397 at 8 n.6, the government never addresses the Court's deadline for rebuttal expert disclosures,[4] let alone attempt to justify its failure to abide by it. The Court should exclude Ms. Nelson's undisclosed expert testimony and accompanying exhibits as untimely.

## IV.    Ms. Nelson's Testimony And Exhibits Will Unfairly Prejudice All Defendants.

Ms. Nelson's expert analysis would unfairly prejudice all Defendants, none of whom have prepared to cross examine a phone records expert after the Court's order excluding her. The government's late disclosure denies Defendants the opportunity to prepare their own expert to challenge Ms. Nelson's methods or conclusions. Moreover, Ms. Nelson's testimony would particularly prejudice Defendants who had nothing to do with the supposed "door opening." The government does not address that issue in its "notice," and instead attributes the opening statement by Mr. Brady's counsel to "The Defense" or "Defendants." Doc. 1397 at 6-8.

As this Court and others have recognized, criminal defendants have varied and often competing interests, such that the introduction of evidence against one Defendant may result in

---

[4] Indeed, the recent revision to Rule 16 requires that the government disclose expert witnesses "sufficiently *before trial* to provide a fair opportunity for the defendant to meet the government's evidence." Fed. R. Crim. P. 16(a)(1)(G)(ii) (effective Dec. 1, 2022) (emphasis added).

spillover prejudice to others. Tr. 2988:2-8 (Mar. 15, 2022); *see United States v. Martin*, 965 F.2d
839, 842 (10th Cir. 1992) (co-defendants can have different theories of defense). Here, the risk
of spillover prejudice afflicts Messrs. Fries, Penn, and Lovette but particularly Mr. Austin. The
government never argues (and cannot argue) that Mr. Austin "opened the door" to Ms. Nelson.
Yet it proposes to introduce extensive "rebuttal" testimony against Mr. Austin without providing
any justification. Courts regularly exclude evidence under these circumstances. *See, e.g.*, *United
States v. Sharpe*, 193 F.3d 852, 867-68 (5th Cir. 1999) (affirming exclusion of evidence because
of the "prejudice to the other defendants"); *United States v. Warshak*, 2008 WL 207851, at *1
(S.D. Ohio Jan. 24, 2008) (excluding evidence, in part, because it "would risk to create spillover
prejudice to other Defendants"); *see also United States v. Ammar*, 714 F.2d 238, 270 (3d Cir.
1983) (Becker, J., concurring) ("It is indisputable that the district court has broad discretion to
exclude probative evidence on the basis of the factors listed in Fed. R. Evid. 403, including
unfair prejudice to co-defendants.").

    Dodging the issue entirely, the government instead suggests that the introduction of Ms.
Nelson's "rebuttal" testimony would not unfairly prejudice or surprise *any* Defendant because of
the "ample notice" its filing purports to provide—one week in the middle of trial. Doc. 1397 at
8-9. This statement is simply false. Defendants put aside any analysis of the purported call-
pattern analysis after the Court excluded Ms. Nelson and the government abandoned its efforts to
introduce such evidence in its case-in-chief. There was no notice that the analysis would be in
issue until the government's "notice," which it filed after it rested. And as the Court already
ruled, roughly one week's notice under such circumstances will cause Defendants "considerable
prejudice." Tr. 308:24-309:15 (June 8, 2022). The Court should once again exclude Ms. Nelson's

testimony and accompanying exhibits.[5]

## CONCLUSION

For these reasons, the Court should exclude Ms. Nelson's proposed "rebuttal" testimony

and the accompanying exhibits.

Dated: June 28, 2022

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com


*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900

rick@rklawpc.com


*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

Respectfully submitted,

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

---

[5] The government's proposed "summary" exhibits (Doc. 1397-1) should be excluded for the independent reason that they were not timely disclosed. The Court ordered the disclosure of any summary exhibits by April 25, 2022. Doc. 1263 at 1-2 & n.1. The government admits it did not disclose these exhibits until June 8, 2022, and that the charts would therefore need to be demonstratives. Tr. 295:2-8 (June 8, 2022); Doc. 1397 at 3 n.2 (explaining charts' history).

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

Dated: June 28, 2022                    *s/ Bryan Lavine*

Bryan Lavine